United States Courts Southern
District of Texas
FILED

*January 11, 2021*

Nathan Ochsner, Clerk of Court

# PETITION UNDER 28 U.S.C. § 2254
# FOR WRIT OF HABEAS CORPUS BY A
# PERSON IN STATE CUSTODY

| United States District Court | District: SOUTHERN DISTRICT OF TEXAS |
|---|---|

| Name (under which you were convicted): ADRIAN DAVID HEATH | Docket or Case No.: |
|---|---|

| Place of Confinement : TEXAS | Prisoner No.: |
|---|---|

| Petitioner (include the name under which you were convicted) ADRIAN DAVID HEATH | |
|---|---|
| Respondent (authorized person having custody of petitioner) v. KEN PAXTON | United States Courts Southern District of Texas **F I L E D** XXXXXXXXXXX Clerk of Court |
| The Attorney General of the State of: TEXAS | |

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    359TH DISTRICT COURT OF MONTGOMERY COUNTY, TEXAS
    210 WEST PHILLIPS, 3RD FLOOR
    CONROE, TEXAS 77301

    (b) Criminal docket or case number (if you know):  12-03-02580-CR

2.  (a) Date of the judgment of conviction (if you know):  MAY 24, 2014
    (b) Date of sentencing:  FEBRUARY 7, 2017

3.  Length of sentence:  3 YEARS

4.  In this case, were you convicted on more than one count or of more than one crime?

_____Yes     _____x_____     No

5.  Identify all crimes of which you were convicted and sentenced in this case:
    ILLEGAL VOTING

6.  (a) What was your plea? (Check one)

|  |  |  |  |
|---|---|---|---|
| X(1) | Not guilty | (3) | Nolo contendere (no contest) |
| ☐ (2) | Guilty | (4) | Insanity plea |

(b)   If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

__X__ Jury          _____ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

__X__ Yes          __ No

8.   Did you appeal from the judgment of conviction?

__X__ Yes          __ No

9.   If you did appeal, answer the following:

(a) Name of court:  TEXAS FOURTEENTH COURT OF APPEALS

(b) Docket or case number (if you know):  14-14-00532-CR

(c) Result:  AFFIRMED

(d) Date of result (if you know):  MAY 10, 2016

(e) Citation to the case (if you know):

(f) Grounds raised:

1. THE TRIAL COURT LACKED JURISDICTION TO HEAR THIS CASE BECAUSE THERE WAS NO "COMPLAINT FILED BY TWO OR MORE REGISTERED VOTERS" OF THE DISTRICT, AS REQUIRED BY THE ELECTION CODE SECTION 273.001(a), PRIOR TO THE ATTORNEY GENERALS OFFICE INVESTIGATION AND INDICTMENT.
2. SECTION 1.015 OF THE ELECTION CODE IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO  THE APPELLANT HEREIN BECAUSE THE DEFINITION OF "RESIDENCE" IS FATALLY AMBIGUOUS AND ENCOURAGES ARBITRARY ENFORCEMENT OF THE PENAL LAW IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS DUE COURSE OF LAW PROVISIONS OF ARTICLE I, SECTION 19, OF THE TEXAS CONSTITUTION.
3. THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT.
4. THE TRIAL JUDGE WAS DISQUALIFIED TO HEAR THIS CASE DUE TO THE APPEARANCE OF BIAS AND THE CONVICTION IS VOID.

(g)  Did you seek further review by a higher state court?

    ___X__  Yes

    _____  No

(h)  If yes, answer the following:

    (1) Name of court:  TEXAS COUR TO CRIMINAL APPEALS

    (2) Docket or case number (if you know):  PD-0763-16

    (3) Result:  PETITION FOR DISCRETIONARY REVIEW DENIED

    (4) Date of result (if you know):  DECEMBER 14, 2016

Case 4:21-cv-00088   Document 1   Filed on 01/11/21 in TXSD   Page 5 of 26

(5) Citation to the case (if you know):

(6) Grounds raised:

    1.  The definition of "residence" found in the Texas Election Code is unconstitutionally vague as applied to Petitioner in this case.

    2.  The evidence upon which Petitioner was convicted is legally insufficient to support a conviction, for the reasons set forth below.

(i)    Did you file a petition for certiorari in the United States Supreme Court?

\_\_\_X\_\_Yes    \_\_\_\_ NO

(j)    If yes, answer the following:

(1) Docket or case number (if you know):   16-1090

(2) Result:  PETITION FOR WRIT OF CERTIORARI DENIED

(3) Date of result (if you know):  May 15, 2017

(4) Citation to the case (if you know):

10.  Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  \_\_X\_\_ Yes   _____ No

11.  If your answer to Question 10 was "Yes," give the following information

(1) Name of court:  Texas Court of Criminal Appeals

(2) Docket or case number (if you know):  WR 91,018-01

(3) Date of filing (if you know):   October 21, 2019

(4) Nature of the proceeding:  Application for Writ of Habeas Corpus

(5)  Grounds raised:

1.  Applicant's rights to "Free Speech" protected by the First Amendment, and his right to "Equal Protection" protected by the Fourteenth Amendment were violated by selective enforcement of the Election Code by the Texas Attorney General's Office.

(5) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ___X__ No

(6) Result:  Application denied

(7) Date of result (if you know):  March 11, 2020

(a) If you filed any second petition, application, or motion, give the same information:  N/A

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ❏ Yes _____ No

Result:

    (7) Date of result (if you know):

(b) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:  N/A

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?  N/A

    ❏ Yes _____ No

    (7) Result:

    (8) Date of result (if you know):

Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?  N/A

    (1) First _____Yes ❏   N

petition:                                    o

(2) Second        □ Yes  □      N
petition:                                    o
(3) Third         □ Yes  □      N
petition:                                    o

(c) If you did not appeal to the highest state court having jurisdiction, explain why
you did not:
                        N/A


12.   For this petition, state every ground on which you claim that you are being held in
      violation of the Constitution, laws, or treaties of the United States. Attach
      additional pages if you have more than four grounds. State the facts supporting
      each ground.

      **CAUTION: To proceed in the federal court, you must ordinarily first exhaust
      (use up) your available state-court remedies on each ground on which you
      request action by the federal court. Also, if you fail to set forth all the grounds
      in this petition, you may be barred from presenting additional grounds at a
      later date.**

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your
claim.):

      SECTION 1.015 of the Texas Election Code is unconstitutionally vague because I  was
certified as an eligible voter by the Election Administrator (See Appendix Exhibit 7) and
followed the definition of "residence" and it has been arbitrarily enforced against me.  I have
been wrongfully indicted (See Appendix Exhibit 2) and convicted of illegal voting (See
Appendix Exhibit 3).  I have lived in The Woodlands, Texas for more than 30 years.  In 2010,
while investigating bonded indebtedness of political entities in Montgomery County, I
learned that the Woodlands Road Utility District had issued more than 80 million dollars in
road bonds since 1990.  The Board that authorized issuance of those bonds had not held
elections for new Board members in 15 election cycles.  As each member's term expired, the
Board would replace that member with a vote of the Board instead of holding an election
(see series of emails from Michael Page, Attorney for the Utility District, and related parties,
Appendix Exhibit 4).   I contacted the Secretary of State's Office and spoke with an Election
Specialist Attorney, named Joe Kulhavy, who told me they must hold an election are

contested in the District.  I then researched the Voter Registration Rolls and found many people registered to vote from business office addresses and from The Residence Inn Hotel located within the boundaries of the Utility District.  I provided this information to the Elections Administrator (Carol Gaultney).  Once 3 candidates filed to contest three Board positions that were set to expire in May 2010, the District only agreed to hold an election after they suddenly "discovered" that Dirk Laukien and Katy Laukien were registered to vote in the District.  This was contrary to their earlier assertions that there were no voters in the District.

I spoke again with Joe Kulhavy to tell him what I had accomplished.  When I told him about the people registered to vote from the hotel, he told me I could do the same thing and use the hotel address as my "address for voting purposes."  Joe Kulhavy told me about Texas Attorney General's Opinion GA-0141, issued February 4, 2004 (Appendix Exhibit 5);  and the Secretary of State's Opinion GSC-1, issued January 22, 2004 (Appendix Exhibit 6).  At his request, I downloaded the two Opinions and read them.  Significantly, Texas AG Opinion GA-0141 cites the federal case United States v. Texas, in which a three-Judge panel "acknowledged that the [County Voter] Registrar had the authority under the [Texas] Election Code to make a factual determination as to whether each applicant to vote was a bona fide resident" of the County.

I then consulted with an attorney friend who concurred with Joe Kulhavy's advice.  I decided to change my voter registration to The Residence Inn Hotel so I could vote in the May 2010 election.  When I asked Election Division Attorney Joe Kulhavy if I could legitimately choose to establish residence for voting purposes at the residence in, he said "you can" and "I'd like to see the look on their faces" when I did it.  Both legal Opinions stated, and Mr. Kulhavy agreed, that a voter has a right to chose his/her address for voting purposes when they have been physically present at a location with the intent to use that location as their residence for voting purposes.  After that, I went to The Residence Inn Hotel and visited it inside and out.  I visited with the staff for an hour or two.  I went to the Voter Registration Office, told the Election Administrator, Carol Gaultney, what I wanted to do, and changed my registration to The Residence Inn Hotel more than 30 days before the election.  She told me "I appreciate what you are trying to do."

Subsequently, on April 19, 2010, Carol Gaultney issued the "Certification of Voter Registrar" with an attached eligible voter list containing, among others, my name saying it "accurately identif[ied] all eligible voters within the boundaries of The Woodlands Road Utility District #1.  Having read the Opinion suggested by Mr. Kulhavy, I knew that an "eligible voter" meant a voter who is qualified, registered, and a "bona fide" resident of the voting district.

I told other people, including a local Pastor and his sons, the Allisons, what I'd found out about the Road Utility District.  Then, eight other political activists, including two of the Pastor's sons decided to do the same thing.  Three other political activists filed to run for the

Board positions to challenge the three incumbents in the May 2010 election (the enabling statute for the District did not require Board Members to reside in the Utility District). Our group's three candidates won the election for each Board position 10 votes to 2. However, the losing Members filed an election contest. In the contest the Court struck our ten votes as fraudulent but allowed the votes of Dirk and Kate Laukien, who had changed their registrations in January 2010, before we changed ours in March, from a house outside of the Utility District to a business office inside the Utility District boundaries (see multiple houses in the name of the Laukiens at the time they changed their voting residence address, Appendix Exhibit 8). Their two votes were declared legitimate and the incumbents won 2 votes-0.

Even though on April 19, 2010, the Elections Administrator, Carol Gaultney, had officially certified me as an eligible voter in writing within the District, eight of these activists and I had indictments issued against us for illegal voting by the Attorney General's Office. Just as the Laukiens had done, we had changed our voter registration addresses from a location outside the boundaries of the Road Utility District to another location inside the boundaries of the Road Utility District in order to participate and vote in the May 2010 Road Utility District election (one of the ten, Richard McDuffie agreed to testify for the State and was, therefore, not indicted). The Laukiens were not indicted. Prior to 2010, and increasingly since 2010, numerous other persons had multiple addresses of property they rented or owned, but they chose to register and vote from an address that was not a single-family home and from which they were also renting (to include post office boxes) (See specifically, Kate and Dirk Laukien with multiple residences, as well as others registered to vote in that Utility District from non single-family dwellings, Appendix Exhibit 9, which is fully incorporated herein). I believe that I, and the other people who changed their registration addresses, had the right to register and vote from a rented "residence" instead of a house held in my name. According to the interpretations of the Texas Election Code made by both the Texas Attorney General and the Texas Secretary of State, as well a under the First and Fourteenth Amendments to the United States Constitution, we all had the right to register and vote from a rented "residence" instead of a house titled in our names.

This group of political activists, led by James Jenkins, routinely reviewed campaign finance reports filed by elected officials from around the state. When we found violations, one of the activists would swear under oath on a complaint against the elected official who had committed the violation and file it with the Texas Ethics Commission which would review and prosecute the violation if it had merit. One of our group filed a complaint of violation against State Senator Tommy Williams which resulted in a fine of $5,000.00 paid by Senator Williams prior to 2010. When he learned what our group had done in the Utility District election in 2010, he became angry and told people, including James Doyle (who's affidavit is attached as Appendix Exhibit 10 to this Application and incorporated herein) that he would use his influence to see that those people (meaning those of us who voted in the

May 2010 election) would be prosecuted.  In order to pursue the filing of criminal charges, Senator Williams contacted the Attorney General's Office (email attached as Appendix Exhibit 11 and incorporated herein) and requested the Office to prosecute these voters.  They told him a complaint had to be filed with the Secretary of State's Office and they could receive it from there.  Senator Williams then instructed his Assistant to get the complaint to the Secretary of State's Office and then make sure it was taken to his contact at the Attorney General's Office so that charges would be accepted and filed against the Utility District Voters.  Senator Williams had a personal interest in protecting the Road Utility District Board of Directors because he had a business relationship with the Road Utility District in his position at Woodforest Bank handling the District's banking and investment accounts.  The complaint was taken to the Secretary of State's Office and then forwarded to "the right person" at the Attorney General's Office which put the procedures in motion leading to the Grand Jury Indictments in this case.  The complaint did not go through normal channels.

Even though on April 19, 2010, Elections Administrator, Carol Gaultney, had officially certified me as an eligible voter, in writing, to the District, nine of us were indicted on March 8, 2012, by the Attorney General's Office--instead of by the local District Attorney.  Before trial, I had my attorney file a Motion to Dismiss the case because the statute violated my right to Free Speech and Association, and my right to Equal Protection to choose my "residence for voting purposes" as stated in the Opinions of the Attorney General and the Secretary of State.  It was denied by Judge Stevens, the specially appointed trial Judge (the elected 359th District Trial Judge recused herself from hearing the case).  I had met with the First Assistant District Attorney of Montgomery County, Phil Grant, before the election and I told him what our group was doing (i.e. registering the Residence Inn Hotel as our "residence for voting purposes" and then planning to vote in the May 2010 Utility District election).  He approved and gave me an official District Attorney's Department "Challenge Medal" normally awarded to outstanding citizens.  At trial, Phil Grant, who had given me the Medal, testified that he believed the law on "residence" was vague (See Appendix Exhibit 15).

At the trial, when my attorney tried to introduce evidence about the Laukiens changing their voting residence to their business address so that they, too, could vote in the May 2010 Utility District Election, the Judge denied it and refused to let us pursue that line of argument with the jury.  The trial Judge did not allow me to raise the issue of "selective prosecution" about the actions of Senator Tommy Williams, who had urged and insisted that the Attorney General's Office file charges against myself and the others (but let the Laukiens go free). The Judge quashed our subpoena for records of communications between Senator Tommy William's Office, Attorney Mike Page's Office (the attorney for the Utility District), Attorney James Stilwell's Office (the election contest attorney for the Utility District), District Attorney Bret Ligon, and his Assistant, Phil Grant, and the Attorney General's Office

concerning this election and the selective/vindictive prosecution issue (See Appendix Exhibits 12, 13 and 14).  I was not allowed to obtain the evidence to make the argument at trial and my attempts were denied by the trial judge.  Since that time, the Court of Criminal Appeals has now held that this type of defense of "selective prosecution" (that I was not allowed to raise at my trial) is a valid defense.

The jury convicted me of illegal voting.  I appealed the verdict on the basis that the evidence was insufficient as a matter of law;  the Judge should have been recused for pre-judging the evidence;  and because the law violates the First Amendment "Free Speech" Clause and the Fourteenth Amendment "Equal Protection" Clause that the statute under which I was prosecuted is unconstitutionally vague.  The State 14th Court of Appeals, relying solely upon the decision of the 9th Court of Appeals in a case appealed by Cybil Doyle and Roberta Cook (two of the co-defendants tried in a separate trial), determined that the statute was not  unconstitutionally vague.  I believed the ruling was wrong and I filed a Petition For Discretionary Review in the Court of Criminal Appeals which was denied.

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)  **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

\_\_\_X\_\_ Yes  \_\_\_\_ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

\_\_X\_\_ Yes \_\_\_\_ No

(2)  If your answer to Question (d)(1) is "Yes," state: Type of motion or petition: Application for Writ of Habeas Corpus

Name and location of the court where the motion or petition was filed:
    Texas Court of Criminal Appeals

Docket or case number (if you know):  WR 91,018-01

Date of the court's decision:  March 23, 2020

Result (attach a copy of the court's opinion or order, if available):

     See attached copy of Notice of Dismissal as Appendix Exhibit One

---

(3) Did you receive a hearing on your motion or petition?   \_\_ Yes   X No

(4) Did you appeal from the denial of your motion or petition?   \_\_ Yes   X No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   \_\_ Yes   \_\_ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):  N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available):  N/A

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

     The issue I raise now was raised in my Post-Conviction Application for Writ of Habeas Corpus filed with the Court of Criminal Appeals which was denied. There was no higher court to which to appeal.

(8)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

N/A

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

I reiterate all of the allegations set forth in GROUND ONE and add the following on GROUND TWO.  At the trial, when my attorney tried to introduce evidence about the Laukiens changing their voting residence to their business address, that they voted in the May 2010 Utility District Election, and they were not being prosecuted. The Judge denied it. The trial Judge did not allow me to raise the issue of "selective/vindictive prosecution" about Senator Williams who had urged and insisted that the Attorney General's Office file charges against myself and the others (but let the Laukiens go free).  (See Appendix Exhibit 11, emails and referral letter from Secretary of State).  The Judge quashed our subpoena for records concerning this issue and I was not allowed to make the argument at trial. (See Appendix Exhibits 12 and 13).  Since that time, the Court of Criminal Appeals has now held that this type of defense of "non-racial selective prosecution" (that I was not allowed to raise at my trial) is a valid defense.

The jury convicted me of illegal voting.  I appealed the verdict on the basis that the evidence was insufficient as a matter of law;  the Judge should have been recused for pre-judging the evidence;  and because the law violates the First Amendment "Free Speech" Clause and the Fourteenth Amendment "Equal Protection" Clause that the statute under which I was prosecuted is unconstitutionally vague.  The State 14th Court of Appeals, relying solely upon the decision of the 9th Court of Appeals in a case appealed by Cybil Doyle and Roberta Cook (two of the co-defendants tried in a separate trial), refused to determine that the statute was not  unconstitutionally vague. (See Opinion at Appendix Exhibit 16).  I believed the ruling was wrong and I filed a Petition For Discretionary Review in the Court of Criminal Appeals which was denied. (See Appendix Exhibit One).

My First Amendment Right to Free Speech was taken away by Senator Tommy Williams, using his influence with the Attorney General's Office,  to achieve a vindictive/selective prosecution.  Senator Williams admitted such to James Doyle shortly after the election.  (See Appendix Exhibit 10, Affidavit of James Doyle).  The persons involved an email chain with Senator Williams were collaborator with Senator Williams to seek prosecution in retaliation against me for exercising my First Amendment Right to Free Speech and Equal Protection to register and vote, as many others have done for years, from the voting address of my choice. (See Appendix Exhibit 11).

(b) If you did not exhaust your state remedies on Ground Two, explain why:
The issues involved in this claim were subsumed in the issues raised in the Application for Writ of Habeas Corpus denied by the Court of Criminal Appeals.

(c)  **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue? __
___Yes      _X__ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:
There was no evidence in the record on appeal to raise the issue because the Judge quashed the subpoena duces tecum which sought the evidence.

(d)  **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

__X__Yes      ___ No

(2)    If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:
Application for Writ of Habeas Corpus

Name and location of the court where the motion or petition was filed:
Texas Court of Criminal Appeals

Docket or case number (if you know): WR 91,018-01

Date of the court's decision:  March 11, 2020

Result (attach a copy of the court's opinion or order, if available):

See Appendix Exhibit One

| | | | |
|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | Yes | X | No |
| (4) Did you appeal from the denial of your motion or petition? | Yes | X | No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | Yes | | No |
| (6) If your answer to Question (d)(4) is "Yes," state: | | | |

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if
available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you
did not raise this issue:
       The Court of Criminal Appeals is the highest appellate court and no further
       appeal was available.

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus,

administrative remedies, etc.) that you have used to exhaust your state remedies

on Ground Two :

N/A

13.   Please answer these additional questions about the petition you are filing:

(a)   Have all grounds for relief that you have raised in this petition been

presented to the highest state court having jurisdiction? __X__ Yes

_____ No

If your answer is "No," state which grounds have not been so presented and

give your reason(s) for not presenting them:

(b)   Is there any ground in this petition that has not been presented in some state

or federal court? If so, which ground or grounds have not been presented,

and state your reasons for not presenting them:

The issue of selective/vindictive prosecution not based on race was not clearly
established until four years after my trial although it is considered an "Equal
Protection" claim which was raised in all appeals and the Writ of Habeas
Corpus pleading.

14. Have you previously filed any type of petition, application, or motion in a federal

    court regarding the conviction that you challenge in this petition?    __Yes

    __X__ No

    If "Yes," state the name and location of the court, the docket or case number, the

    type of proceeding, the issues raised, the date of the court's decision, and the

    result for each petition, application, or motion filed. Attach a copy of any court

    opinion or order, if available.

15. Do you have any petition or appeal now pending (filed and not decided yet) in any

    court, either state or federal, for the judgment you are challenging?   _____ Yes

    X_ No

    If "Yes," state the name and location of the court, the docket or case number, the

    type of proceeding, and the issues raised.

GROUND NUMBER THREE:

(a). Supporting facts (Do not argue or cite law. Just state the specific facts that support
your claim.)

I reiterate the allegations contained in GROUND ONE and GROUND TWO above, and add
these additional facts. I have lived in The Woodlands, Texas for more than 30 years. In
2010, while investigating bonded indebtedness of political entities in Montgomery County, I
learned that the Woodlands Road Utility District had issued more than 80 million dollars in
road bonds since 1990. The Board that authorized issuance of those bonds had not held
elections for new Board members in 15 election cycles. As each member's term expired, the
Board would replace that member with a vote of the Board instead of holding an election
(see series of emails from Michael Page, Attorney for the Utility District, and related parties,
Appendix Exhibit 4). I contacted the Secretary of State's Office and spoke with an Election
Specialist Attorney, named Joe Kulhavy, who told me they must hold an election if there are
voters registered in the District. I then researched the Voter Registration Rolls and found

many people registered to vote from business office addresses and from The Residence Inn Hotel located within the boundaries of the Utility District. I provided this information to the District and they agreed to hold an election to fill three Board positions that were set to expire in May 2010.

I spoke again with Joe Kulhavy to tell him what I had accomplished. When I told him about the people registered to vote from the hotel, he told me I could do the same thing and use the hotel address as my "address for voting purposes." Joe Kulhavy told me about Texas Attorney General's Opinion GA-0141, issued February 4, 2004 (Appendix Exhibit 5); and the Secretary of State's Opinion GSC-1, issued January 22, 2004 (Appendix Exhibit 6). At his request, I downloaded the two Opinions and read them. I then consulted with an attorney friend who concurred with Joe Kulhavy's advice. I decided to change my voter registration to The Residence Inn Hotel after Joe Kulhavy told me I. Joe Kulhavy told me I could do it and he said "I'd like to see the look on their faces" when I did it. Both legal Opinions stated, and Mr. Kulhavy agreed, that a voter has a right to chose his/her address for voting purposes when they have been physically present at a location with the intent to use that location as their residence for voting purposes. After that, I went to The Residence Inn Hotel and visited it inside and out. I visited with the staff for an hour or two. I went to the Voter Registration Office, told the Election Administrator, Carol Gaultney, what I wanted to do, and changed my registration to The Residence Inn Hotel more than 30 days before the election. She told me "I appreciate what you are trying to do."

I told other people what I'd found out about the Road Utility District and eight other political activists decided to do the same thing. Three other political activists filed to run for the Board positions to challenge the three incumbents in the May 2010 election (the enabling statute for the District did not require Board Members to reside in the Utility District). Our group's three candidates won the election for each Board position 10 votes to 2. However, the losing Members filed an election contest. In the contest the Court struck our ten votes as fraudulent but allowed the votes of Dirk and Kate Laukien, who had changed their registrations in January 2010, before we changed ours in March, from a house outside of the Utility District to a business office inside the Utility District boundaries (see multiple houses in the name of the Laukiens at the time they changed their voting residence address, Appendix Exhibit 8). Their two votes were declared legitimate and the incumbents won 2 votes-0.

Eight of these activists and I had indictments issued against us for illegal voting by the Attorney General's Office for changing our voter registration address from a location outside the boundaries of the Road Utility District to another location inside the boundaries of the Road Utility District in order to participate and vote in the May 2010 Road Utility District election (one of the ten, Richard McDuffie agreed to testify for the State and was, therefore, not indicted). Numerous other persons had multiple addresses of property they rented or owned, but they chose to register and vote from an address that was not a single-family home

and from which they were also renting (See specifically, Kate and Dirk Laukien with multiple residences, as well as others registered to vote in that Utility District from non single-family dwellings, Appendix Exhibits 8 and 9, which are fully incorporated herein). I believe that I, and the other people who changed their registration addresses, had the right to register and vote from a rented "residence" instead of a house held in my name. According to the interpretations of the Texas Election Code made by both the Texas Attorney General and the Texas Secretary of State, as well a under the First and Fourteenth Amendments to the United States Constitution, we all had the right to register and vote from a rented "residence" instead of a house titled in our names.

This group of political activists, led by James Jenkins, routinely reviewed campaign finance reports filed by elected officials from around the state. When we found violations, one of the activists would swear under oath on a complaint against the elected official who had committed the violation and file it with the Texas Ethics Commission which would review and prosecute the violation if it had merit. One of our group filed a complaint of violation against State Senator Tommy Williams which resulted in a fine of $5,000.00 paid by Senator Williams prior to 2010. When he learned what our group had done in the Utility District election in 2010, he became angry and told people, including James Doyle (who's affidavit is attached as Appendix Exhibit 10 to this Application and incorporated herein) that he would use his influence to see that those people (meaning those of us who voted in the May 2010 election) would be prosecuted. In order to pursue the filing of criminal charges, Senator Williams contacted the Attorney General's Office (email attached as Appendix Exhibit 11 and incorporated herein) and requested the Attorney General's Office to prosecute these voters. They told him a complaint had to be filed with the Secretary of State's Office and they could receive it from there. Senator Williams then instructed his Assistant to get the complaint to the Secretary of State's Office and then make sure it was taken to his contact at the Attorney General's Office so that charges would be accepted and filed against the Utility District Voters. Senator Williams had a personal interest in protecting the Road Utility District Board of Directors because he had a business relationship with the Road Utility District in his position at Woodforest Bank handling the Utility District's banking and investment accounts. The complaint was taken to the Secretary of State's Office and then forwarded to "the right person" at the Attorney General's Office which put the procedures in motion leading to the Grand Jury Indictments in this case. The complaint did not go through normal channels.

Nine of us were indicted on March 8, 2012, by the Attorney General's Office instead of by the local District Attorney. Before trial, I had my attorney file a Motion to Dismiss the case because the statute violated my right to Free Speech and Association, and my right to Equal Protection to choose my "residence for voting purposes" as stated in the Opinions of the Attorney General and the Secretary of State. It was denied by Judge Stevens, the

specially appointed trial Judge (the elected 359th District Trial Judge recused herself from hearing the case). I had, prior to voting, met with the First Assistant District Attorney of Montgomery County, Phil Grant, before the election and I told him what our group was doing (i.e. registering the Residence Inn Hotel as our "residence for voting purposes" and then planning to vote in the May 2010 Utility District election). He approved and gave me a District Attorney "Challenge Medal" the office gives out to reward outstanding citizens. At trial, Phil Grant, testified that he believed the law on "residence" was vague (See Appendix Exhibit 15).

Any reasonable person who had spoken, as I did, with Joe Kulhavy who told me about Texas Attorney General's Opinion GA-0141, issued February 4, 2004 (Appendix Exhibit 5), and the Secretary of State's Opinion GSC-1, issued January 22, 2004 (Appendix Exhibit 6), would have come to the belief that it was legal to register and vote from the Residence Inn Hotel in that election. I believe the jury's decision was made without reviewing the legal opinions of the Attorney General and Secretary of State that were in evidence. No reasonable group of 12 people could have concluded beyond a reasonable doubt that I knew I was committing the crime of illegal voting when I cast my ballot in the May 2010 Utility District election. I think the evidence that I relied upon written and verbal legal opinions from the people with the authority to render those opinions are a sufficient defense as a matter of law because the jury had no rational basis to deny me the defense. Their decision had to have been based upon an emotional appeal or a misunderstanding of the very complex legal decisions defining "residence" for voting purposes in Texas.

(f) If you did not exhaust your state remedies on Ground Two, explain why:

These issues were subsumed in my appeals and in the Application for Writ of Habeas Corpus denied by the Court of Criminal Appeals.

(g) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
_X_  Yes    ___ No

(2) If you did not raise this issue in your direct appeal, explain why:

(h) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

__X__Yes    ___ No

(2)   If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

Application for Writ of Habeas Corpus

Name and location of the court where the motion or petition was filed:
Texas Court of Criminal Appeals

Docket or case number (if you know): WR 91,018-01

Date of the court's decision:  March 11, 2020

Result (attach a copy of the court's opinion or order, if available):

See Appendix Exhibit One

| | | | |
|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | Yes | X No | |
| (4) Did you appeal from the denial of your motion or petition? | Yes | X No | |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | Yes | No | |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:



Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:
The Court of Criminal Appeals is the highest appellate court and no further appeal was available.

(i)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three :



N/A

16.  Please answer these additional questions about the petition you are filing:

(c)  Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? __X__ Yes

____ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

(d)  Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

No

17.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    __Yes

__X__ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

18.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?  _____ Yes

X_ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

19. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:  Jay Wright, 322 North Main, Conroe, Texas 77301

(b) At arraignment and plea:  Jay Wright, 322 North Main, Conroe, Texas 77301

(c) At trial:  Jay Wright, 322 North Main, Conroe, Texas 77301

(d) At sentencing:  Jay Wright, 322 North Main, Conroe, Texas 77301

(e) On appeal:  Jay Wright, 322 North Main, Conroe, Texas 77301

(f) In any post-conviction proceeding:  Jay Wright, 322 North Main, Conroe, Texas 77301.

(g) On appeal from any ruling against you in a post-conviction proceeding: Jay Wright, 322 North Main, Conroe, Texas 77301

20. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? __ Yes    __X__ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:
N/A

(b) Give the date the other sentence was imposed:  N/A

(c) Give the length of the other sentence: N/A

(d)   Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  N/A   Yes    No

21. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

I had to file an Application For Writ of Habeas Corpus in the Court of Criminal Appeals and attempt to reverse my conviction. I filed it October 2019 and it was dismissed on March 11, 2020. It has been less than one year since my case has been dismissed and the Court of Criminal Appeals refused to hear my constitutional violation claims. The statute of limitations has been extended by 28 U.S.C. Section 2244(d)(1)(B).

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in

28 U.S.C. § 2244(d) provides in part that:

(1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:  that the judgment of conviction be set aside and the trial court be directed to instruct a verdict of not guilty;  or any other relief to which petitioner may be entitled.

Respectfully Submitted,

Jay M. Wright
State Bar No.  22041800
Federal ID # 5927
322 North Main Street
Conroe, Texas 77301
Telephone:  936-494-2462
Telecopier:  936-494-1976
email:  jaywrightatty@hotmail.com
Attorney for Adrian David Heath

Certificate of Service

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the U.S. Mail, via first class postage, return receipt requested, to Ken Paxton, Texas Attorney General, on the 7 ½ day of _____January_____, 2021.

Executed on this day by Jay M. Wright.

Jay M. Wright

Respectfully Submitted,

_____
Signature of Petitioner

Subscribed and sworn to by Adrian David Heath before me on this 7th day of
January, 2021.

SAN JUANITA CAVAZOS
Notary Public, State of Texas
Comm. Expires 06-29-2024
Notary ID 2928719

Notary Public, State of Texas