APPENDIX OF EXIBITS

EXHIBIT
NO.        DESCRIPTION

1. DENIAL OF WRIT OF HABEAS CORPUS IN COURT OF CRIMINAL APPEALS
2. INDICTMENT
3.  JUDGMENT AND SENTENCE
4. EMAIL CHAIN BETWEEN ADRIAN HEATH AND ELECTIONS ADMINISTRATOR
5. ATTORNEY GENERAL'S OPINION GA-0141 RELIED UPON BY ADRIAN HEATH
6. SECRETARY OF STATE ELECTION LAW OPINION GSC-1 RELIEF UPON BY HEATH
7. CERTIFICATION OF VOTER REGISTRAR LISTING ADRIAN HEATH
8. APPRAISAL DISTRICT LISTING OF SECOND AND THIRD RESIDENCES OF DIRK AND KATE LAUKIEN
9. VOTER REGISTRAR RECORDS OF VOTERS WHO REGISTERED AND VOTED FROM A LOCATION OTHER THAN THEIR HOME RESIDENCE WHO HAVE NOT BEEN PROSECUTED
10. AFFIDAVIT OF JAMES DOYLE REGARDING SENATOR WILLIAMS STATED INTENTIONS TO INFLUENCE THE ATTORNEY GENERAL TO PROSECUTE
11. EMAIL CHAIN FROM SENATOR TOMMY WILLIAMS SEEKING PROSECUTION BY ATTORNEY GENERAL ENDING IN THE ATTACHED REFERRAL FROM THE SECRETARY OF STATE'S OFFICE TO THE ATTORNEY GENERAL'S OFFICE
12. STATE'S MOTION TO QUASH SUBPOENA DUCES TECUM FOR COMMUNICATIONS BETWEEN THE ATTORNEY GENERAL'S OFFICE AND EITHER SENATOR TOMMY WILLIAMS, MIKE PAGE, JAMES STILWELL, DISTRICT ATTORNEY BRET LIGON AND HIS ASSISTANT, PHIL GRANT
13.  COURT'S RULING GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM SEEKING RECORDS OF COMMUNICATIONS BETWEEN SENATOR WILLIAMS, MIKE PAGE, JAMES STILWELL, BRET LIGON AND PHIL GRANT AND THE ATTORNEY GENERAL'S OFFICE FOR EVIDENCE OF SELECTIVE/VINDICTIVE PROSECUTION
14. COURT'S RULING DENYING ADRIAN HEATH'S CROSS-EXAMINATION ON ISSUES OF SELECTIVE/VINDICTIVE PROSECUTION AT TRIAL
15. TESTIMONY OF PHIL GRANT CONCLUDING THAT THE DEFINITION OF RESIDENCE IS "VAGUE"
16. OPINION OF FOURTEENTH COURT OF APPEALS ON DIRECT APPEAL OF TRIAL JUDGMENT AND SENTENCE

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS   FILE COPY
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

**3/11/2020**
**HEATH, ADRIAN       Tr. Ct. No. 12-03-02580-CR(1)            WR-91,018-01**
The Court has dismissed your application for writ of habeas corpus without
written order for non-compliance with Texas Rules of Appellate Procedure
73.1. Specifically, applicant has exceeded the two pages allowed for each
ground for relief and supporting facts. Applicant has also filed a computer
generated memorandum that does not include a certificate stating the
number of words in the document.

Deana Williamson, Clerk

                    ADRIAN  HEATH
                    TEXAS BOARD OF PARDONS AND PAROLES
                    P.O. BOX 13401
                    AUSTIN, TX  78711


Exhibit 1

THE STATE OF TEXAS

v.

**Adrian David Heath**

Co-Defendant(s): Robert Allison;
Benjamin Allison;
William Berntsen;
Roberta Cook;
Thomas Curry;
Sybil Doyle;
Peter Goeddertz and
James Jenkins

RECEIVED AND FILED
FOR RECORD
At 11:50 O'clock ___ M.

MAR 0 8 2012

BARBARA GLAUDEN ADAMICK
District Clerk
MONTGOMERY COUNTY TEXAS
By_____ Deputy

**9th** District Court

NO. 12-03-01560 -CR

# INDICTMENT

| Count | Charge | DA File # | Agency # |
|-------|--------|-----------|----------|
| #1 | **ILLEGAL VOTING** Sec. 64.012(a); Fel. 3 ° | 12-001004.1 | 113241542 |

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

    **THE GRAND JURY,** for the County of Montgomery, State of Texas, duly selected, empaneled, sworn, charged, and organized as such by the **9th** Judicial District Court for said County, upon their oaths present in and to said court that **Adrian David Heath**, hereinafter styled Defendant, on or about **May 08, 2010,** and before the presentment of this indictment, in the County and State aforesaid, did then and there vote in an election in which the Defendant knew he was not eligible to vote, to-wit: Defendant voted in the May 8, 2010 Woodlands Road Utility District Board of Directors election, when he knew he did not reside in the precinct in which he voted,

**Against the Peace and Dignity of the State.**

Foreman of the Grand Jury

Minute
Date: 3-8-12

Exhibit 2

DA#:121004.1

RECEIVED AND FILED
FOR RECORD

At 10 O'Clock A M.

SEP 29 2014

CASE NO. 12-08-02580 -CR
INCIDENT NO./TRN: 9151287781

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By_____ Deputy

| THE STATE OF TEXAS | § | IN THE 359TH DISTRICT |
| | § | |
| v. | § | COURT |
| | § | |
| ADRIAN DAVID HEATH | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| STATE ID NO.: | NUNC PRO TUNC | |

## JUDGMENT OF CONVICTION BY JURY

| Judge Presiding: | HON. John Stevens | Date Judgment Entered: | May 22, 2014 |
| Attorney for State: | Jonathan White | Attorney for Defendant: | Jay M. Wright |

Offense for which Defendant Convicted:
**ILLEGAL VOTING**

| Charging Instrument: | Statute for Offense: |
| **Indictment** | **64.012(a) Texas Election Code** |

Date of Offense:
**May 08, 2010**

| Degree of Offense: | Plea to Offense: | Findings on Deadly Weapon: |
| **Fel. 3** | **Not Guilty** | **N/A** |

Verdict of Jury:
**GUILTY**

| Plea to Enhancement /Habitual Paragraphs: | **N/A** |
| Findings on Enhancement /Habitual Paragraphs: | **N/A** |

| Punishment Assessed by: | **Court** | Date Sentence Imposed: **May 22, 2014** | Date Sentence to Commence: **May 22, 2014** |

Punishment and Place of Confinement:   **3 years confinement in the Texas Department of Criminal Justice, Institutional Division**

THIS SENTENCE SHALL RUN CONCURRENTLY

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A** .

| Fine: | Court Costs: | Atty. Fees: | Restitution: | Restitution Payable to: |
| $ 0.00 | $ 334.00 | $0.00 | $ N/A | N/A (see below) |

Sex Offender Registration Requirements do not to the Defendant. TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was **N/A**

If Defendant is to serve sentence in TDCJ, enter total incarceration time.

| Time Credited: | TOTAL: 1 DAY |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. |
| | N/A DAYS    NOTES: N/A |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.
This cause was called for trial in Montgomery County, Texas. The State appeared by her Assistant Attorney General.
Counsel / Waiver of Counsel (select one)
☒ Defendant appeared in person with Counsel.

Minute
Date: _____
MAR 24 2015

— Exhibit 3

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The Charging Instrument was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel.

The Court received the verdict and ORDERED it entered upon the minutes of the Court.

**Punishment Assessed by Jury / Court / No election  (select one)**

☐ Jury. Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

■ Court. Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ No Election. Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of Tex. Code Crim. Proc. art. 42.12.§ 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, attorney fees, and restitution as indicated above.

**Punishment Options (select one)**

■ Confinement in State Jail or Institutional Division. The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Texas Department of Corrections. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the Montgomery County District Clerk. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above, including $2.00 fee for each payment made (pursuant to Article 102.072, T.C.C.P.).

☐ County Jail—Confinement / Confinement in Lieu of Payment. The Court ORDERS Defendant immediately committed to the custody of the Sheriff of Montgomery County, Texas on the date the sentence is to commence. Defendant shall be confined in the Montgomery County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the Montgomery County District Clerk. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above, including $2.00 fee for each payment made (pursuant to Article 102.072, T.C.C.P.).

☐ Fine Only Payment. The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the Montgomery County District Clerk. Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**Execution / Suspension of Sentence  (select one)**

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

*Furthermore, the following special findings or orders apply:*

N/A

Signed and entered on _____ Sept. 15 2020.

_____
JUDGE PRESIDING

Clerk: _____

Right Thumb Print

A.D. Heath <adrian@countycitizens.com>

## ✉ FW: Open records request
1 message

**Gaultney, Carol** <Carol.Gaultney@mctx.org>                    Tue, Mar 2, 2010 at 11:07 AM
To: "adrian@countycitizens.com" <adrian@countycitizens.com>
Cc: "Murray, Matt" <matt.murray@mctx.org>

Dear Mr. Heath: To the best of my knowledge, this office has never received any communication or requests for voter lists or other election information from the Woodlands Road Utility District #1 or any representative.

If there is a particular election date you are interested in, please let me know and we can look in a particular election file for the above. Thank you.

Carol Gaultney, *CERA*

Montgomery County Elections Administrator

9159 FM 1484, Conroe, Texas 77303

936-539-7843  FAX:  936-538-8143

carol.gaultney@mctx.org

Visit our website:  www.MontgomeryVotes.org

Exhibit 4

**Mike Page** <mpage@sphlp.com>                              Mon, Mar 5, 2010 at 11:14 AM
To: "peghausman@sbcglobal.net" <peghausman@sbcglobal.net>, Alex Sutton <alex.sutton@thewoodlandstownship-tx.gov>
Cc: Adrian Heath <adrian@countycitizen.com>, Julie Kime <jkime@sphlp.com>

the RUD had annual elections up until the time when there were no more voters; they will have elections again when they have voters again.

---

**From:** peghausman@sbcglobal.net [mailto:peghausman@sbcglobal.net]
**Sent:** Monday, March 08, 2010 10:29 AM
**To:** Mike Page; Alex Sutton
**Cc:** Adrian Heath; Julie Kime
**Subject:** Re: FELLOW RESIDENTS ASSISTING UTILITY DISTRICTS

So the answer is there is never an election only appointments if someone steps down. And I assume their fellow directors decide.

Sent via BlackBerry from T-Mobile

| Subject: | Fw: The Woodlands Road Utility District No. 1 |
|----------|-----------------------------------------------|
| From: | Adrian David Heath (adrianheath@yahoo.com) |
| To: | admin@montgomerycountymonitor.com; |
| Cc: | rlctexas@sbcglobal.net; |
| Date: | Tuesday, March 9, 2010 2:56 PM |

---- Forwarded Message ----
**From:** Mike Page <mpage@sphllp.com>
**To:** "adrianheath@yahoo.com" <adrianheath@yahoo.com>
**Sent:** Tue, March 9, 2010 12:23:21 PM
**Subject:** The Woodlands Road Utility District No. 1

Attached are the minutes of the meetings of the Board of Directors of The Woodlands Road Utility District No. 1 for 2008 and 2009, the most recent audit report of the District and the list of checks from the operating, debt service at a capital projects fund check registers, as requested. Since there are no residents in the District, there is no document that is responsive to your request for a list enumerating any residents or voters whose registered address is inside the District. These materials, together with the materials previously sent to you, are being provided without charge as a courtesy of my firm. Please be advised that the District's policy is that all of its non-exempt records are available for inspection by any interested person during normal business hours at our offices. If, after inspection, copies of documents are requested, they will be made at the prevailing rate of charge. This policy will be followed hereafter.

*****************ATTENTION TO PUBLIC OFFICIALS:*****************

A "REPLY TO ALL" OF THIS EMAIL COULD LEAD TO VIOLATIONS OF THE TEXAS OPEN MEETINGS ACT. PLEASE REPLY ONLY TO SENDER.

***************** CONFIDENTIALITY NOTICE *****************

The information in this email may be confidential and/or privileged.
This email is intended to be reviewed by only the individual or organization
named above. If you are not the intended recipient or an authorized
representative of the intended recipient, you are hereby notified that any review,
dissemination or copying of this email and its attachments, if any,
or the information contained herein is strictly prohibited. If you have received
this email in error, please immediately notify the sender by telephone
and/or return email, delete this email from your system and destroy
any printed copies which you may have made of this email. Thank you.

***************** IRS Circular 230 Disclosure *****************
To the extent this communication contains any statement regarding
federal taxes, such statement was not written or intended to be used,

| From: | Mike Page |
|---|---|
| To: | Gene Miller; "Buck Davenport"; billneil@garygreene.com; richard.debone@anadarko.com; "elmayhew"; Sutton, Alexander; Derr, Richard |
| Cc: | Julie Kime |
| Subject: | Conroe Courier |
| Date: | Thursday, May 06, 2010 1:23:07 PM |

It appears that our friends at the Courier are going to run a story about the RUD election on Wednesday in an attempt to stir the pot a bit, courtesy of Mr. Adrian Heath and his friends who are running in the election and many of whom (22) have registered to vote in the election using business addresses within the RUD; the Montgomery County Voter Registrar has registered these people officially, so the RUD has no legal basis to challenge their eligibility to vote in the election, even if wrongdoing is suspected; so far, no one, other than the two clearly eligible voters in the RUD, Mr. and Mrs. Laukien, have voted during early voting; it remains to be seen whether anyone else will vote on May 8; a letter was sent by the DA to all registered voters in the RUD cautioning them to seek legal advice about the residency requirements under Texas law for registering to vote; however, if these apparently unqualified people do vote, the remedy under Texas law is for any aggrieved candidate to file an election contest within 30 days to contest their right to vote; presumably, this would be done immediately after the election to enjoin the canvass of the election returns at the scheduled May 17 Board meeting.

The Courier seems uninterested in this potential voter fraud, or in the benefits to the entire Woodlands community that the RUD has brought about over the last 20 years, courtesy of and at the sole expense of the business community in The Woodlands; instead, they are more interested in who complained to the DA and the fact that there has been only two or no voters in the RUD for almost ten years; they don't seem to understand or care that it is irrelevant how many voters there are if there are no opposition candidates; whether 0, 1 or 10,000 voters, if there are no opposition candidates, the election is called and then cancelled under the provisions of the Election Code in order to save taxpayer money---the voters are presumed as a matter of law to have voted for the unopposed candidates.

I am afraid this may be purely personal and directed at me; this is the same tactic that the Courier followed in the recent uproar about the San Jacinto River Authority groundwater reduction program, which I worked on for more than five years; I have been general counsel and bond counsel to SJRA for almost 40 years; instead of looking at the merits of the proposal and whether there are any better alternatives, the Courier just attacks those associated with the proposal because they might make a buck working on it; I regret and apologize to you that it has come to this and that our local newspaper is more interested in personal and reputational destruction than in the merits of the program; I would remind you that our firm has a contract to provide general counsel and bond counsel services to the RUD which is terminable, without cause, on thirty days' notice to us; should you think it best to exercise this option, I will certainly undrstand; again, I apologize to you for the unwanted attention, but I have a low tolerance for voter fraud.

Michael G. Page
Attorney at Law
Schwartz, Page & Harding, L.L.P.
1300 Post Oak Boulevard, Suite 1400

Houston, Texas 77056
Phone: 713-623-4531
Fax: 713-623-6143
mpage@sphllp.com

**Date:** Mon, 8 Mar 2010 09:05:09 -0600

**To:** peghausman@sbcglobal.net<peghausman@sbcglobal.net>; Alex Sutton<alex.sutton@thewoodlandstownship-tx.gov>

**Cc:** adrian@countycitizen.com<adrian@countycitizen.com>

**Subject:** RE: FELLOW RESIDENTS ASSISTING UTILITY DISTRICTS

As we have discussed on several previous occasions, the RUD has been in existence since 1991 to assist in financing major road improvement projects; as was discussed with Steve Burkett during his tenure as General Manager of WCA, and with John Rutledge, Assistant Manager of WCSC, who attended and monitored the meetings of the RUD Board of Directors for approximately two years before his departure, the boundaries and taxing jurisdiction of the RUD include only commericial and retail properties that were included/added by petition of the landowner; no residential properties are included or subject to taxation; the RUD finances improvements to major thoroughfares only, when the County is unable or unwilling to do so; the completed projects are then turned over to the County for operation and maintenance; since the last two houses were torn down for construction of the Waterway west under Grogan's Mill Road, there have been no residents or voters in the RUD; the directors receive a per diem of $25 for a day of service; if either the County or TWDC advances funds to the RUD, at the RUD's request, to finance a project for which the RUD has insufficient funds until its next bond issue, those advanced funds are repaid at the time of the next bond issue; the current tax rate is approximately $0.476 per $100 of taxable valuation on business properties only; the RUD is administered by its Board of Directors consisting of five long-term residents of The Woodlands.

For almost 20 years, the RUD has represented the business community's undertaking to pay a substantial additional tax not applicable to any resident in order to finance road improvements well in advance of, or in addition to, what the County is willing or able to do; these improvements benefit both the business community and the residents of The Woodlands; all of this has been discussed with Mr. Heath; while the benefits to the community are readily apparent, I fail to understand the "fraud" angle.

**From:** Mike Page <mpage@sphllp.com>

**Date:** Mon, 8 Mar 2010 10:24:06 -0600

**To:** peghausman@sbcglobal.net<peghausman@sbcglobal.net>; Alex Sutton<alex.sutton@thewoodlandstownship-tx.gov>

**Cc:** Adrian Heath<adrian@countycitizen.com>; Julie Kime<jkime@sphllp.com>

**Subject:** RE: FELLOW RESIDENTS ASSISTING UTILITY DISTRICTS

Sorry, but you did not ask those questions previously; as discussed with Mr. Heath, any qualified person (a citizen of the State of Texas and 18 or over) may file an application to be on the ballot by the close of business today with the Secretary of the Board of Directors or with the Election Agent, Ms. Julie Kime, at our offices at 1300 Post Oak Blvd., Suite 1400, Houston, TX 77056; when and if there are again voters in the RUD, they will decide who serves.



## ATTORNEY GENERAL OF TEXAS
### GREG ABBOTT

February 4, 2004

The Honorable Rodney Ellis                    Opinion No.  GA-0141
Chair, Government Organization Committee
Texas State Senate                            Re:   Residency requirements for voting in an
P. O. Box 12068                               election in Texas (RQ-0157-GA)
Austin, Texas 78711

Dear Senator Ellis:

      You ask three questions regarding voter eligibility and residency requirements for voting in Texas, particularly with respect to students enrolled in schools of higher education.

## I.    Background

      In your letter requesting an official opinion from this office, you state that your request is prompted by statements made by the Criminal District Attorney of Waller County, who you say has "declared that students at Prairie View A&M University may not meet residency requirements sufficient to vote in local elections."[1] Citing *Symm v. United States*, 439 U.S. 1105 (1979), you note that the United States Supreme Court rejected an appeal by a former Waller County Tax Assessor-Collector, who was also the voter registrar, thus affirming the decision of a three-judge panel that enjoined the Tax Assessor-Collector from refusing to register college dormitory residents enrolled at Prairie View A&M University. The current Tax Assessor-Collector of Waller County, who is also the voter registrar, has publicly declared that she will seek guidance from and follow the directives of the Office of the Secretary of State, who is the state's chief election officer, on these matters, rather than rely on advice from the local prosecutor. *See* Terry Kliewer, *Prairie View Voting Issue to be Appealed*, HOUSTON CHRONICLE, Dec. 24, 2003, at 19A. You ask for an opinion from this office about eligibility for voting in Texas, residency requirements for voter registration, and the authority of local prosecutors to prevent local voter registrars from registering voters.

---

      [1]Letter from Honorable Rodney Ellis, Chair, Government Organization Committee, Texas State Senate, to Honorable Greg Abbott, Texas Attorney General at 1 (Dec. 30, 2003) (on file with Opinion Committee) [hereinafter Request Letter].



Exhibit 5

The Honorable Rodney Ellis - Page 2      (GA-0141)

## II.   Analysis

### A.   Legal Requirements for Eligibility to Vote

You first ask: "What are the legal requirements to vote in an election in Texas?" Request Letter, *supra* note 1, at 2.

The Texas Constitution provides that every person who is both a citizen of the United States and a resident of Texas shall be deemed a qualified voter, provided, however, that the person is registered to vote and does not fall within any of a specific set of disqualifications. *See* TEX. CONST. art. VI, § 2(a).  Persons so disqualified are those under 18 years of age; those who have been determined mentally incompetent by a court, subject to such exceptions as the legislature may enact; and those convicted of any felony, again subject to such exceptions as the legislature may enact. *See id.* art. VI, § 1(a).  Additionally, the legislature is directed to "enact laws to exclude from the right of suffrage persons who have been convicted of bribery, perjury, forgery, or other high crimes." *Id.* art. VI, § 1(b).  The legislature expressly is directed to "make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box," as well as to "provide by law for the registration of all voters." *Id.* art. VI, § 4.

Statutory eligibility requirements have been codified in the Election Code, which provides that:

> Except as otherwise provided by law, to be eligible to vote in an election in this state, a person must:
>
> (1) be a qualified voter as defined by Section 11.002 on the day the person offers to vote;
>
> (2) be a resident of the territory covered by the election for the office or measure on which the person desires to vote; and
>
> (3) satisfy all other requirements for voting prescribed by law for the particular election.

TEX. ELEC. CODE ANN. § 11.001 (Vernon 2003).  Section 11.002 defines "qualified voter":

> In this code, "qualified voter" means a person who:
>
> (1) is 18 years of age or older;
>
> (2) is a United States citizen;
>
> (3) has not been determined mentally incompetent by a final judgment of a court;

The Honorable Rodney Ellis - Page 3      (GA-0141)

(4) has not been finally convicted of a felony or, if so convicted, has:

(A) fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or

(B) been pardoned or otherwise released from the resulting disability to vote;

(5) is a resident of this state; and

(6) is a registered voter.

*Id.* § 11.002.

In order to be a resident of the state, one must satisfy the statutory definition of "residence." Section 1.015 of the Election Code defines "residence":

(a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.

(b) Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

(c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.

(d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home.

(e) A person who is an inmate in a penal institution or who is an involuntary inmate in a hospital or eleemosynary institution does not, while an inmate, acquire residence at the place where the institution is located.

*Id.* § 1.015.

In order to register to vote, one must file an application with the voter registrar of the county in which the applicant desires to vote. *Id.* § 13.002. In order to file, one must satisfy the statutory eligibility requirements for registration, which track the definition of "qualified voter" found in

section 11.002 with the additional requirement that the person "be a resident of the county in which application for registration is made." *Id.* § 13.001(a)(5). Thus, a person who complies with and satisfies the requirements of sections 1.015, 11.001, 11.002, 13.001, and 13.002 of the Election Code is an "eligible voter." *See id.* §§ 1.015, 11.001-.002, 13.001-.002 (Vernon 2003 & Supp. 2004).

 **B.**  **Residency Requirements for Voter Registration and *United States v. Texas***

   In your second question you ask: "What is the law with regard to residency in the State of Texas as it relates to voter registration?" *Request Letter, supra* note 1, at 2.

   As noted above, in order to register to vote, one must be a "resident" of the county in which one desires to vote. Residence for purposes both of registration and voting is defined to mean "domicile," *i.e.*, "one's home and fixed place of habitation to which one intends to return after any temporary absence." TEX. ELEC. CODE ANN. § 1.015(a) (Vernon 2003). Residence must be determined in accordance with the common-law rules, as enunciated by the courts of this state, unless the code provides otherwise. *See id.* § 1.015(b). A person does not lose residence by leaving his home to go to another place for temporary purposes only; nor does a person acquire a residence in a place to which he has come for temporary purposes only and without the intention of making that place his home. *See id.* § 1.015(c)-(d).

   In the leading Texas Supreme Court case of *Mills v. Bartlett*, 377 S.W.2d 636 (Tex. 1964), the court declared that the meaning of the term "residence" for voting purposes

> depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile. . . . Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined. There is no specific length of time for the bodily presence to continue.

*Id.* at 637 (citations omitted). *See Slusher v. Streater*, 896 S.W.2d 239, 243 (Tex. App.–Houston [1st Dist.] 1995, no writ); *Alvarez v. Espinoza*, 844 S.W.2d 238, 247 (Tex. App.–San Antonio 1992, writ dism'd w.o.j.); *Guerra v. Pena*, 406 S.W.2d 769, 776 (Tex. Civ. App.–San Antonio 1966, no writ); *McBeth v. Streib*, 96 S.W.2d 992 (Tex. Civ. App.–San Antonio 1936, no writ); *see also* Tex. Att'y Gen. Op. Nos. JC-0520 (2002), JM-611 (1986), JM-231 (1984).

   Prior to *Whatley v. Clark*, 482 F.2d 1230 (5th Cir. 1973), students in Texas were presumed by statute to have a domicile at the residence of their parents, not where they were enrolled at institutions of higher education. *Whatley* struck down the statutory presumption in former article 5.08(k) of the Election Code providing that "'a student in a school, college, or university' shall not be considered to have acquired a voting residence at the place where he lives while attending school 'unless he intends to remain there and to make that place his home indefinitely after he ceases to be

The Honorable Rodney Ellis - Page 5     (GA-0141)

a student.'" *Whatley*, 482 F.2d at 1231 (quoting former article 5.08(k) of the Election Code, *see* Act of May 19, 1967, 60th Leg., R. S., ch. 723, § 21, sec. 40 (art. 5.08), 1967 Tex. Gen. Laws 1858, 1879-80, *repealed by* Act of May 13, 1985, 69th Leg., R. S., ch. 211, § 1, sec. 1.015, 1985 Tex. Gen. Laws 802, 807) (substantive recodification of Texas Election Code, repealing former article 5.08 and enacting section 1.015). The court noted that the statutory presumption illegally treated student voters differently than non-student voters:

> By its terms it creates a presumption that students are not domiciliaries of the places they live while attending school. Of course, the presumption is rebuttable; but unless a student carries the burden of persuading the voter registrar that he is in fact a domiciliary of the place where he resides for the better part of each year, he is not permitted to vote there and is consequently denied an opportunity to participate in elections which may have considerably more impact on his life than do those in the area where he resided before becoming a student. Other prospective voters, on the other hand, are not subject to this presumption of nonresidency or to the attendant burden of overcoming it.

*Whatley*, 482 F.2d at 1233 (footnotes omitted). The court declared that the presumption violated the Equal Protection Clause of the 14th Amendment and struck down the provision.

Under current law, the determination regarding "residence" thus involves both physical presence and current intention of the applicant; if a student, like any other applicant, satisfies the requirements of section 1.015, that student is a "resident" of the county in which he seeks to register. The intention of the voter registration applicant is crucial to a proper determination of residence, and every person is strongly presumed to have "the right and privilege of fixing his residence according to his own desires." *McBeth*, 96 S.W.2d at 995. For example, let us assume that two students, Student A and Student B, live in the same college dormitory. Student A, who is living in the dormitory and is therefore physically present for purposes of voter registration yet intends his residence to remain the same as that of his parents, can permissibly register to vote in the county of his parent's residence. *See, e.g., Alvarez*, 844 S.W.2d at 247 (by temporarily moving to Austin to attend school at the University of Texas at Austin, challenged voter did not lose his Frio County residence or acquire residence for voting purposes in Travis County). On the other hand, Student B, who is living in the same dormitory as Student A yet who intends that the dormitory be his residence for purposes of voter registration, can permissibly register to vote in the county where his dormitory is located. *See, e.g., Whatley*, 482 F.2d 1230 (student who was physically present in Denton County and intended to claim Denton County as his residence for purposes of voter registration lost residence in the county where his parents resided and acquired residence in Denton County). And the mere fact that an applicant claims a post office box as an address or that many applicants claim the same post office box as an address is not dispositive regarding the determination of residence. Indeed, depending upon the facts in each case, it might not even be relevant. *See, e.g., Speights v. Willis*, 88 S.W.3d 817 (Tex. App.–Beaumont 2002, no pet.) (voters who were physically present and intended county to be residence for purposes of voter registration, yet who claimed post

The Honorable Rodney Ellis - Page 6      (GA-0141)

office box numbers as addresses, satisfied statutory voter registration application requirements and, thereby, residence requirement).

Without outlining all of the various fact situations that the courts have addressed in determining whether a voter is a "resident," we can say that all applicants for registration, including students, must be subject equally to whatever presumptions or restrictions are imposed by law. *See Dunn v. Blumstein*, 405 U.S. 330 (1972). To illustrate the sorts of factors and practices that cannot be employed to determine "residence," we examine the federal three-judge panel's injunction in *United States v. Texas*, 445 F. Supp. 1245 (S.D. Tex. 1978), *aff'd, Symm v. United States*, 439 U.S. 1105 (1979) (hereinafter *Texas*), a case involving the very county that is the focus of your concern – Waller County. Though in a brief submitted to this office the Criminal District Attorney of Waller County seems to assert that the case only prohibited the use of a certain questionnaire in determining "residence" for purposes of voter registration,[2] the injunction issued in the case makes it clear beyond cavil that the court concluded that a variety of practices undertaken by the voter registrar violated the United States Constitution.

In *Texas*, a federal three-judge panel enjoined the Waller County Tax Assessor-Collector, who was the voter registrar, from refusing to register to vote students enrolled at Prairie View A&M University. Specifically, the panel enjoined the registrar from engaging in a variety of practices that the panel deemed violated the 26th Amendment to the United States Constitution, which provides that no right of citizens who are 18 years old or older to vote shall be denied or abridged on account of age.[3] *See* U.S. CONST. amend. XXVI, § 1.

The panel ordered that, *inter alia*, college students of Waller County must be registered and allowed to vote on the same basis and by application of the same standards and procedures as non-students, without reference to whether such students had dormitory addresses, whether or not they resided in Waller County prior to attending school, and whether or not they planned to leave Waller County upon graduation. *See United States v. Texas*, Civil Action No. 76-H-1681, Injunction Decree, ¶ 1 (S.D. Tex. 1978) (on file with Opinion Committee). The panel acknowledged that the registrar had the authority under the Election Code to make a factual determination as to whether each applicant to vote was a bona fide resident of Waller County; however, in making this factual determination, the panel declared that the registrar could not find that a person was a non-resident of Waller County for any of the following reasons:

      A. That such person resides in a dormitory at Prairie View A&M University;

      B. That such person owns no property in Waller County;

      C. That such person is a student at Prairie View University;

---

[2]Brief from Honorable Oliver S. Kitzman, Criminal District Attorney, Waller County, to Nancy Fuller, Chair, Opinion Committee, Office of the Attorney General at 2-6 (Jan. 23, 2004) (on file with the Opinion Committee).

[3]The complete text of the injunctive order of the panel is set forth in Appendix A of this opinion.

The Honorable Rodney Ellis - Page 7       (GA-0141)

       D.  That such applicant has no employment or promise of employment in Waller County;

       E.  That such applicant previously lived outside Waller County, or may live outside Waller County after his graduation;

       F.  That such person visits the home of his parents, or some other place during holidays and school vacations.

*Id.* at ¶ 2.

    The panel required that, if the registrar made a finding that a person was not a bona fide resident of Waller County, the determination must be made on the basis of tangible evidence, consisting of facts or factors other than the six factors listed above. *See id.*  In addition, in the event that the registrar made a determination that any person who claims to be a resident of Waller County, and who had a Prairie View A&M University address, was not a bona fide resident of Waller County, the registrar must make a written record of the precise, exact tangible evidence upon which he relied in making his determination of non-residency. *See id.*  All records of the type described in the previous sentence were required to be kept in legible form and in a single file in the Waller County Registrar's office, where such records could be inspected by the plaintiff in the cause or any other person having a legitimate interest in the examination of such records.  Such records were required to be maintained for a period of five years after originally made. *See id.*

    Additionally, students of Waller County were not to be subjected to the presumption contained in former article 5.08(k) of the Election Code or to any other presumption with regard to their voting residence. *See id.* ¶ 3.  The registrar was ordered immediately to cease using the residence standard for students, which had been implemented by means of a questionnaire, to terminate the use of the questionnaire, and to henceforth register students on the basis of the information contained in the state-approved registration form, as was done elsewhere in Texas, unless the registrar had tangible, recordable evidence (consistent with Paragraph 2 of the decree) that such applicant was not a bona fide resident of Waller County. *See id.* ¶ 4.  And the registrar was enjoined from subjecting Prairie View A&M students to any particular or discriminatory procedure not applied to non-students on a regular basis, such as, for example, causing students to visit his office and submitting students orally to the questioning previously contained in the questionnaire discussed in the court's Memorandum Opinion. *See id.*

    We stress that the United States Supreme Court affirmed the three-judge panel's judgment in *Symm v. United States*, 439 U.S. 1105 (1979).  Thus, clearly, in light of *Whatley* and *Texas*, students in Texas may no longer be subjected, whether by statute or by practice, to any presumption with respect to "residence" not also applied to all other voters in Texas.

The Honorable Rodney Ellis - Page 8      (GA-0141)

**C.    Administrative Procedure Governing Applications for Registration to Vote and the Authority of the District Attorney**

With your third question, you ask about the authority of the local prosecutor to prevent someone from registering to vote or to prevent the voter registrar from acting on that application:

> Does the [Criminal] District Attorney have the jurisdiction or authority to prevent local election officials from refusing to allow a person to register to vote in the county? In other words, can the [Criminal] District Attorney preemptively prevent someone from registering to vote in an election or must the [Criminal] District Attorney bring an action against the individual after an election has taken place contesting unlawful voter registration?

Request Letter, *supra* note 1, at 2.

**1.    *Local Prosecutor's Authority Regarding Voter Registration Decisions***

The voter registrar is authorized by the Election Code to conduct an administrative procedure to determine and possibly challenge the eligibility of an applicant for registration to vote, subject to judicial review. *See* TEX. ELEC. CODE ANN. §§ 13.001-.146 (Vernon 2003 & Supp. 2004), 17.001-.008 (Vernon 2003). The Election Code also establishes an administrative procedure cancelling, by the registrar's initiative or that of another registered voter, a voter registration application that already has been approved, if the voter is no longer eligible. *Id.* §§ 16.001-.095 (Vernon 2003 & Supp. 2004). Adverse decisions rendered under chapter 16 are also subject to judicial review. *Id.* §§ 17.001-.008 (Vernon 2003). These provisions grant no role to a local prosecutor. Thus, we have found no statute granting local prosecutors the preemptive authority to prevent a person from filing an application to register to vote or the voter registrar from acting on that application. Local prosecutors do, however, have express authority to prosecute a person who knowingly makes a false statement on an application for voter registration.

**2.    *Local Prosecutor's Authority to Prosecute Certain Criminal Offenses Involving Voter Fraud***

Section 13.007 of the Election Code provides:

> (a) A person commits an offense if the person knowingly makes a false statement or requests, commands, or attempts to induce another person to make a false statement on a registration application.

> (b) An offense under this section is a Class B misdemeanor.

The Honorable Rodney Ellis - Page 9      (GA-0141)

> (c) For purposes of this code, an offense under this section is considered to be perjury, but may be prosecuted only under this section.

*Id.* § 13.007.[4]  An application for voter registration must contain substantially more than just a declaration of residence.  Subsection (c) of section 13.002 sets forth the information that must be included on an application for voter registration:

> (c) A registration application must include:

> > (1) the applicant's first name, middle name, if any, last name, and former name, if any;

> > (2) the month, day, and year of the applicant's birth;

> > (3) a statement that the applicant is a United States citizen;

> > (4) a statement that the applicant is a resident of the county;

> > (5) a statement that the applicant has not been determined mentally incompetent by a final judgment of a court;

> > (6) a statement that the applicant has not been finally convicted of a felony or that the applicant is a felon eligible for registration under Section 13.001;

> > (7) the applicant's residence address or, if the residence has no address, the address at which the applicant receives mail and a concise description of the location of the applicant's residence;

> > (8) the following information:

> > > (A) the applicant's Texas driver's license number or the number of a personal identification card issued by the Department of Public Safety;

> > > (B) if the applicant has not been issued a number described by Paragraph (A), the last four digits of the applicant's social security number; or

---

[4]The offense of perjury is set forth in chapter 37 of the Penal Code.  *See* TEX. PEN. CODE ANN. §§ 37.01-.13 (Vernon 2003 & Supp. 2004).

The Honorable Rodney Ellis - Page 10     (GA-0141)

> (C) a statement by the applicant that the
> applicant has not been issued a number described by
> Paragraph (A) or (B);
>
> (9) if the application is made by an agent, a statement of the
> agent's relationship to the applicant; and
>
> (10) the city and county in which the applicant formerly
> resided.

*Id.* § 13.002(c) (Vernon Supp. 2004). Thus, knowingly providing any false information in answer to the above ten items of information violates section 13.007 of the Election Code.

Prosecution under section 13.007, by its terms, is not limited only to those instances in which a person already has cast a vote. Rather, the section creates an offense that may be prosecuted at any time its elements are met, whether before or after an election, subject of course to applicable statutes of limitations. We emphasize that it is not a criminal offense in this state if an applicant for voter registration believes, however mistakenly, that the applicant is a resident of the county in which the applicant seeks to vote. *But see id.* § 64.012 (voting or attempting to vote in an election when voter knows that the voter is ineligible to vote is criminal offense). However, knowingly making a false statement on an application for voter registration is a criminal offense.

Additionally, we note that chapter 273 of the Election Code confers general authority on both local prosecutors and the attorney general to investigate alleged criminal conduct "in connection with" an election. Section 273.001 provides in pertinent part that:

> If two or more registered voters of the territory covered by an
> election present affidavits alleging criminal conduct in connection
> with the election to the county or district attorney having jurisdiction
> in that territory, the county or district attorney shall investigate the
> allegations. If the election covers territory in more than one county,
> the voters may present the affidavits to the attorney general, and the
> attorney general shall investigate the allegations.

*Id.* § 273.001(a). Moreover, the local prosecutor and the attorney general have authority to conduct such an investigation in the absence of affidavits:

> A district or county attorney having jurisdiction or the
> attorney general may conduct an investigation on the officer's own
> initiative to determine if criminal conduct occurred in connection
> with an election.

*Id.* § 273.001(b). In this specific instance, the Criminal District Attorney of Waller County "has all the powers, duties, and privileges in Waller County that are conferred by law on county and district attorneys in the various counties and districts." TEX. GOV'T CODE ANN. § 44.337 (Vernon Supp.

The Honorable Rodney Ellis - Page 11       (GA-0141)

2004).  Thus, the Criminal District Attorney of Waller County is conferred authority by Election Code chapter 273 to investigate, on his own initiative, whether criminal conduct occurred "in connection with an election." TEX. ELEC. CODE ANN. § 273.001(b) (Vernon Supp. 2004).

Therefore, in answer to your third question, we conclude that local prosecutors are conferred no authority to prevent someone from registering to vote or to prevent voter registrars from acting on voter registration applications. We further conclude that local prosecutors may seek to investigate and prosecute possible offenses under section 13.007 of the Election Code any time that credible evidence of such fraud is brought to their attention or complaints are filed with their offices; local prosecutors are conferred general authority to investigate whether criminal conduct has occurred "in connection with an election" under chapter 273 of the Election Code.  *Id.*

The Honorable Rodney Ellis - Page 12      (GA-0141)

## S U M M A R Y

A person who complies with and satisfies the requirements of sections 1.015, 11.001, 11.002, 13.001, and 13.002 of the Texas Election Code is an "eligible voter". *See* TEX. ELEC. CODE ANN. §§ 1.015, 11.001-.002, 13.001-.002 (Vernon 2003 & Supp. 2004).

The meaning of "residence" for purposes of voting and voter registration is governed by section 1.015 of the Texas Election Code. "Residence" is defined to mean "domicile," *i.e.*, one's home and fixed place of habitation to which one intends to return after any temporary absence. *Id.* § 1.015(a) (Vernon 2003). Residence must be determined in accordance with the common-law rules, as enunciated by the courts of this state, unless the code provides otherwise. *See id.* § 1.015(b). A person does not lose his residence by leaving his home to go to another place for temporary purposes only; nor does a person acquire a residence in a place to which he has come for temporary purposes only and without the intention of making that place his home. *See id.* § 1.015(c). Both bodily presence and current intention on the part of the applicant or voter are necessary to establish residence.

The intention of the voter registration applicant is crucial to a proper determination of residence, and every person is strongly presumed to have "the right and privilege of fixing his residence according to his own desires." *McBeth v. Streib*, 96 S.W.2d 992, 995 (Tex. Civ. App.–San Antonio 1936, no writ). For example, one student who is living in a dormitory, and is therefore physically present for purposes of voter registration, yet who intends his residence to remain the same as that of his parents, can permissibly register to vote in the county of his parent's residence. On the other hand, another student living in the same dormitory who intends that the dormitory be his residence for purposes of voter registration, can permissibly register to vote in the county where the dormitory is located. And the mere fact that an applicant claims a post office box as an address or that many applicants claim the same post office box as an address is not dispositive regarding the determination of residence.

Chapter 13 of the Texas Election Code sets forth a detailed administrative procedure to be conducted by the voter registrar governing the submission and approval of voter registration applications. Chapter 16 of the Texas Election Code sets forth a detailed administrative procedure to be conducted by the voter registrar governing the cancellation, whether through the initiative of

The Honorable Rodney Ellis - Page 13      (GA-0141)

the registrar or any registered voter, of voter registration applications already approved. Chapter 17 of the Texas Election Code provides for judicial review of any administrative decision made under those chapters. No section of any of these chapters affords an official role to local prosecutors. Therefore, local prosecutors have no authority to prevent any voter registrar from performing the registrar's duties as provided by law. However, local prosecutors are authorized to investigate and prosecute whenever credible evidence is brought to their attention, or a complaint is filed regarding alleged violations of section 13.007 of the Texas Election Code, which makes it a criminal offense to submit false or fraudulent information on a voter registration application.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Jim Moellinger
Assistant Attorney General

The Honorable Rodney Ellis - Page 14      (GA-0141)

**Appendix A**

The injunction decree issued in *United States v. State of Texas* ordered the following:

1.  College students of Waller County shall be registered and allowed to vote on the same basis and by application of the same standards and procedures as non-students, without reference to whether such students have dormitory addresses, whether or not they resided in Waller County prior to attending school, and whether or not they plan to leave Waller County upon graduation.

2.  The Court recognizes that LeRoy Symm has the right under the Texas Election Code to make a factual determination as to whether or not each applicant to vote is a bona fide resident of Waller County; however, in making this factual determination, LeRoy Simm shall not find that a person is a non-resident of Waller County for any of the following reasons:

    A.  That such person resides in a dormitory at Prairie View A&M University;

    B.  That such person owns no property in Waller County;

    C.  That such person is a student at Prairie View University;

    D.  That such applicant has no employment or promise of employment in Waller County;

    E.  That such applicant previously lived outside Waller County, or may live outside Waller County after his graduation.

    F.  That such person visits the home of his parents, or some other place during holidays and school vacations.

In this connection, if LeRoy Symm, in the performance of his duties, determines that he is to make a finding that a person is a non-resident, or not a bona fide resident of Waller County, such determination shall be made on the basis of tangible evidence, consisting of facts or factors other than the six factors listed above.  In addition, in the event LeRoy Symm makes a determination that any person who claims to be a resident of Waller County, and who has a Prairie View University address, is not a bona fide resident of Waller County, Mr. Symm shall make a written record of the precise, exact tangible evidence upon which he relied in making his determination of non-residency.  All records of the type described in the previous sentence shall be kept in legible form and in a single file in the Waller County Registrar's office where such records can be inspected by the plaintiff in this cause or any other person having a legitimate interest in the examination of such records.  Such records shall be maintained for a period of five (5) years after originally made.

No additional inquiry or information shall be required solely because the application form promulgated by the Secretary of State of Texas contains different permanent and mailing addresses or states that the applicant is registered in another Texas county.

The Honorable Rodney Ellis - Page 15      (GA-0141)

3.  Students of Waller County shall not be subjected to the presumption contained in [art.] 5.08(k) of the Texas Election Code, or to any other presumption with regard to their voting residence.

4.  The Tax Assessor, LeRoy Symm, shall immediately cease the utilization of the residence standard for students which has been implemented by means of a questionnaire, shall terminate the use of the questionnaire, and shall henceforth register students on the basis of the information contained in the state-approved registration form, as is done elsewhere in Texas, unless LeRoy Symm has tangible, recordable evidence (consistent with Paragraph 2 above of this injunctive decree) that such applicant is not a bona fide resident of Waller County.  Defendant is enjoined from subjecting Prairie View students to any particular or discriminatory procedure not applied to non-students on a regular basis, such as for example, causing students to visit his office and submit students orally to the questioning previously contained in the questionnaire discussed in this Court's Memorandum Opinion.

5.  The defendant Tax Assessor of Waller County shall schedule registration and other election procedures pursuant to a time table which will allow students who are bona fide residents of Waller County to register and vote in the elections scheduled for May 6, 1978, and in subsequent elections.  Adequate resources and personnel shall be employed by the defendant Tax Assessor, so as to avoid causing student applicants any significant or unusual inconvenience.

6.  Defendant Symm may require that all applicable information requested on the application form promulgated by the Secretary of State of Texas be supplied by the applicant, and may refuse registration unless and until all such information is provided.  In the event the application form is incomplete and registration is denied on such basis, defendant Symm shall promptly return such incomplete application to the applicant with notice of the reason registration is denied.

7.  The entry of this order shall not preclude the State of Texas from altering its voter registration standards so long as said standards are applied on a uniform basis and do not discriminate on the basis of race or age.  Any such alteration of uniform standards shall be applied in Waller County and elsewhere without further order of this Court.

8.  No relief will be granted with respect to defendants, Mark White, and his successor, Steven C. Oaks, John L. Hill, the State of Texas, and Waller County.  It is further ORDERED, ADJUDGED, and DECREED that LeRoy Symm recover nothing of or from Steven C. Oaks, Secretary of State of the State of Texas, on his cross-claim, and that the State of Texas, acting by and through John L. Hill, its Attorney General, have judgment against LeRoy Symm on its cross-claim ordering that LeRoy Symm obey Rule 004.30.05.313 of the Rules of the Secretary of State, and that he cease using the written questionnaire with reference to the registration of voters in Waller County.



**Geoffrey S. Connor**
SECRETARY OF STATE
State of Texas

January 22, 2004

*VIA HAND DELIVERY*
The Honorable Rick Perry
Governor
State Capitol, Room 2S.1
Austin, Texas 78711

**Election Law Opinion GSC –1**

Dear Governor Perry:

     This formal election law advisory opinion is in response to your letter, dated December 30, 2003, requesting this office's opinion on matters relating to residency in Texas. Specifically, you requested the opinion of this office concerning how Section 1.015 of the Texas Election Code ("Code") applies to college students currently attending Prairie View A&M University. Because you have raised issues of general importance, I shall address your question within the context of this formal election law opinion, which is rendered under my authority to obtain and maintain uniformity in the interpretation of elections laws. Tex. Elec. Code Ann. § 31.001(a) (Vernon 2003).

    *Question*:     What is the proper interpretation and application of Section 1.015 of the Code in the context of voter registration by and "residency" of college students, in particular, those students currently attending Prairie View A&M University?

  *Short Answer*:   The definition of residence for the purpose of voter registration is well settled in Texas. As stated in the seminal case of *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.1964), "[n]either bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined. There is no specific length of time for the bodily presence to continue." Most importantly, a college student cannot be held to stricter residency

*Exhibit 6 –*

Honorable Rick Perry
January 22, 2004
Page 2

standards than other classes of Texas voters as a precondition to submitting an application and becoming a registered voter in this state.

## I.    APPLICABLE TEXAS STATUTES

In general, a person is eligible to vote in elections in Texas if such person first meets the requirements in Section 11.001 of the Code as set forth below:

§ 11.001. Eligibility to Vote.

Except as otherwise provided by law, to be eligible to vote in an election in this state, a person must:

(1) be a qualified voter as defined by Section 11.002 on the day the person offers to vote;

(2) be a resident of the territory covered by the election for the office or measure on which the person desires to vote; and

(3) satisfy all other requirements for voting prescribed by law for the particular election.

TEX. ELEC. CODE ANN. § 11.001 (Vernon 2003). The next step in the analysis of who is permitted to vote in Texas requires a review of the definition of "qualified voter" set forth in Section 11.002 of the Code:

§ 11.002 Qualified Voter.

In this code, "qualified voter" means a person who:

(1) is 18 years of age or older;

(2) is a United States citizen;

(3) has not been determined mentally incompetent by a final judgment of a court;

(4) has not been finally convicted of a felony or, if so convicted, has:

(A) fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or

(B) been pardoned or otherwise released from the resulting disability to vote;

Honorable Rick Perry
January 22, 2004
Page 3

> (5) *is a resident of this state*; and

> (6) is a registered voter.

TEX. ELEC. CODE ANN. § 11.002 (Vernon 2003) (*emphasis added*).  Clearly, if it appears that a person meets all of the aforementioned requirements, then such person shall be permitted to vote in Texas.

The definition of "residence" is as set forth below:

> § 1.015. Residence

> > (a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.

> > (b) Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

> > (c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.

> > (d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home.

> > (e) A person who is an inmate in a penal institution or who is an involuntary inmate in a hospital or eleemosynary institution does not, while an inmate, acquire residence at the place where the institution is located.

TEX. ELEC. CODE ANN. § 1.015 (Vernon 2003).  An analysis of Section 1.015 of the Code and the judicial interpretations thereof follows immediately below.

## II.    ANALYSIS

### A.    *Applicable Federal Cases*

Texas has a history of providing test cases for what were sometimes referred to in the past as transient voters, especially with respect to constitutional questions concerning presumptions against a particular class of voters (i.e., military and student voters, etc.).  Some of these test cases, and their holdings are outlined below:

- The state constitutional conclusive presumption against military voters using a Texas military base as their home during their service was struck down as violating the

Honorable Rick Perry
January 22, 2004
Page 4

Equal Protection Clause of the Fourteenth Amendment. *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775 (1965).

- A previous Election Code provision which sought to create a rebuttable statutory presumption against student voters establishing their college town as home was struck down as unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. *Whatley v. Clark*, 482 F.2d 1230 (5th Cir. 1973) (hereinafter referred to as "*Whatley*").

- The actions of a Texas county registrar that required student voters to fill out a questionnaire demonstrating an intent to remain after graduation was struck down as violating the Twenty-Sixth Amendment. *United States v. Texas*, 445 F. Supp. 1245, 1249,1257 (S. D. Tex. 1978), *aff'd in memorandum op. sub nom. Symm v. United States*, 432 U.S. 1105 (1979) (hereinafter referred to as "*Texas*").

As noted in the *Texas* case:

> The trial court's opinion in *Ballas v. Symm*, 351 F.Supp. 876, at 877, discusses the fact that on October 2, 1972, the United States District Court for the Eastern District of Texas (Judge Wayne Justice) decided Whatley, holding at the trial court level that the statutory presumption contained in Article 5.08(k) was unconstitutional. The opinion also discusses the fact that on October 3, 1972, the Chief Election Officer of the State of Texas, Secretary of State, Robert Bullock, issued a bulletin to all voting registrars, advising that: "No county registrar may require any affidavits or questionnaire in addition to the information required on the application for a voter registration certificate."

*Texas*, at 1246. It is the opinion of this office that the decisions in *Whatley* and *Texas* are binding, definitive precedents in this state with respect to issues concerning the rights of students to register to vote.

### B.   Applicable State Cases

The statutory definition of residence adopts Texas common law, reinforcing the notion that residence involves a mixed question of law and fact. See Tex. Elec. Code Ann. § 1.015(b) (Vernon 2003). College students, and other travelling Texans, including those in the United States military, have, on a number of occasions, expressed concerns to personnel in my office about their proper residency for voting purposes due to the fact that their lives are "split" among one or more physical locations.

There are a plethora of election cases on Texas residence regarding both voters and candidates. Because of the fact-intensive nature of the residence question, some have argued that it is possible to select one case or another as "proving" that a certain factor is dispositive with respect to the question of intent for residence purposes. However, it is the opinion of this office that such an approach can be misleading. The one constant in the common law tests that have

Honorable Rick Perry
January 22, 2004
Page 5

been approved by the Texas Supreme Court, and federal courts interpreting Texas law, is that no one factor is dispositive. As stated by the Texas Supreme Court in the leading Texas case, *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.1964), regarding residence:

> The meaning that must be given to it [residence] depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile.
>
> ...
>
> Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined. *There is no specific length of time for the bodily presence to continue.*

*Mills*, at 637 (*emphasis added*). The majority of Texas courts have consistently ruled that residency is a combination of intention and fact, and that the voter's intention must be reviewed to make a final determination of residence. *McBeth v. Streib*, 96 S.W.2d 992 (Tex. Civ. App. – San Antonio 1936, no writ). For example, the El Paso Court of Appeals held that "the voter's intention was material to a proper determination of the voter's residence requirement." *Simmons v. Jones*, 838 S.W.2d 298, 301 (Tex. App. – El Paso 1992, no writ). Coupled with the voter's intention, there must also exist a physical connection to the place in which such voter is claiming residence. *Commercial Standard Ins. Co. v. Nunn*, 464 S.W.2d 415 (Tex. Civ. App. – Texarkana 1971, writ dism'd).

As the attorney general stated in an opinion addressing "winter Texans," residence is a fact question that does not yield broad categorical answers. Op. Tex. Att'y Gen. No. JM-611 (1986); see also Op. Tex. Att'y Gen. No. JM-231 (1984). For the general principle that adults, including students, may determine their residence, see Op. Tex. Att'y Gen. No. H-301 (1974) (a person at least 18 years of age may determine his own residence in the same legal manner and with the same legal result as any other adult). See also Op. Tex. Att'y Gen. No. JC-520 (2002) (construing the Transportation Code, but noting that "if we consider the analogous question of voter registration, college students residing in dormitories routinely register to vote from such addresses.").

The high standard of proof required to contravert a voter's stated or written intent should also be examined. In any judicial proceeding against a student for alleged residence violations under the Code, the burden of proof of any challenging official will include negating the presumption that a student has the right to determine his or her own residence in the same manner and with the same effect of any other adult. See *Texas*, 445 F. Supp. at 1247 (quoting from *Whatley*, 482 F.2d at 1230, that the statutory presumption of non-residency contained in prior Article 5.08(k) of the Texas Election Code [the predecessor to current Section 1.015 of the Code] is unconstitutional).

C.    *Application to Student Voters in Texas*

Honorable Rick Perry
January 22, 2004
Page 6

        While not a trier of fact, my office is statutorily authorized to give voters the definition of
residence for them to use when completing the voter registration application, based wholly upon
the facts known to them at the time the application is completed.  We can advise prospective
registrants on the common law only in the most general terms, by giving them examples of the
tests announced by the courts, and the array of factors taken into consideration.

        Evidence of intent to establish domicile may include, but is not limited to, such factors as
where a person "exercises civil and political rights, pays taxes, owns real and personal property,
has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has
places of business or employment, and maintains a home for his family." *Coury v. Prot*, 85 F.3d
244, 251 (5th Cir. 1996).  While an address at a college dormitory might constitute some limited
probative evidence that there is no intent to remain, a conclusive presumption that there is no
bona fide domicile based solely on the nature of such address is impermissible.  See Op. Tex.
Att'y Gen. No. JC-520 (2002).

        We note in particular that the naming of the parents' home as the voting home of a young
student voter is not the stronghold against challenge it is sometimes reputed to be.  In *Alvarez v.
Espinoza*, 844 S.W.2d 238 (Tex. App. – San Antonio 1992, writ dism'd w.o.j.), a student
attended college in the same town as her husband and her family.  The couple had no definite
plans for their residence after the wife's graduation.  They received mail and voted in a different
county, using the home address of the husband's parents.  This couple was ruled not to reside at
the home address of the husband's parents; rather, the court found they were residents of their
college town, even though their intent to remain after the wife's graduation was indefinite.
*Alvarez*, at 248.

        In *Guerra v. Pena*, 406 S.W.2d 769 (Tex.Civ.App. – San Antonio 1966), two single
people who had jobs elsewhere were held not to be residents of their parents' home where they
returned for the holidays.

        As we have noted above, analysts of Texas residence cases select a single case at their
peril.  However, by way of further guidance, a case especially pertinent for voters who spend
time in different locations is *Guerra v. Pena*.  In analyzing the scenarios of a number of voters,
including migrant workers who were compelled to spend months at a time at different places, the
court emphasized that:

                A removal to divest one of his right to vote must be accompanied by an intent to
                make a new domicile and quit the old.  Mere removal, coupled with an intent to
                retain the original domicile and return to it, will not constitute a change.

*Guerra*, at 776, and cases cited therein.  This is codified in the Code at Section 1.015(c).  Many
voters who travel are in the position of naming the best home they can under the circumstances.
If a voter who spends several months in one location and several months in another location were
told that he or she could not register in either location, the voter is effectively disenfranchised.

        Aside from such general advice, we caution other officials and those conducting voter
registration drives against seeking to influence the voter's choice of a residence address.  The

Honorable Rick Perry
January 22, 2004
Page 7

presumption is not in favor of the parents' home *or* the college home; rather, the presumption is in favor of the voter's own assessment of the facts and his or her intent. Accordingly, there is no broad answer that will fit all college students.

For instance, one student might consider a parent's home as the "home base" because he or she grew up there and returns there for extended vacations. Another student could consider the college town his or her residence, because he or she is engaged in the occupation of being a full-time student, and intends to return each semester for three-quarters of the year for four years. A third student might spend the last summer of his or her college career working at an internship at a third Texas location where he or she intends to return for a permanent job.

A voter who wishes to register at one location while temporarily spending time at another may use registration by mail and ballot by mail procedures to continue to vote in the precinct where the permanent home is located. If a voter is a student in Texas and wishes to vote using a residence location in another state, that student would of course need to consult with the election authorities concerning the laws of that state.

In sum, when a student registers to vote and describes his or her permanent residence in Texas for voting purposes, the presumption is in favor of the voter's factual statement on the face of the application.

D.   *Duration of Residence Generally*

We note that a common complaint about students and other voters who travel is the concern that these voters will not consider the residence location on the application to be their home in the future (e.g., five years from the application date). No applicant is required to assert such a future durational intention when registering to vote. If a voter were held to such a standard, it is the opinion of this office that such a requirement would be contrary to the rationale in *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct 995, 31 L.Ed2d 274 (1972). In *Dunn,* a durational residence requirement of time in the location before registration was struck down.

As the court in *Texas* observed:

> In *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct 995, 31 L.Ed2d 274 (1972), the Supreme Court held unconstitutional Tennessee's one-year durational residency requirement because such requirements penalize persons who travel from one place to another to establish a new residence during the qualifying period, and thus deny a portion of the citizenry their rights under the Equal Protection Clause of the 14th Amendment.

*Texas,* at 1261. It is our opinion that any state requiring a voter to state that he or she will be residing in a location for a stated number of months or years in the future would face a similar challenge. An applicant filling out a Texas voter registration form is not required to state that the residence will be his or her home forever, or for the next five years, or even the next year. The applicant is only required for administrative reasons to submit the application 30 days before the

Honorable Rick Perry
January 22, 2004
Page 8

election in which the applicant wishes to vote.  See TEX. ELEC. CODE ANN. § 13.143 (Vernon 2003).

## III.    CONCLUSION

No more or less can be required of college students during the voter registration process than any other Texas voter.  In particular, no Texas county voter registrar may require an affidavit or questionnaire in addition to the information required on the application for a voter registration certificate.  A person who has reached the age of majority is presumed able to make a factual statement about his or her voting residence.  Moreover, the student is presumed to be in the best position to make such factual statements about the residence of the student.  In addition, Texas law does not require a statement of durational future residence.  These principles apply equally to college students as well as other voters, and no more can be required of them in order for them to register and vote in the State of Texas.

Very truly yours,

Geoffrey S. Connor

Prepared by Melanie Best
Staff Attorney
Elections Division

APPROVED:

OPINION COMMITTEE
Benjamin M. Hanson, General Counsel
Ann McGeehan, Chair
Elizabeth Hanshaw-Winn
Mark McHargue
Paul Miles



# MONTGOMERY COUNTY ELECTIONS

P. O. Box 2646
Conroe, Texas 77305-2646
Carol Gaultney, *CERA*                   www.MontgomeryVotes.org                   **(936) 539-7843**
Elections Administrator                   election@mctx.org                   **Fax (936) 538-8143**

April 19, 2010

CERTIFICATION OF VOTER REGISTRAR

STATE OF TEXAS
COUNTY OF MONTGOMERY

Pursuant to the statewide voter registration list requirements set forth in the Help America Vote Act of 2002, 42 U.S.C. § 15483 and Sections 13.072(a) and 18.061 of the Texas Election Code, I, Carol Gaultney, Voter Registrar for the County of Montgomery, State of Texas, hereby certify that this list of registered voters is comprised of the Official State List of Registered Voters maintained by the Office of the Secretary of State pursuant to Sections 13.072(a) and 18.061 of the Texas Election Code for the election held on the 8th day of May, 2010 in the County of Montgomery.

This list represents a best effort to accurately identify all eligible voters within the boundaries of The Woodlands Road Utility District #1. All readily available sources were used, including Montgomery County Appraisal tax rolls, digital Appraisal District boundary files, and a digital file of geocoded registered voters. This list has not gone through a complete street comparison approval process.

Voters on suspense are denoted with an 'S' at the beginning of their certificate number. Suspense voters and all voters who have moved will need to fill out a statement of residence card. Their new address will need to be verified that it is within your current boundaries.

*Carol Chedsey Gaultney*

Carol Gaultney, CERA
Elections Administrator/Voter Registrar
County of Montgomery
State of Texas

Exhibit 7

TWRUD1 (24)

## The Woodlands Road Utility District #1 (24)

| CertiCode | Effective_Date_of_Registration | VUID | LastName | FirstName | MiddleName | MailAddress | MailCity | MailState | MailZip | Residence_Address | ResCity | ResSt | ResZip | Sex | Precinct | DOB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 017225 | 03/01/1978 | 1126385789 | DOYLE | SYBIL | LEA | 18125 SENDING OAKS | CONROE | TX | 77385 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | F | 33 | 11/19/1959 |
| 045342 | 03/01/1982 | 1127015712 | GOEDOERTZ | PETER | JOSEPH | 15810 HARTMAN RD | MAGNOLIA | TX | 77355 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 07/31/1947 |
| 173390 | 09/17/1992 | 1126017425 | HEATH | ADRIAN | DAVID | PO BOX 131871 | | TX | 77393 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 07/24/1967 |
| 177414 | 06/14/1992 | 1126017474 | JENKINS | JAMES | ALAN | 18 PASTORAL POND CIR | THE WOODLANDS | TX | 77380 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 11/05/1950 |
| 195318 | 02/14/1993 | 1127782444 | POWELL | SHELLEY | KATHLEEN | 4775 N PANTHER CREEK #130-A | THE WOODLANDS | TX | 77381 | 4775 N PANTHER CREEK #130-A | THE WOODLANDS | TX | 77381 | F | 46 | 12/14/1972 |
| 207251 | 03/13/1994 | 1127805453 | COOK | ROBERTA | MARGARET | 607 SYCAMORE DR | CONROE | TX | 77302 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | F | 33 | 03/05/1976 |
| 209259 | 10/03/1997 | 1127267965 | MCDUFFEE | RICHARD | CRAWFORD | 27937 HANGING CT | SPRING | TX | 77386 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 02/13/1970 |
| 209340 | 11/25/1995 | 1127895596 | MOEYKENS | BRUCE | ROY | 9152 SIX PINES DR | THE WOODLANDS | TX | 77380 | 9152 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 11/23/1967 |
| 372334 | 04/20/2003 | 1129190291 | CURRY | THOMAS | | PO BOX 8736 | | TX | 77387 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 03/13/1961 |
| 395578 | 04/01/2004 | 1126459707 | POWELL | MICHAEL | DEAN | 4775 N PANTHER CREEK #130-A | THE WOODLANDS | TX | 77381 | 4775 N PANTHER CREEK #130-A | THE WOODLANDS | TX | 77381 | M | 46 | 11/08/1962 |
| 397002 | 09/15/2004 | 1126062084 | LALIKEN | DIRK | DANIEL | 2630 N CRESCENT RIDGE DR | THE WOODLANDS | TX | 77381 | 2630 N CRESCENT RIDGE DR | THE WOODLANDS | TX | 77381 | M | 52 | 07/01/1964 |
| 397003 | 09/15/2004 | 1126062087 | LALIKEN | KATIE | MARIA | 2630 N CRESCENT RIDGE DR | THE WOODLANDS | TX | 77381 | 2630 N CRESCENT RIDGE DR | THE WOODLANDS | TX | 77381 | F | 52 | 12/06/1971 |
| 424096 | 10/03/2005 | 1126463702 | WOODARD | MARY | MARLENE | 28327 NANCY LN | CONROE | TX | 77303 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | F | 33 | 03/14/1954 |
| 424336 | 09/12/2005 | 1126080807 | ALLISON | BENJAMIN | MURRAY | 14953 BOYD LN | CONROE | TX | 77306 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 04/18/1987 |
| 446663 | 11/17/2006 | 1127003203 | RUDNEY | JONATHAN | BRUCE | 10250 GEROGANG MILL RD 3RD FL | THE WOODLANDS | TX | 77380 | 10312 GROOMAND MILL RD | THE WOODLANDS | TX | 77380 | M | 33 | 04/20/1949 |
| 457852 | 10/08/2007 | 1145657822 | PONDER | JAMES | OLIVER | 9333 SIX PINES DR #330 | THE WOODLANDS | TX | 77380 | 9333 SIX PINES DR #330 | THE WOODLANDS | TX | 77380 | M | 33 | 08/12/1954 |
| 478037 | 01/12/2008 | 1154745672 | BEARDEN | DEBORAH | ANN | 9360 TIMBERLOCH PL #135 | THE WOODLANDS | TX | 77380 | 2203 TIMBERLOCH PL #135 | THE WOODLANDS | TX | 77380 | F | 33 | 06/26/1951 |
| 486541 | 10/20/2008 | 1152054244 | WOODS | JEAN | T | 1043 LAKE FRONT CIR | THE WOODLANDS | TX | 77380 | 1545 LAKE FRONT CIR | THE WOODLANDS | TX | 77380 | F | 33 | 03/03/1927 |
| 510117 | 01/23/2010 | 1163172055 | ALLISON | ROBERT | DABNEY | 14953 BOYD LN | CONROE | TX | 77306 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 01/28/1992 |
| 512958 | 02/27/2010 | 1159833115 | MURRAY | KAYLENE | DICKSON | 661 S 2220 W UNIT 103 | PLEASANT GROVE | UT | 84062 | 10001 SIX PINES DR | THE WOODLANDS | TX | 77380 | F | 33 | 11/07/1955 |
| 512958 | 02/27/2010 | 1173020072 | MURRAY | STEVE | KENT | 661 S 2220 WEST UNIT 103 | PLEASANT GROVE | UT | 84062 | 10001 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 09/23/1956 |
| 514112 | 05/07/2010 | 1170426991 | BERNTSEN | BILL | | 32 N RAINFOREST CT | THE WOODLANDS | TX | 77380 | 9333 SIX PINES DR | THE WOODLANDS | TX | 77380 | M | 33 | 08/16/1951 |
| 6450781 | 03/10/2007 | 1109833009 | VALLEY | REAGAN | JOMES | 1600 LAKE FRONT CIR | THE WOODLANDS | TX | 77380 | 1500 LAKE FRONT CIR | THE WOODLANDS | TX | 77380 | M | 33 | 10/02/1974 |
| 6419254 | 07/03/2008 | 1154598245 | HARFIELD | RAYNELL | CHARLENE | 1600 LAKE FRONT CIR #100 | THE WOODLANDS | TX | 77380 | 1600 LAKE FRONT CIR #100 | THE WOODLANDS | TX | 77380 | F | 33 | 11/05/1983 |

## WASHINGTON COUNTY APPRAISAL DISTRICT

| Property | Owner | Property Address | 2021 Assessed Value |
|---|---|---|---|
| R63396 | LAUKIEN, DIRK | 4201 KRUEGER RD WASHINGTON, TX 77880 | $7,610 |

### 2020 GENERAL INFORMATION

| | |
|---|---|
| Property Status | Active |
| Property Type | Real |
| Legal Description | A0045 A0045 - Gates, Samuel, TRACT 89, ACRES 91.496 |
| Neighborhood | KRUEGER - Krueger |
| Account | 0045-021-08900 |
| Related Properties | R13572 |
| Map Number | 26 |

### 2020 OWNER INFORMATION

| | |
|---|---|
| Owner Name | LAUKIEN, DIRK |
| Owner ID | O0015376 |
| Exemptions | Agriculture Use |
| Percent Ownership | 100% |
| Mailing Address | 2630 TECHNOLOGY FOREST BLVD THE WOODLANDS, TX 77381 |
| Agent | - |

### 2021 VALUE INFORMATION

| | |
|---|---|
| Improvement Homesite Value | $0 |
| Improvement Non-Homesite Value | $0 |
| Total Improvement Market Value | $0 |
| Land Homesite Value | $0 |
| Land Non-Homesite Value | $0 |
| Land Agricultural Market Value | $944,700 |
| Total Land Market Value | $944,700 |
| Total Market Value | $944,700 |
| Agricultural Use | $7,610 |
| Total Appraised Value | $0 |
| Homestead Cap Loss | -$0 |
| Total Assessed Value | $7,610 |

### 2021 ENTITIES & EXEMPTIONS

Special Exemptions   AG - Agriculture Use

| TAXING ENTITY | EXEMPTIONS | EXEMPTIONS AMOUNT | TAXABLE VALUE | TAX CEILING |
|---|---|---|---|---|
| CAD- Appraisal District | | $0 | $7,610 | 0 |
| G01- Washington County | | $0 | $7,610 | 0 |
| JC1- Blinn College | | $0 | $7,610 | 0 |
| RD1- Washington Co Fm | | $0 | $7,610 | 0 |
| S01- Brenham ISD | | $0 | $7,610 | 0 |

### 2021 LAND SEGMENTS

| LAND SEGMENT TYPE | STATE CODE | HOMESITE | MARKET VALUE | AG USE | LAND SIZE |
|---|---|---|---|---|---|
| 1 - Hay Meadow | D1 - qualified Land Receiving Ag Value | No | $268,450 | $3,120 | 26.000000 acres |
| 2 - Native Pasture | D1 - qualified Land Receiving Ag Value | No | $418,120 | $3,240 | 40.496000 acres |
| 3 - Woodland | D1 - qualified Land Receiving Ag Value | No | $258,130 | $1,250 | 25.000000 acres |
| TOTALS | | | | | 3,985,566 Sq. ft / 91.496000 acres |

### VALUE HISTORY

| YEAR | IMPROVEMENT | LAND | MARKET | AG MARKET | AG USE | APPRAISED | HS CAP LOSS | ASSESSED |
|---|---|---|---|---|---|---|---|---|
| 2020 | $0 | $0 | $0 | $944,700 | $7,610 | $7,610 | $0 | $7,610 |
| 2019 | $0 | $0 | $0 | $944,700 | $7,610 | $7,610 | $0 | $7,610 |
| 2018 | $0 | $0 | $0 | $944,700 | $7,610 | $7,610 | $0 | $7,610 |
| 2017 | $0 | $0 | $0 | $755,390 | $7,610 | $7,610 | $0 | $7,610 |
| 2016 | $0 | $0 | $0 | $687,320 | $7,610 | $7,610 | $0 | $7,610 |

### SALES HISTORY

| DEED DATE | SELLER | BUYER | INSTR # | VOLUME/PAGE |
|---|---|---|---|---|
| 12/19/2008 | BORGSTEDTE, HOMER & DONALD | LAUKIEN, DIRK | 08006962 | 1298/612 |

### DISCLAIMER

Every effort has been made to offer the most current and correct information possible on these pages. The information included on these pages has been compiled by staff from a variety of sources, and is subject to change without notice. The Washington County Appraisal District makes no warranties or representations whatsoever regarding the quality, content, completeness, accuracy or adequacy of such information and data. The Washington County Appraisal District reserves the right to make changes at any time without notice. Original records may differ from the information on these pages. Verification of information on source documents is recommended. By using this application, you assume all risks arising out of or associated with access to these pages, including but not limited to risks of damage to your computer, peripherals, software and data from any virus, software, file or other cause associated with access to these pages. The Washington County Appraisal District shall not be liable for any damages whatsoever arising out of any cause relating to use of this application, including but not limited to mistakes, omissions, deletions, errors, or defects in any information contained in these pages, or any failure to receive or delay in receiving information.

Print property information



Exhibit 8 -

MONTGOMERY CENTRAL APPRAISAL DISTRICT

| Property | Owner | Property Address | 2020 Assessed Value |
|---|---|---|---|
| R190725 | FARIAS, SERAFIN II & JEANNINE | 51 SHEARWATER PL SPRING TX 77381 | $561,030 |

## 2021 GENERAL INFORMATION

| | |
|---|---|
| Property Status | Active |
| Property Type | Real |
| Legal Description | WDLNDS VIL COCHRANS CR 04, BLOCK 5, LOT 17 |
| Neighborhood | VOCC 4 |
| Account | 9722-04-19400 |
| Map Number | - |

## 2021 OWNER INFORMATION

| | |
|---|---|
| Owner Name | FARIAS, SERAFIN II & JEANNINE |
| Owner ID | O0510325 |
| Exemptions | Homestead |
| Percent Ownership | 100% |
| Mailing Address | 51 SHEARWATER PL SPRING, TX 77381-5169 |
| Agent | - |

## 2020 VALUE INFORMATION

| | |
|---|---|
| Improvement Homesite Value | $535,480 |
| Improvement Non-Homesite Value | $0 |
| Total Improvement Market Value | $535,480 |
| Land Homesite Value | $25,550 |
| Land Non-Homesite Value | $0 |
| Land Agricultural Market Value | $0 |
| Total Land Market Value | $25,550 |
| Total Market Value | $561,030 |
| Agricultural Use | $0 |
| Total Appraised Value | $561,030 |
| Homestead Cap Loss | -$0 |
| Total Assessed Value | $561,030 |

Print property information

## 2020 ENTITIES & EXEMPTIONS

| TAXING ENTITY | EXEMPTIONS | EXEMPTIONS AMOUNT | TAXABLE VALUE | TAX RATE PER 100 | TAX CEILING |
|---|---|---|---|---|---|
| CAD- Appraisal District | | $0 | $561,030 | 0 | 0 |
| CWT- The Woodlands Township | | $0 | $561,030 | 0.224 | 0 |
| GMO- Montgomery Cnty | HS | $112,206 | $448,824 | 0.4475 | 0 |
| HM1- Mont Co Hospital | HS | $112,206 | $448,824 | 0.0589 | 0 |
| JNH- Lone Star College | HS | $5,610 | $555,420 | 0.1078 | 0 |
| M47- Mont Co Mud 47 | HS | $112,206 | $448,824 | 0.245 | 0 |
| SCO- Conroe ISD | HS | $25,000 | $536,030 | 1.23 | 0 |
| TOTALS | | | | 2.3132 | |

## 2020 IMPROVEMENTS

⊻ Expand/Collapse All

| Improvement #1 | State Code | Homesite | Total Main Area (Exterior Measured) | Market Value |
|---|---|---|---|---|
| - | A1 - Residential Single Family | Yes | 3,912 Sq. Ft | $510,480 |

| RECORD | TYPE | YEAR BUILT | SQ. FT | VALUE | ADD'L INFO |
|---|---|---|---|---|---|
| 1 | Main Area | 1997 | 2,386 | $290,690 | ⊻ Details |
| 2 | Main Area 2nd Flr | 1997 | 1,526 | $172,610 | ⊻ Details |
| 3 | Open Masonry Porch | 1997 | 248 | $8,380 | ⊻ Details |
| 4 | Open Masonry Porch | 1997 | 308 | $10,400 | ⊻ Details |
| 5 | Attached Brick Garage | 1997 | 532 | $28,400 | ⊻ Details |

| Improvement #2 | State Code | Homesite | Total Main Area (Exterior Measured) | Market Value |
|---|---|---|---|---|
| A1 - Residential Single Family | Yes | | - | $25,000 |

## 2020 LAND SEGMENTS

| LAND SEGMENT TYPE | STATE CODE | HOMESITE | MARKET VALUE | AG USE | LAND SIZE |
|---|---|---|---|---|---|
| 1 - Primary Site | A1 - Residential Single Family | Yes | $25,550 | $0 | 9,827 Sq. ft |
| TOTALS | | | | | 9,827 Sq. ft / 0.225597 acres |

## VALUE HISTORY

| YEAR | IMPROVEMENT | LAND | MARKET | AG MARKET | AG USE | APPRAISED | HS CAP LOSS | ASSESSED |
|---|---|---|---|---|---|---|---|---|
| 2019 | $562,190 | $25,550 | $587,740 | $0 | $0 | $587,740 | $0 | $587,740 |
| 2018 | $527,850 | $25,550 | $553,400 | $0 | $0 | $553,400 | $0 | $553,400 |
| 2017 | $527,850 | $25,550 | $553,400 | $0 | $0 | $553,400 | $0 | $553,400 |
| 2016 | $518,440 | $25,550 | $543,990 | $0 | $0 | $543,990 | $0 | $543,990 |
| 2015 | $480,980 | $25,550 | $506,530 | $0 | $0 | $506,530 | $0 | $506,530 |

SALES HISTORY

| DEED DATE | SELLER | BUYER | INSTR # | VOLUME/PAGE |
|---|---|---|---|---|
| 5/27/2016 | LEACH, RICHARD R | FARIAS, SERAFIN II & JEANNINE | 2016097070 | |
| 4/3/2013 | LAUKIEN, KATIE | LEACH, RICHARD R | 2013034732 | |
| 12/16/2009 | RELOCATION ADVANTAGE LLC | LAUKIEN, KATIE | 2009114249 | 864.11/2220 |
| 12/16/2009 | BEESON, NICHOLAS & JACQUELINE | RELOCATION ADVANTAGE LLC | 2009114248 | 864.11/2218 |
| 12/12/2007 | LARSON, ERIK & DIANA | BEESON, NICHOLAS & JACQUELINE | - | 487.11/2691 |
| 6/29/2005 | MAJEWSKI, DAVID J & REBECCA | LARSON, ERIK & DIANA | - | 856.10/2945 |
| 8/7/2002 | PRUDENTIAL RESIDENTIAL | MAJEWSKI, DAVID J & REBECCA | - | 121.10/2344 |
| 12/18/2001 | LOWE, EDWARD A & ALEXANDRA | PRUDENTIAL RESIDENTIAL | - | 989.00/2107 |
| 6/13/2000 | LEACH, JOHN & ELIZABETH | LOWE, EDWARD A & ALEXANDRA | - | 722.00/1532 |
| 6/16/1997 | ROSS MUNGER INC | LEACH, JOHN & ELIZABETH | - | 267.00/2522 |
| 12/20/1996 | WOODLANDS LAND DEV LP | ROSS MUNGER INC | - | 223.00/0803 |

DISCLAIMER

Every effort has been made to offer the most current and correct information possible on these pages. The information included on these pages has been compiled by County staff from a variety of sources, and is subject to change without notice. The Montgomery Central Appraisal District makes no warranties or representations whatsoever regarding the quality, content, completeness, accuracy or adequacy of such information and data. The Montgomery Central Appraisal District reserves the right to make changes at any time without notice. Original records may differ from the information on these pages. Verification of information on source documents is recommended. By using this application, you assume all risks arising out of or associated with access to these pages, including but not limited to risks of damage to your computer, peripherals, software and data from any virus, software, file or other cause associated with access to this application. The Montgomery Central Appraisal District shall not be liable for any damages whatsoever arising out of any cause relating to use of this application, including but not limited to mistakes, omissions, deletions, errors, or defects in any information contained in these pages, or any failure to receive or delay in receiving information.



# MONTGOMERY COUNTY ELECTIONS

P. O. Box 2646
Conroe, Texas  77305-2646

**Suzie Harvey**
*Elections Administrator*

www.MontgomeryVotes.org
election@mctx.org

**(936) 539-7843**
**Fax (936) 788-8340**

November 10, 2015

Re: Montgomery County Municipal Utility District No. 148 Confirmation, Directors, Bond and
Maintenance Tax Elections

I, Suzie Harvey, Montgomery County Elections Administrator, do hereby certify that the attached
pages are the final results of the Montgomery County Municipal Utility District No. 148 Confirmation,
Directors, Bond and Maintenance Tax Elections held in Montgomery County, Texas, on November 3,
2015.

Suzie Harvey
Elections Administrator

I CERTIFY THAT THIS IS A TRUE AND CORRECT
COPY AS TAKEN FROM OFFICIAL COUNTY
RECORDS, AS OF ____11/10/15____
SUZIE HARVEY
ELECTIONS ADMINISTRATOR
BY _____
MATTHEW MURRAY
GIS DATABASE ADMINISTRATOR

— Exhibit 9

# Montgomery County Municipal Utility District No. 148 Election Canvass Report — Total Vote

## Montgomery County, Texas — Joint Election — November 03, 2015

Page 1 of 8

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

District

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **MC MUD 148 Proposition I** | | | | | | | | | |
| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | For | Against | Totals | |
| CE | 2 | 0 | 2 | 2 | 100.00% | 2 | 0 | 2 | |

Montgomery County Municipal Utility District No. 148 Election Canvass Report — Total Vote
Montgomery County, Texas — Joint Election — November 03, 2015
Page 2 of 8

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

Distr

| | | | | | | | MC MUD 148 Director | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | Keith Schoonover | Jim Platt | Chris DiRado | Joe Mattingly | Tim Williamson | |
| CE | 2 | 0 | 2 | 2 | 100.00% | 2 | 2 | 2 | 2 | | |

Montgomery County Municipal Utility District No. 148 Election Canvass Report — Total Vot...
Montgomery County, Texas — Joint Election — November 03, 2015
Page 3 of 8

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

Distr...

| | MC MUD 148 Proposition II | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | For | Against | Totals |
| GE | 2 | 0 | 2 | 2 | 100.00% | 2 | 0 | 2 |

# Montgomery County Municipal Utility District No. 148 Election Canvass Report — Total Voters — Official

## Montgomery County, Texas — Joint Election — November 03, 2015

Page 4 of 9

11/10/2015 09:53 AM

Precincts Reporting 49 of 49 = 100.00%
District Precincts Reporting 1 of 1 = 100.00%

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

### MC MUD 148 Proposition III

| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | For | Against | Totals |
|---|---|---|---|---|---|---|---|---|

Case 4:21-cv-00088   Document 1-1   Filed on 01/11/21 in TXSD   Page 45 of 162

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

District

| | MC MUD 148 Proposition IV | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | | For | Against | Totals |
| CE | 2 | 0 | 2 | 2 | 100.00% | | 2 | 0 | 2 |

Montgomery County Municipal Utility District No. 148 Election Canvass Report — Total Votes
Montgomery County, Texas — Joint Election — November 03, 2015
Page 8 of 8

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

District

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **MC MUD 148 Proposition V** | | | | | | | | | |
| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | For | Against | Totals | |
| CE | 2 | 0 | 2 | 2 | 100.00% | 2 | 0 | 2 | |

Montgomery County Municipal Utility District No. 148 Election Canvass Report — Total Vote
Montgomery County, Texas — Joint Election — November 03, 2015
Page 7 of 8

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

Distr

| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | For | Against | Totals |
|----------|--------------------|-----------------------|--------------------|-------------------|-----------------|-----|---------|--------|
| CB | 2 | 0 | 2 | 2 | 100.00% | 2 | 0 | 2 |

# Montgomery County Municipal Utility District No. 148 Election Canvass Report — Total Vote

## Montgomery County, Texas — Joint Election — November 03, 2015

Page 8 of 8

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

Distri

### MC MUD 148 Proposition VII

| Precinct | Early Ballots Cast | Election Ballots Cast | Total Ballots Cast | Registered Voters | Percent Turnout | For | Against | Totals |
|---|---|---|---|---|---|---|---|---|
| CE | 2 | 0 | 2 | 2 | 100.00% | 2 | 0 | 2 |

# Montgomery County Municipal Utility District No. 148 Elections Cumulative Report — Official
## Montgomery County, Texas — Joint Election — November 03, 2015
Page 1 of 2

11/10/2015 09:54 AM
Precincts Reporting 49 of 49 = 100.00%
District Precincts Reporting 1 of 1 = 100.00%

Total Number of Voters : 46,444 of 285,810 = 16.25%
Number of District Voters: 2 of 2 = 100.00%

| Party | Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|---|

**MC MUD 148 Proposition I, Vote For 1**

| Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|
| For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |

**MC MUD 148 Director, Vote For 5**

| Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|
| Kelly Schoonover | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| Jim Platt | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| Chris DiResta | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| Joe Mattingly | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| Tim Williamson | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| Cast Votes: | 10 | 100.00% | 0 | 0.00% | 10 | 100.00% |
| Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |

**MC MUD 148 Proposition II, Vote For 1**

| Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|
| For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |

**MC MUD 148 Proposition III, Vote For 1**

| Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|
| For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |

**MC MUD 148 Proposition IV, Vote For 1**

| Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|
| For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |

# Montgomery County Municipal Utility District No. 148 Elections Cumulative Report. — Official

## Montgomery County, Texas — Joint Election — November 03, 2015

Page 2 of 2

11/10/2015 09:54 AM

Precincts Reporting 49 of 49 = 100.00%
District Precincts Reporting 1 of 1 = 100.00%

Total Number of Voters : 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

| Party | Candidate | | Early | | | Election | | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| **MC MUD 148 Proposition VI, Vote For 1** | | | | | | | | | | |
| | For | | 2 | 100.00% | | 0 | 0.00% | | 2 | 100.00% |
| | Against | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| | Cast Votes: | | 2 | 100.00% | | 0 | 0.00% | | 2 | 100.00% |
| | Over Votes: | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| | Under Votes: | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| **MC MUD 148 Proposition VII, Vote For 1** | | | | | | | | | | |
| | For | | 2 | 100.00% | | 0 | 0.00% | | 2 | 100.00% |
| | Against | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| | Cast Votes: | | 2 | 100.00% | | 0 | 0.00% | | 2 | 100.00% |
| | Over Votes: | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| | Under Votes: | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| **MC MUD 148 Proposition VIII, Vote For 1** | | | | | | | | | | |
| | For | | 2 | 100.00% | | 0 | 0.00% | | 2 | 100.00% |
| | Against | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| | Cast Votes: | | 2 | 100.00% | | 0 | 0.00% | | 2 | 100.00% |
| | Over Votes: | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |
| | Under Votes: | | 0 | 0.00% | | 0 | 0.00% | | 0 | 0.00% |

# Montgomery County Municipal Utility District No. 148 Election Precinct Report — Official
## Montgomery County, Texas — Joint Election — November 03, 2015
### Page 1 of 2

Total Number of Voters: 46,444 of 286,310 = 16.22%
Number of District Voters: 2 of 2 = 100.00%

| Party | Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|---|
| | **Precinct CEE (Ballots Cast: 2)** | | | | | | |
| | **MC MUD 148 Proposition I, Vote For 1** | | | | | | |
| | For | | | | | | |
| | Against | | | | | | |
| | Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | **MC MUD 148 Director, Vote For 5** | | | | | | |
| | Keith Schexnolover | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| | Jim Pea | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| | Chris DiPaolo | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| | Joe Bastings | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| | Tim Williamson | 2 | 20.00% | 0 | 0.00% | 2 | 20.00% |
| | Cast Votes: | 10 | 100.00% | 0 | 0.00% | 10 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | **MC MUD 148 Proposition II, Vote For 1** | | | | | | |
| | For | | | | | | |
| | Against | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | **MC MUD 148 Proposition III, Vote For 1** | | | | | | |
| | For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | **MC MUD 148 Proposition IV, Vote For 1** | | | | | | |
| | For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |

# Montgomery County Municipal Utility District No. 148 Election Precinct Report — Official

## Montgomery County, Texas — Joint Election — November 03, 2015

Page 2 of 2

11/10/2015 09:54 AM

Precincts Reporting 49 of 49 = 100.00%
District Precincts Reporting 1 of 1 = 100.00%

Total Number of Voters : 16,444 of 285,310 = 16.22%
Number of District Votes: 2 of 2 = 100.00%

| Party | Candidate | Early | | Election | | Total | |
|---|---|---|---|---|---|---|---|
| **Precinct Cnt (Ballots Cast: 2)** | | | | | | | |
| **MC MUD 148 Proposition A, Vote For 1** | | | | | | | |
| | For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| **MC MUD 148 Proposition VA, Vote For 1** | | | | | | | |
| | For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| **MC MUD 148 Proposition VB, Vote For 1** | | | | | | | |
| | For | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Against | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Cast Votes: | 2 | 100.00% | 0 | 0.00% | 2 | 100.00% |
| | Over Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Under Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |



I CERTIFY THAT THIS IS A TRUE AND CORRECT
COPY AS TAKEN FROM OFFICIAL COUNTY
RECORDS, AS OF  4/25/16

SUZIE HARVEY
ELECTIONS ADMINISTRATOR

BY _____
MATTHEW MURRAY
GIS DATABASE ADMINISTRATOR

| OTHER ELECTIONS NOT BEING HELD BY MONTGOMERY COUNTY ELECTIONS SATURDAY, MAY 7, 2016 - 7am - 7pm | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jurisdiction Name | Election Type | Contact Information | Early Voting Dates | Early Voting Times | Early Voting Locations | Election Day Locations | County Voting Precincts |
| Cleveland Independent School District | Trustee | Hope Cross 832-346-5817 | 4/25 - 4/29 4/27 - 4/29 5/2 - 5/3 | 7a - 7p 8a - 5p 7a - 7p | Cleveland Civic Center 210 Peach Ave Cleveland, TX 77327 | Cleveland Civic Center 210 Peach Ave Cleveland, TX 77327 | 41 |
| City of Conroe | General | Becca Goden 936-522-3000 | 4/25 - 4/29 5/2 - 5/3 | 8a - 5p 7a - 7p | Conroe City Hall (8th Floor) 300 W. Davis Conroe, TX 77301  Living Branch Church 13228 Hwy 105 W. Conroe, TX 77304  Grace Crossing Church 105 FM 1488 Conroe, TX 77384 | Conroe City Hall (8th Floor) 300 W. Davis Conroe, TX | 1, 2, 10, 11, 19, 20, 21, 24, 27, 34, 38, 40, 43, 44, 50, 51, 56, 60, 73, 76, 77, 86 |
| Town of Woodloch | General | Tina Williams 936-321-3700 | 4/25 - 4/29 5/2 - 5/3 | 9a - 1p | City Hall 2820 N. Woodloch Conroe, Texas 77385 | City Hall 2820 N. Woodloch Conroe, Texas 77385 | 56 |
| Montgomery County Municipal Utility District No. 008 | Directors | Sherry Pizzicia 832-813-6902 | 4/25 - 4/30 5/2 - 5/3 | 8a - 5p 7a - 7p | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 32, 33, 67 |
| Montgomery County Municipal Utility District No. 036 | Directors | Sherry Pizzicia 832-813-6902 | 4/25 - 4/30 5/2 - 5/3 | 8a - 5p 7a - 7p | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 33, 67 |
| Montgomery County Municipal Utility District No. 046 | Directors | Sherry Pizzicia 832-813-6902 | 4/25 - 4/30 5/2 - 5/3 | 8a - 5p 7a - 7p | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 03, 06, 32, 45, 69, 75, 76, 64 |
| Montgomery County Municipal Utility District No. 047 | Directors | Sherry Pizzicia 832-813-6902 | 4/25 - 4/30 5/2 - 5/3 | 8a - 5p 7a - 7p | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 2455 Lake Robbins Dr The Woodlands, TX 77380 | 46, 68, 62, 69, 71, 81 |
| Montgomery County Municipal Utility District No. 094 | Directors | Michael Page 713-623-4531 | 4/25 - 5/3 | 8a - 12p 10 - 5p | 27535 Rebecca Field Ln Spring, TX 77386 | 27535 Rebecca Field Ln Spring, TX 77386 | 46 |
| Montgomery County Municipal Utility District No. 130 | Confirmation, Director, Bond, and Maintenance Tax | Gerald Thibedeau 281-528-3514 | 4/25 - 5/3 | 8p - 9p | 16120 FM 1488, Magnolia, Texas 77354 | 16120 FM 1488, Magnolia, Texas 77354 | 18 |
| Montgomery County Municipal Utility District No. 131 | Confirmation, Director, Bond, and Maintenance Tax | Jeffrey Thibedeau 832-442-3180 | 4/25 - 5/3 | 8p - 9p | 15815 FM 1488, Magnolia, Texas 77354 | 15815 FM 1488, Magnolia, Texas 77354 | 18 |
| Porter Municipal Utility District | Bond | Bernadine Clark 281-580-2415 | 4/25 - 4/29 5/2 - 5/3 | 8:30a - 4:30 p | 23922 Loop 494 Porter, TX 77365 | 23922 Loop 494 Porter, TX 77365 | 28, 37, 52, 82 |
| Water Control and Improvement District No. 4 | Confirmation, Director, Bond, and Maintenance Tax | Jeffrey Thibedeau 832-442-3180 | 4/25 - 5/3 | 8p - 9p | 15815 FM 1488, Magnolia, Texas 77354 | 15815 FM 1488, Magnolia, Texas 77354 | 18 |
| HMW Special Utility District of Harris and Montgomery Counties | Directors | Yammie Kramer 832-851-7924 | 4/25 - 4/29 5/2 - 5/3 | 9a - 5p | 26728 Decker Prairie Rosehill Rd Magnolia, TX 77355 | 26728 Decker Prairie Rosehill Rd Magnolia, TX 77355 | 13, 16, 28, 29, 85, 65, 89 |

*To be eligible to vote in a listed election you must be a registered voter inside their jurisdictional boundaries.




# Montgomery County Elections
## Voter Registration Information

| | |
|---|---|
| VUID: 1126078753 | Active |

Name: DANIEL ROBERT SPIECHER
Residence: 1713 SOUTHERN OAKS DR  CONROE, TX 77301
Mailing: 20615 MARILYN LN SPRING, TX 77388

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
|---|---|---|---|---|---|
| 02 | M | 10/26/1959 | 8/10/2015 | 12/4/1997 | 1/1/2018 |

### Voter History

| ID | Date | Election Name | Party | Precinct |
|---|---|---|---|---|
| GEN110818 | 11/8/2018 | Montgomery County Hospital District | G | 02 |
| GEN110818 | 11/8/2018 | Lone Star College District 2 | G | 02 |
| GEN110818 | 11/8/2018 | Montgomery County | G | 02 |
| GEN110315 | 11/3/2015 | Conroe Independent School District | G | CE |
| GEN110315 | 11/3/2015 | Municipal Utility District 149 | G | CE |
| GEN110315 | 11/3/2015 | Montgomery County | G | CE |

I CERTIFY THAT THIS IS A TRUE AND CORRECT
COPY AS TAKEN FROM OFFICIAL COUNTY
RECORDS, AS OF   5/11/18
SUZIE HARVEY
ELECTIONS ADMINISTRATOR
BY   Matthew Murray
MATTHEW MURRAY
GIS/DATABASE ADMINISTRATOR

Page 1 of 1

MATTHEW MURRAY
GIS/DATABASE ADMINISTRATOR

MONTGOMERY COUNTY
ELECTIONS

**Application Type:** New

Are you a United States Citizen?

Are you interested in serving as an election worker? ....................................... [ ] Yes

Continue below to complete application.

**2.** Last Name | First Name | Middle Name (if any) | Former Name
SPIECHER | DANIEL | ROBERT |

**3.** Residence Address: Street Address and Apartment Number. (Do not include P.O. Box. Number. If none, describe where you live.) (Do not include a P.O. Box, Rural Rt. or business Address.)
1713 SOUTHERN OAKS DR

City | County | State | Zip Code
CONROE | MONTGOMERY | TX | 77301

**4.** Mailing Address: Street Address and apartment number (if mail cannot be delivered to your residence address.)
20615 MARILYN LN

City | State | Zip Code
SPRING | TX | 77388

**5.** Date of Birth (mm/dd/yyyy)
10/26/1959

**6.** Gender (Optional)
Male

**7.** Telephone Number, Include Area Code (optional)

**8.** TX Driver's License No. or Texas Personal I.D. No.
(issued by the Department of Public Safety)

If no TX Driver's License or Personal Identification, give last four digits of your Social Security Number

**9.** I have not been issued a TX Driver's License/Personal Identification Number or Social Security Number.

**10.** I understand that giving false information to procure a voter registration is perjury and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all the statements to affirm before signing.

• I am a resident of this county and a U.S. Citizen;
• I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
• I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

X [signature]

Date
8/7/15

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date

1/1




## Montgomery County Elections
## Voter Registration Information

| VUID: 1145517842 | | | | | Active |
|---|---|---|---|---|---|

Name: DEBORAH WELDER SPIECHER
Residence: 1711 SOUTHERN OAKS DR  CONROE, TX 77301
Mailing: 20615 MARILYN LN  SPRING, TX 77388

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
|---|---|---|---|---|---|
| 02 | F | 12/5/1963 | 9/10/2015 | 10/9/2013 | 1/1/2015 |

### Voter History

| ID | Date | Election Name | Party | Precinct |
|---|---|---|---|---|
| GEN110816 | 11/8/2016 | Montgomery County Hospital District | G | 02 |
| GEN110816 | 11/8/2016 | Lone Star College District 7 | G | 02 |
| GEN110816 | 11/8/2016 | Montgomery County | G | 02 |
| GEN110315 | 11/3/2015 | Conroe Independent School District | G | CE |
| GEN110315 | 11/3/2015 | Municipal Utility District 146 | G | CE |
| GEN110315 | 11/3/2015 | Montgomery County | G | CE |

I CERTIFY THAT THIS IS A TRUE AND CORRECT
COPY AS TAKEN FROM OFFICIAL COUNTY
RECORDS, AS OF  5/11/18
SUZIE HARVEY
ELECTIONS ADMINISTRATOR
BY
MATTHEW MURRAY
GIS/DATABASE ADMINISTRATOR

Texas Voter Registration Application

8/7/2015

SPICHER, DEBORAH
Cert: 590205    FRONT ONLY

**Please mail this application to:**

REGISTRAR OF VOTERS
P.O. BOX 2645
CONROE, TX 77306-2645

I CERTIFY THAT THIS IS A TRUE AND CORRECT
COPY AS TAKEN FROM OFFICIAL COUNTY
RECORDS, AS OF 2/12/19

SUZIE HARVEY
ELECTIONS ADMINISTRATOR

BY _____

MATTHEW MURRAY
GIS, DATABASE ADMINISTRATOR

ENTERED
AUG 12 2015

RECEIVED
AUG 12 2015
MONTGOMERY COUNTY
ELECTIONS

**Application Type:** New

Are you a United States Citizen? ............................................. Yes
Are you interested in serving as an election worker?

Continue below to complete application.

| 2. Last Name | First Name | Middle Name (if any) | Former Name |
|---|---|---|---|
| SPICHER | DEBORAH | WELDER | |

| 3. Residence Address: Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt, or Business Address) | City | County | State | Zip Code |
|---|---|---|---|---|
| 1713 SOUTHERN OAKS DR | CONROE | MONTGOMERY | TX | 77301 |

| 4. Mailing Address: Street Address and Apartment Number (if mail cannot be delivered to your residence address) | City | State | Zip Code |
|---|---|---|---|
| 20615 MARILYN LN | SPRING | TX | 77388 |

| 5. Date of Birth: (mm/dd/yyyy) | 6. Gender: (Optional) |
|---|---|
| 12/05/1963 | Female |

| 7. Telephone Number: Include Area Code (Optional) |
|---|
| |

8. TX Driver's License No. or Texas Personal I.D.
No.
(Issued by the Department of Public Safety)

If no TX Driver's License or Personal Identification, give
last four digits of your Social Security Number.

☒ I have not been issued a TX Driver's License/Personal Identification Number or Social Security Number.

9. I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law.
Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all three
statements to affirm before signing.

* I am a resident of this county and a U.S. Citizen;
* I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of
  incarceration, parole, supervision, period of probation, or I have been pardoned; and

file:///C:/Users/User/AppData/Local/Temp/Z7UX4SRD.htm

7/22/2014

BY _____ MATTHEW MURRAY
915 DATABASE ADMINISTRATOR

ELECTIONS ADMINISTRATOR
SUZIE HARVEY
RECORDS, AS OF ___ 8/17/14
COPY AS TAKEN FROM OFFICIAL COUNTY

Witness and Date

Signature of Applicant or Agent and Relationship to Applicant if Signed by Agent (If this is a prosecution under false application, Name of Applicant if Signed by

X _____                    9   26  2014
                                      Date

(4b)

I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

☐ I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
☐ I am a resident of this county and a U.S. Citizen;

9  I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all three statements to affirm before signing.

☐ I have not been issued a TX Driver's License/ Personal Identification Number or Social Security Number.

8   TX Driver License No. or Texas Personal I.D. No.   If no TX Driver's License or Personal Identification, give last four digits of your Social Security Number
(Issued by the Department of Public Safety)

| 5  Date of Birth (mm/dd/yyyy) | 6  Gender (optional) | 7  Telephone Number, Include Area Code (optional) |
|---|---|---|
| 12/05/1963 | Female | |

20615 MARILYN LN

4   Mailing Address:  Street Address and Apartment Number (if mail cannot be delivered to your residence address)

| City | State | Zip Code |
|---|---|---|
| SPRING | TX | 77388 |

3   Residence Address:  Street Address and Apartment Number (Do not include P.O. Box or Rural Route. If none, describe where you live.)
31745 ALBERT MILLER LN

| City | County | State | Zip Code |
|---|---|---|---|
| MAGNOLIA | MONTGOMERY | TX | 77354 |

2   Last Name   First Name   Middle Name (if any)   Former Name
SPIECHER   DEBORAH   WELDER

Continue below to complete application.

Are you interested in serving as an election worker?          Yes

Are you a United States Citizen?       Yes

Application Type:  Change
MONTGOMERY COUNTY   ELECTIONS          AUG 05 2014   ENTERED

RECEIVED
JUL 2 5 2014
REGISTRAR OF VOTERS
P.O. BOX 2646
CONROE, TX 77305-2646

74 8/23

Please mail this application to:

Texas Voter Registration Application

VR13/16B

CertNum: 590255   FnB
VTID: 1852684
SPIECHER, DEBORAH

Page 1 of 1

Texas Voter Registration Application

CertNum: 590285   FnB
VTID: 1852634
SPIECHER, DEBORAH

ENTERED
SEP 13 2013

## Texas Voter Registration Application    VR17.1(EB)

Please mail this application to:

REGISTRAR OF VOTERS
P.O. BOX 2646
CONROE, TX 77305-2646

RECEIVED
SEP 10 2013
MONTGOMERY COUNTY
ELECTIONS

20  10⁴

**Application Type:** New

Are you a United States Citizen? _____ Yes

Are you interested in serving as an election worker? _____

Continue below to complete application.

| 1 Last Name | First Name | Middle Name (if any) | Former Name |
|---|---|---|---|
| SPIECHER | DEBORAH | WELDER | |

| 3 Residence Address: Street Address and Apartment Number, if none, describe where you live. (Do not include P.O. Box, Rural Route or Business Address) | City | County | State | Zip Code |
|---|---|---|---|---|
| 20175 LONGMIRE RD | CONROE | MONTGOMERY | TX | 77304 |

| 4 Mailing Address: Street Address and Apartment Number (if mail cannot be delivered to your residence address.) | City | State | Zip Code |
|---|---|---|---|
| 20615 MARILYN LN | SPRING | TX | 77388 |

| 5 Date of Birth | 6 Gender (Optional) | 7 Telephone Number, Include Area Code (Optional) |
|---|---|---|
| 12/08/1963 | Female | |

8 TX Driver's License No. or Texas Personal I.D. No. (Issued by the Department of Public Safety)

If no TX Driver's License or Personal Identification, give
last four digits of your Social Security Number.

☑ I have not been issued a TX Driver's License/Personal Identification Number or Social Security Number.

I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal
law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all three
statements to affirm before signing.

- I am a resident of this county and U.S. Citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and,
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

SOS ___ TX ___ LAST ___ NONE

SPIECHER, DEBORAH

# 05 — ONLINE DATA CHANGE

**272017**

| Date Received: 09.04.2014 | Trans Date: 09.05.2014 | | |
|---|---|---|---|
| Last Name: SPECHER | First Name: DANIEL | Middle Name: ROBERT | Former Name |

Residence Address:
31745 ALBERT MILLER LN MAGNOLIA, TX 77354

Mail Address:
20615 MARILYN SPRING, TX 77388

TX Driver's License:

EMAIL ADDRESS:

Voter Status:
☐ NEW   ☒ CHANGE   ☐ REPLACE

Trans ID:
SOS000000622175

BY
MATTHEW MURRAY
GIS DATABASE ADMINISTRATOR

SUZIE HARVEY
ELECTIONS ADMINISTRATOR
4/12/19

I CERTIFY THAT THIS IS A TRUE AND CORRECT
COPY AS TAKEN FROM OFFICIAL COUNTY
RECORDS, AS OF:

Texas Voter Registration Application                                   Page 1 of 1

## Texas Voter Registration Application
VR17.1(E)3

CertNum: 272017   **Front ONLY**
VTID: 1730782
SPIECHER, DANIEL

Please mail this application to:

REGISTRAR OF VOTERS
P.O. BOX 2646
CONROE, TX 77305-2646

**RECEIVED**
JUL 25 2014
MONTGOMERY COUNTY
ELECTIONS

**ENTERED**
AUG 05 2014

14 8/23

Application Type: Change

Are you a United States Citizen? ....................................... Yes
Are you interested in serving as an election worker? .................. Yes

Continue below to complete application.

| 2. Last Name | First Name | Middle Name (if any) | Former Name |
|---|---|---|---|
| SPIECHER | DANIEL | ROBERT | |

| 3. Residence Address: Street Address and Apartment Number, if none, describe where you live. (Do not include P.O. Box, Rural RL or Business Address) | City | County | State | Zip Code |
|---|---|---|---|---|
| 31745 ALBERT MILLER LN | MAGNOLIA | MONTGOMERY | TX | 77354 |

| 4. Mailing Address: Street Address and Apartment Number (if mail cannot be delivered to your residence address) | City | State | Zip Code |
|---|---|---|---|
| 20615 MARILYN LN | SPRING | TX | 77388 |

| 5. Date of Birth: (mm/dd/yyyy) | 6. Gender (Optional) | 7. Telephone Number, Include Area Code (Optional) |
|---|---|---|
| 10/26/1969 | Male | |

| 8. TX Driver's License No. or Texas Personal I.D. No. (issued by the Department of Public Safety) | If no TX Driver's License or Personal Identification, give last four digits of your Social Security Number |
|---|---|
| | |

☐ I have not been issued a TX Driver's License/Personal Identification Number or Social Security Number.

9. I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all three statements to affirm before signing.

- I am a resident of this county and U.S. Citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

X _(signature)_                                                          Date 2-29-14

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.

I CERTIFY THAT THIS IS A TRUE AND CORRECT
COPY AS TAKEN FROM OFFICIAL COUNTY
RECORDS, AS OF 1/7/19
SUZIE HARVEY
ELECTIONS ADMINISTRATOR

BY _(signature)_
MATTHEW MURRAY
GIS DATABASE ADMINISTRATOR

file:///C:/Users/User/AppData/Local/Temp/KO7NJWRY.htm                    7/22/2014

# Texas Voter Registration Application

Prescribed by the Office of the Secretary of State — VRI 2011(11)

Please complete sections by printing LEGIBLY. If you h
please call your local voter registrar.

CertNum: 272017   FnB
VTID: 1730782
SPIECHER, DANIEL   40   10/11

## 1 These Questions Must Be Cor

Check one.
- [X] New Application
- [ ] Change of Address, name, or Other Information
- [ ] Request for a replacement card

**Are you a United States Citizen?** [X] Yes [ ] No

**Will you be 18 years of age on or before election day?** [X] Yes [ ] No

If you checked "No" in response to either of the above, do not complete this form.

**Are you interested in serving as an election worker?**

## 2

| Last Name Include Suffix if any (Jr. Sr. III) | First Name | Middle Name (if any) | Former Name (if any) |
|---|---|---|---|
| Spiecher | Daniel | Robert | |

## 3 Residence Address: Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address)

| | City | TEXAS |
|---|---|---|
| 2075 Longwire Rd. | Conroe | TX |
| | County | Zip Code |
| | | 77504 |

## 4 Mailing Address: Street Address and Apartment Number. (If mail cannot be delivered to your residence address.)

| | City | State |
|---|---|---|
| 20615 Marilyn Ln | Spring | TX |
| | | Zip Code |
| | | 77388 |

## 5 Date of Birth: (mm/dd/yyyy)
1 0 / 2 6 / 1 9 5 9

## 6 Gender (Optional)
- [X] Male
- [ ] Female

## 7 Telephone Number (Optional) Include Area Code

## 8 Texas Driver's License No. or Texas Personal I.D. No. (Issued by the Department of Public Safety)

If no Texas Driver's License or Personal Identification, give last 4 digits of your Social Security Number

XXX-XX-

- [ ] I have not been issued a Texas Driver's License/Personal Identification Number or Social Security Number.

## 9

I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all three statements to affirm before signing.

- I am a resident of this county and a U.S. citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

X _Daniel Robert Spiecher_   Date 9/13/19

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signature by Witness and Date.

I CERTIFY THAT THIS IS A TRUE AND CORRECT COPY AS TAKEN FROM OFFICIAL COUNTY RECORDS, AS OF 9/17/19
SUZIE HARVEY

BY _Matthew Murray_
MATTHEW MURRAY
GIS/DATABASE ADMINISTRATOR

I CERTIFY THAT THIS IS A TRUE AND CORRECT COPY AS TAKEN FROM OFFICIAL COUNTY RECORDS, AS OF 9/17/19

SUZIE HARVEY
ELECTIONS ADMINISTRATOR

BY: Matthew Murray
MATTHEW MURRAY
GIS/DATABASE ADMINISTRATOR

NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES

**BUSINESS REPLY MAIL**
FIRST-CLASS MAIL PERMIT NO. 4511 AUSTIN, TX

POSTAGE WILL BE PAID BY ADDRESSEE

RECEIVED
SEP 11 2013
MONTGOMERY COUNTY ELECTIONS

MONTGOMERY COUNTY
REGISTRAR OF VOTERS
PO BOX 2646
CONROE TX 77305-9922

ENTERED
SEP 12 2013

*Fold on line and seal before mailing*

## Qualifications

- You must register to vote in the county in which you reside.
- You must be a citizen of the United States.
- You must be at least 17 years and 10 months old to register, and you must be 18 years of age by Election Day.
- You must not be finally convicted of a felony, or if you are a felon, you must have completed all of your punishment, including any term of incarceration, parole, supervision, period of probation, or you must have received a pardon.
- You must not have been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

## Filling out the Application

- Review the application carefully, fill it out, sign and date it and mail it to the voter registrar in

- All voters who register to vote in Texas must provide a Texas driver's license number or personal identification number issued by the Texas Department of Public Safety. If you don't have such a number, simply provide the last four digits of your social security number. If you don't have a social security number, you need to state that fact.
- Your voter registration will become effective 30 days after it is received or on your 18th birthday, whichever is later. Your registration must be effective on or before an election day in order to vote in that election.
- If you move to another county, you must re-register in the county of your new residence.

Please visit the Texas Secretary of State website, www.sos.state.tx.us, and for additional election information visit www.votexas.org.

Este formulario está disponible en español. Favor de llamar a su registrador de votantes local para conseguir

*Fold on line and seal before mailing*

Texas Voter Registration Application

Please mail this application to:

REGISTRAR OF VOTERS
P.O. BOX 2646
CONROE, TX 77305-2646

MONTGOMERY COUNTY
ELECTIONS

RECEIVED
AUG 2 0 2013

CertNum: 222017   Front ONLY
VTID: 1730762
SPRECHER, DANIEL.

Application Type: New

Are you a United States Citizen?   Yes

Are you interested in serving as an election worker?

| 1 Last Name: | First Name (Print) | Middle Name (if any) | Former Name |
|---|---|---|---|
| SPRECHER | DANIEL | ROBERT | |

| 2 Residence Address: Street Address and Apartment Number, City, State, and ZIP. (Do not include P.O. Box, Rural Route, or Route and Box number) | City | County | State | Zip Code |
|---|---|---|---|---|
| 2076 LONGMIRE RD | CONROE | MONTGOMERY | TX | 77304 |

| 3 Mailing Address: Street, Address and Apartment Number (if mail cannot be delivered to your residence address) | City | State | Zip Code |
|---|---|---|---|
| 2061B MARILYN LN | SPRING | TX | 77388 |

| 5 Date of Birth: (mm/dd/yyyy) | 6 Gender (Optional) | 7 Telephone Number, Include Area Code (Optional) |
|---|---|---|
| 10/25/1969 | Male | |

8 TX Driver's License No. or Texas Personal I.D. No.   (If no TX Driver's License or Personal Identification, give last four digits of your Social Security Number.

☒ I have not been issued a TX Driver's License/Personal Identification Number or Social Security Number.

9 I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all three statements to affirm before signing.

• I am a resident of this county and a U.S. Citizen;
• I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
• I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

I CERTIFY THAT THIS IS A TRUE AND CORRECT COPY AS TAKEN THROUGH APPLIER: Signature of Applicant or Agent and Relationship to Applicant Name of Applicant if Signed by

X _____   Date   5 1 1 1 S

Signature of Applicant or Agent and Relationship to Applicant   Name of Applicant if Signed by
Witness and Date

RECORDS, AS OF: 9/1/13

SUZIE HARVEY
ELECTIONS ADMINISTRATOR

BY: _____
MATTHEW MURRAY
GIS DATABASE ADMINISTRATOR

R REGISTRATION APPLICATION
CITUD DE INSCRIPCION DE VOTANTE)

12/14 65 pct 29

For Official Use Only
Cert. Num.
EDR

| | First Name (NOT HUSBAND'S) (Su nombre de pila) (Siendo mujer: no el del esposo) | Middle Name (If any) (Segundo Nombre) (si tiene) | Former Name |
|---|---|---|---|
| | DANIEL | ROBERT | 0272017 |

ress and Apartment Number, City, State, and ZIP. If none, describe where you live. (Do not include P.O. Box or Rural Rt.)
de apartamento, Ciudad, Estado, y Código Postal; A falta de estos datos, describa la localidad de su residencia. (No incluya su apartado postal.)

N, MAGNOLIA, TX 773550000 MONT

d ZIP. If mail cannot be delivered to your residence address. (Dirección postal, Ciudad, Estado y
arle correspondencia a domicilio.)

Gender (Optional)
(Sexo) (Optativo)
☐ Male (Hombre) ☐ Female (Mujer)

City, County, and State of Former Residence
(Ciudad, Condado, Estado de su residencia anterior)

Social Security No. (Optional) (Número de Seguro Social) (optativo)

I am a United States Citizen ☑ Yes (Sí) ☐ No (No)
(Ciudadano/a de los Estados Unidos)

TX Driver's License No. or Personal I.D. No. (Issued By TX Dept. of Public Safety) (Optional) (Número de su licencia tejana de manejar o de su Cédula de Identidad expedida por el Departamento de Seguridad Pública de Tejas) (optativo) [redacted]

false information to procure a voter regist-
rime under state and federal law. (Entiendo que el
fin de obtener inscripción en el registro de votantes, constituye
lsa y es una infracción sancionable por ley federal y estatal.)

Telephone Number (Optional) (Número telefónico) (optativo)

NOV 12 1997

CYPRESSWOOD - DPS 11 04 1997
Date (Fecha)

ny)
ounty; (residente del condado)
onvicted of a felony or if a felon I am eligible
section 13.001, Election Code; and
definitiva por un delito penal, o en caso de tal condena,
ribirme, a tenor de lo dispuesto
Electoral);
l mentally incompetent by final
f law.
ente incapacitado por orden judicial.)

ENTERED NOV 13 1997

X

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date. (Firma del/de la solicitante o de su apoderado/a y qué parentesco tiene el/la apoderado con el/la solicitante. Si la firma es de un/a testigo, escriba el nombre del/de la solicitante usando letra de molde y ponga la fecha.)

FY THAT THIS IS A TRUE AND CORRECT
AS TAKEN FROM OFFICIAL COUNTY
RDS, AS OF 9/10/19
HARVEY
IONS ADMINISTRATOR

ATTHEW MURRAY
S DATABASE ADMINISTRATOR

# In area MUD elections, handful of voters decide $1 billion in bonds

## 'Rent-a-voter' districts chided while supporters point to progress

Cindy Horswell Nov. 1, 2015 Updated: Nov. 1, 2015 8:36 p.m.

Comments

4

1of4Daniel and Deborah Spiecher's manufactured home houses the only two eligible voters on an 82-acre municipal utility district in Conroe who will decide the fate of $500 million in bond proposals during Tuesday's election.Photo: Jerry Baker, Freelance

2of41713 Southern Oaks Drive in Conroe, an 82-acre site that is going to be turned into 300 single-family homes, is listed as the address for Daniel and Debra Spiecher's trailer. (Photo by Jerry Baker/Freelance)4Photo: Jerry Baker, for the Houston Chronicle

3of41713 Southern Oaks Drive in Conroe, an 82-acre site that is going to be turned into 300 single-family homes, is listed as the address for Daniel and Debra Spiecher's trailer. (Photo by Jerry Baker/Freelance)4Photo: Jerry Baker, for the Houston Chronicle

- A few months ago, a cabinet maker and his wife were recruited to move into a manufactured home parked on a dirt road that was plowed into the woods on the west side of Conroe in Montgomery County.

Daniel and Deborah Spiecher are now the only residents of a newly created municipal utility district, or MUD, carved from 82 acres of land there. They are also the only ones eligible to vote Tuesday on $500 million in proposed bonds to develop that tract.

In fact, they are among just seven voters who will decide the fate this week of $1.07 billion in bonds for roads, water, sewer and recreational facilities in three such districts that were recently formed in this fast-growing county north of Houston. The debt will be repaid with taxes imposed on future residents and businesses. While some believe the MUDs provide a means to bring about high-end development in an orderly way, critics say they are out of control, with developers manipulating the democratic process to essentially take on the roles of cities and borrow hundreds of millions of dollars to make public improvements.

Montgomery County resident Adrian Heath decries the lack of transparency and citizen input into what critics call "rent-a-voter" MUD elections. Heath notes that the billion-dollar MUD proposals make the contentious, countywide election over a $280 million road bond package look like "kid stuff."

Yet an attorney representing one of the developers for the three MUDs refers to these initial seven voters as "urban pioneers."

"They move onto the land and help establish new communities, paving the way for the future homeowners," said Angela Lutz, the attorney for Stoecker Corp., which plans to develop land covered by a separate MUD on Conroe's west side and also north of The Woodlands. She stressed these elections are completely legal, as well as being "typical and ordinary" and the way MUDs have operated for decades.

### *Wave of MUDs*

Explosive growth has caused a surge in the number of MUDs that have been created this year not only in Montgomery but also in Fort Bend County. These two counties account for the formation of 15 new MUDs apiece, state records show. The remaining six counties in the Houston region have seen fewer or no new MUDs: Harris County with 11 such new districts, Waller with 4; Brazoria with 1 while Galveston, Liberty and Chambers have seen none.

In Montgomery County, three of the new districts holding elections Tuesday include: MUD 148, encompassing the 82 acres where the Spiechers live; MUD 142, which covers 92 acres on Conroe's west side being developed by Stoecker; and Conroe's Municipal Management District No. 1, which is spread over 2,000 acres that was once a Boy Scout camp on Conroe's south side.

On Adrian Heath's website, countycitizen.com - he questions the propriety of such elections. He posts a copy of the city permit issued for the trailer where the Spiechers now call home, showing it was issued in August and labeled a "temporary voting trailer."

# More Information

By the numbers

$1.07 billion: Total in bonds up for a vote Tuesday in three municipal utility districts in Montgomery County.

7: Number of voters who are eligible to vote on those bonds.

Read More

Daniel Spiecher, who is originally from Lufkin, said he was enticed into signing a nine-month lease for the trailer by Stingray Services Inc. because the rent was cheap, only $150 a month. "It's better than an apartment," he said.

Stingray Services did not return phone calls from the Chronicle. However, on its website, the company says that it specializes in "turn-key voter trailer" election services and has completed nearly 100 such trailer installations and elections in the past decade.

Spiecher's trailer sits on a small piece of the 82 acres in MUD 148 that is owned by Friendswood Development Co.

Friendswood spokesman Michael Johnson could not be reached for comment, but the developer has plans to build 300 homes that will sell for about $215,000 and will be intertwined around 18 acres of nature trails.

### *'We just live here'*

Meanwhile, the only two people who can vote in Stoecker's MUD 142, Tracey Viehe and Nikolas Mitchell, live in an old house down a long dirt driveway on this property. Both refused comment, with

one saying simply, "We just live here, that's all." Stoecker plans to carve 400 residential lots from the property.

Finally, only three voters are eligible to cast ballots in Conroe's Municipal Management District No. 1. They are Tamara Martinez, Sara Woehle and Michael Wallin, who are living in two houses previously utilized by the Boy Scouts before the land was purchased by Johnson Development Corp., which plans a mixed-use development there.

"Johnson has great plans for this prime property off Interstate 45," said Rafael Martinez, whose wife is one of the voters. "This will become a great new place to shop and live."

Martinez, who previously lived and worked at the camp, has since been hired as a land manager for Johnson. As a permanent resident with a green card, he is ineligible to vote, but his American wife can, as well as two others who recently moved onto the property, he said.

Virgil Yoakum, a spokesman for Johnson Development, could not be reached for comment on efforts to hold an election to pass these bonds.

All but one of the seven voters have listed the same mailing address with the county voter registrar: 20615 Marilyn Lane in Spring. Records show the property at this address has been connected to a mobile home service, Jaylerton Properties LLC, which also has links to Stingray Services, but representatives of the entities could not be reached for comment.

In Tuesday's election, Johnson is asking for approval of $448 million in bonds for its development (and up to a $1.10 tax rate to pay for it); Friendswood is seeking $500 million (and up to a $3.10 tax rate); and Stoecker wants $126 million (and up to a $1.75 tax rate).

While MUDs provide a way for developers to recoup the cost for installing new infrastructure from waterlines to roads, these developers must cover the initial expense themselves and then later are reimbursed, typically over one to five years by taxing those who move into the district, said Andrea Morrow, spokeswoman for the Texas Commission on Environmental Quality, which oversees the districts. "The state has strict regulations on how this is done," she said.

In the past decade, none of the MUDs in the eight-county Houston region has filed for bankruptcy, she said.

Conroe Mayor Webb Melder is excited about the coming elections for the three MUDs that lie within his city limits: "It means a larger tax base, more sales tax and jobs," he said.

Without MUDs, much of Harris County and The Woodlands would not exist today, he said. In order for MUDs to be confirmed in an election as state law requires, developers have to move residents onto their property to vote, Melder said.

"While the method may seem unusual, it has led to hundreds of thousands of high-quality and affordable homes in the Houston area," said Lutz, the attorney for Stoecker.

***Blurred lines***

However, others, such as University of Connecticut School of Law professor Sara Bronin, question the "lack of formal democratic process" in these MUD elections, utilizing a small voter pool that is

"handpicked by the developer."

Bronin, who wrote an article for the Fordham Law Review on Texas' MUDs, notes how MUDs were originally designed only as a vehicle for supplying water to unincorporated areas. Since then, as the number of MUDs has proliferated, their power also has grown, she said.

"The lines are so blurred that you can't tell much difference between a MUD and what a city can do," she said.

MUDs can not only build infrastructure and levy taxes, but some also have the power of eminent domain and can initiate fire and police security.


Yet Melder and others say the overwhelming majority of the 972 MUDs created in the Houston region since 1971 have been a resounding success, providing quality growth to the area.

"Houston and this whole region would not be where we are today without them," he said.

**Cindy Horswell**

APPENDIX EXHBIT FOUR:  RECORDS OF VOTERS REGISTERED
FROM BUSINESS/OFFICE ADDRESSES WHO HAVE A RESIDENCE
AND HOUSTON CHRONICLE ARTICLE

VOTER DETAIL

THE WOODLANDS ROAD UTILITY DISTRICT #1

Name           **JOHN BARRY DONOHO   : VUID 1127633288**

RUD Address :     **9590 SIX PINES THE WOODLANDS, TX 77380**


Exhibits

        Official Voter History

        Voter Registration Card

        Appraisal District Property Detail  ( Retail Designation )





# Montgomery County Elections
# Voter Registration Information

| VUID: 1127633288 | Suspense |
| --- | --- |

**Name:** JOHN BARRY DONOHO
**Residence:** 74 EAST SHORE DR  THE WOODLANDS, TX 77380
**Mailing:** 7 SWITCHBUD PL STE C 192-321 SPRING , TX 77380

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
| --- | --- | --- | --- | --- | --- |
| 33 | M | 4/8/1963 | 10/25/2016 | 5/4/1984 | 1/1/2018 |

## Voter History

| ID | Date | Election Name | Party | Precinct |
| --- | --- | --- | --- | --- |
| GEN110816 | 11/8/2016 | The Woodlands Township | G | 33 |
| GEN110816 | 11/8/2016 | Montgomery County Hospital District | G | 33 |
| GEN110816 | 11/8/2016 | Lone Star College District 5 | G | 33 |
| GEN110816 | 11/8/2016 | Montgomery County | G | 33 |
| SPE080514 | 8/5/2014 | State Senate District 4 | G | Al |
| GEN110512 | 11/6/2012 | Conroe Independent School District | G | 33 |
| GEN110512 | 11/6/2012 | Montgomery County | G | 33 |
| PRI052912 | 5/29/2012 | Montgomery County Democratic and Republican Party Primary Election | REP | 78 |
| GEN110210 | 11/2/2010 | CONROE INDEPENDENT SCHOOL DISTRICT TRUSTEE GENERAL ELECTION | G | 78 |
| GEN110210 | 11/2/2010 | MONTGOMERY COUNTY GENERAL ELECTION | G | 78 |
| GEN110408 | 11/4/2008 | Conroe Independent School District Special Election | G | 33 |
| GEN110408 | 11/4/2008 | Montgomery County General Election | G | 33 |
| ELE110204 | 11/2/2004 | Montgomery County General Election | G | 45 |
| ELE051504 | 5/15/2004 | Montgomery County Hospital District General Election | G | 45 |
| ELE110700 | 11/7/2000 | Montgomery County General Election | G | 59 |
| ELE110596 | 11/5/1996 | Montgomery County General Election | G | 59 |
| ELE110392 | 11/3/1992 | Montgomery County General Election | X | 33 |

**Page 1 of 1**

Prescribed by the
Secretary of State
B5-2bP 12/03

# VOTER REGISTRATION ADDRESS CONFIRMATIO
## (CONTESTACION A LA CONFIRMACION DE DOMICILIO PARA EFECTOS DE INSCRI

| Last Name (Apellido usual) | First Name (Su nombre de pila) | Middle Name (If any) (Segundo Nombre) (si tiene) |
|---|---|---|
| Donoho | John  33  11.4 | Barry |

**Residence Address: Street Address and Apartment Number, City, State, and ZIP.  If none, describe where you live.** (Do not inc
(Domicilio: Calle y número, número de apartamento, Ciudad, Estado, y Zona Postal: A falta de estos datos, describa la localidad de su reside
ni su ruta rural.)

9590 Six Pines Dr The Woodlands T

**Mailing Address, City, State and ZIP:** If mail cannot be delivered to your residence address (Direccion Postal,
Ciudad, Estado, y Zona Postal) (Si es imposible entregarle correspondencia a domicilio)

Th          **ENTERED**

Date

**I affirm the changes made are correct.**
(Afirmo que los cambios que se hicieron están correctos.)   100548          **OCT 1**

8  15.05
Date (fecha)

X _____

**Signature of Voter or Agent and Relationship to Voter or Printed Name of Voter if Signed by
Witness and Date.** (Firma del votante o de su apoderado/a y parentesco. Si la firma es de un(a) testigo,
escriba el nombre del votante en letras de molde. Indicar la fecha.)

**TX Driver's License No. or P**
TX Dept. of Public Safety) I
**Security No.** (Número de su lic
Cédula de Identidad (expedida por
Publica de
social.)

Signature and Printed Name
(Firma y Nombre del Testigo en Letra d

ROSE MARY

**FOR AGENT** (PARA AGENTE): Changes may be made by agent, who must be qualified voter of
this county or have submitted a registration application and must otherwise be eligible to vote and must
be the voter's husband, wife, father, mother, son or daughter. (Los cambios podrán estar dirigidos por un
agente que deberá ser un votante capacitado de este condado o que habrá presentado una solicitud para
registrarse para votar, y de otro modo deberá de estar elegible para votar. El agente deberá ser el esposo,
esposa, padre, madre, hijo o hija del vot **MONTGOMERY COUNTY**

**Residence Address of Witns**
If voter is unable to sign their name,
presence of a witness. If voter is unab
shall check here. ☐   (Si el votante n
su marca ante un testigo.  Si no puede
aquí.) ☐

**Relationship** (Parentesco) _____

MONTGOMERY CENTRAL APPRAISAL DISTRICT

| Property<br>R286999 | Owner<br>JBD PARTNERS LP | Property Address<br>9590 SIX PINES DR, THE WOODLANDS, TX 77380 | 2019 Assessed Value<br>$2,268,840 |
| --- | --- | --- | --- |

## 2019 GENERAL INFORMATION

| | |
| --- | --- |
| Property Status | Active |
| Property Type | Real |
| Legal Description | S970800 - Wdlnds Mall, RES A10-B, ACRES 1.2903 |
| Neighborhood | SCO CWT TOWN CENTER & EAST SHORE LAKE WOODLANDS |
| Account | 9708-00-00198 |
| Map Number | |

## 2019 OWNER INFORMATION

| | |
| --- | --- |
| Owner Name | JBD PARTNERS LP |
| Owner ID | O0489942 |
| Exemptions | |
| Percent Ownership | 100% |
| Mailing Address | J BARRY DONOHO 7 SWITCHBUD PL #STE C192 SPRING, TX 77380-3707 |
| Agent | ASSESSMENT ADVISORS (O0113971) |

## 2019 VALUE INFORMATION

| | |
| --- | --- |
| Improvement Homesite Value | N/A |
| Improvement Non-Homesite Value | N/A |
| Total Improvement Market Value | $582,690 |
| Land Homesite Value | N/A |
| Land Non-Homesite Value | N/A |
| Land Agricultural Market Value | N/A |
| Total Land Market Value | $1,686,150 |
| Total Market Value | $2,268,840 |
| Agricultural Use | $0 |
| Total Appraised Value | $2,268,840 |
| Homestead Cap Loss | $0 |
| Total Assessed Value | $2,268,840 |

*N/A values are not applicable toward total value.*

Print property information

## 2019 ENTITIES & EXEMPTIONS

| TAXING ENTITY | EXEMPTIONS | EXEMPTIONS AMOUNT | TAXABLE VALUE | TAX RATE PER 100 | TAX CEILING |
| --- | --- | --- | --- | --- | --- |
| CAD - Appraisal District | | $0 | $2,268,840 | 0 | 0 |
| CWT - The Woodlands Township | | $0 | $2,268,840 | 0.2273 | 0 |
| GMO - Montgomery Cnty | | $0 | $2,268,840 | 0.4667 | 0 |
| HM1 - Mont Co Hospital | | $0 | $2,268,840 | 0.0599 | 0 |
| JNH - Lone Star College | | $0 | $2,268,840 | 0.1078 | 0 |
| MWM - Woodlands Mtro Mud | | $0 | $2,268,840 | 0.09 | 0 |
| RU1 - Woodlands Rd Util #1 | | $0 | $2,268,840 | 0.2 | 0 |
| SCO - Conroe ISD | | $0 | $2,268,840 | 1.28 | 0 |
| TOTALS | | | | 2.4317 | |

## 2019 IMPROVEMENTS

▼ Expand/Collapse All

| Improvement #1 | State Code<br>F1 - Commercial (real) | Homesite<br>No | Total Main Area (Exterior Measured) Market Value<br>N/A |
| --- | --- | --- | --- |

| RECORD | TYPE | YEAR BUILT | SQ. FT | VALUE | ADD'L INFO |
| --- | --- | --- | --- | --- | --- |
| 1 | Retail Store | 2001 | 9,952 | N/A | ▼ Details |
| 2 | Enclosed Entry | 2001 | 140 | N/A | ▼ Details |
| 3 | Canopy Roof & Slab - Comm | 2001 | 870 | N/A | ▼ Details |

| Improvement #2 | State Code<br>F1 - Commercial (real) | Homesite<br>No | Total Main Area (Exterior Measured) Market Value<br>N/A |
| --- | --- | --- | --- |

| RECORD | TYPE | YEAR BUILT | SQ. FT | VALUE | ADD'L INFO |
| --- | --- | --- | --- | --- | --- |
| 1 | Paving - Concrete Average | 2001 | 14,674 | N/A | ▼ Details |

## 2019 LAND SEGMENTS

| LAND SEGMENT TYPE | STATE CODE | HOMESITE | MARKET VALUE | AG USE | LAND SIZE |
| --- | --- | --- | --- | --- | --- |
| 1 - Primary Site | F1 - Commercial (real) | No | N/A | $0 | 56,205 Sq. ft |
| TOTALS | | | | | 56,205 Sq. ft / 1.290289 acres |

## VALUE HISTORY

| YEAR | IMPROVEMENT | LAND | MARKET | AG MARKET | AG USE | APPRAISED | HS CAP LOSS | ASSESSED |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 2018 | $582,690 | $1,686,150 | $2,268,840 | $0 | $0 | $2,268,840 | $0 | $2,268,840 |
| 2017 | $669,790 | $1,124,100 | $1,793,890 | $0 | $0 | $1,793,890 | $0 | $1,793,890 |
| 2016 | $617,380 | $730,670 | $1,348,050 | $0 | $0 | $1,348,050 | $0 | $1,348,050 |
| 2015 | $617,380 | $730,670 | $1,348,050 | $0 | $0 | $1,348,050 | $0 | $1,348,050 |
| 2014 | $977,460 | $730,670 | $1,708,130 | $0 | $0 | $1,708,130 | $0 | $1,708,130 |

SALES HISTORY

| DEED DATE | SELLER | BUYER | INSTR # | VOLUME/PAGE |
|---|---|---|---|---|
| 6/1/2015 | DONOHO, JOHN BARRY & CINDY E | JBD PARTNERS LP | 2015080795 | |
| 9/29/2000 | WOODLANDS LAND DEV LP | DONOHO, JOHN BARRY & CINDY E | | 782.00/1020 |

DISCLAIMER

Every effort has been made to offer the most current and correct information possible on these pages. The information included on these pages has been compiled by County staff from a variety of sources, and is subject to change without notice. The Montgomery Central Appraisal District makes no warranties or representations whatsoever regarding the quality, content, completeness, accuracy or adequacy of such information and data. The Montgomery Central Appraisal District reserves the right to make changes at any time without notice. Original records may differ from the information on these pages. Verification of information on source documents is recommended. By using this application, you assume all risks arising out of or associated with access to these pages, including but not limited to risks of damage to your computer, peripherals, software and data from any virus, software, file or other cause associated with access to this application. The Montgomery Central Appraisal District shall not be liable for any damages whatsoever arising out of any cause relating to use of this application, including but not limited to mistakes, omissions, deletions, errors, or defects in any information contained in these pages, or any failure to receive or delay in receiving information.

VOTER DETAIL

THE WOODLANDS ROAD UTILITY DISTRICT #1

Name                    MICHAEL DEAN POWELL :
                        SHELLEY KATHLEEN POWELL

Address for Voting Purposes :

                4775 W PANTHER CREEK #130-A THE WOODLANDS, TX 77381

Residential Address:

                20803 Rosestone Ln Spring, TX 77379

Exhibits

        Appraisal District Homestead Designation

        Official Voter History Report

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**1244870010005**

Tax Year: 2019

🖶 Print

| Owner and Property Information | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Owner Name & Mailing Address: | **POWELL MICHAEL & SHELLEY**<br>**20803 ROSESTONE LN**<br>**SPRING TX 77379-2758** | | | | Legal Description:<br><br>Property Address: | **LT 5 BLK 1**<br>**WINDROSE WEST SEC 11**<br>**20803 ROSESTONE LN**<br>**SPRING TX 77379** | | | |
| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Market Area | Map Facet | Key Map²½ | |
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 14,212 SF | 4,732 SF | 2766.02 | 17050 | 320 -- ISD 17 - Klein ISD | 4970D | 290T | |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 04/23/2019 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2018 Rate | 2019 Rate |
|---|---|---|---|---|---|---|
| Residential Homestead | 017 | KLEIN ISD | 25,000 | Certified: 08/02/2019 | 1.430000 | |
| | 040 | HARRIS COUNTY | 118,534 | Certified: 08/02/2019 | 0.418580 | |
| | 041 | HARRIS CO FLOOD CNTRL | 118,534 | Certified: 08/02/2019 | 0.028770 | |
| | 042 | PORT OF HOUSTON AUTHY | 118,534 | Certified: 08/02/2019 | 0.011550 | |
| | 043 | HARRIS CO HOSP DIST | 118,534 | Certified: 08/02/2019 | 0.171080 | |
| | 044 | HARRIS CO EDUC DEPT | 118,534 | Certified: 08/02/2019 | 0.005190 | |
| | 045 | LONE STAR COLLEGE SYS | 5,927 | Certified: 08/02/2019 | 0.107800 | |
| | 635 | HC EMERG SRV DIST 16 | 59,267 | Certified: 08/02/2019 | 0.049570 | |
| | 666 | HC EMERG SERV DIST 11 | 0 | Certified: 08/02/2019 | 0.036060 | |
| | 771 | NW HC MUD 32 | 0 | Certified: 08/02/2019 | 0.660000 | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's Information center at 13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2018 | | | Value as of January 1, 2019 | | |
|---|---|---|---|---|---|---|
| | Market | Appraised | | | Market | Appraised |
| Land | 112,170 | | Land | | 112,170 | |
| Improvement | 463,739 | | Improvement | | 480,502 | |
| Total | 575,909 | 575,909 | Total | | 592,672 | 592,672 |

### Land

| Market Value Land | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 14,000 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 8.00 | 8.00 | 112,000.00 |
| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 212 | 1.00 | 0.10 | 1.00 | -- | 0.10 | 8.00 | 0.80 | 170.00 |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 2004 | Residential Single Family | Residential 1 Family | Superior | 4,732 * | Displayed |

\* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your

square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

### Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Foundation Type | Slab |
| Exterior Wall | Stucco |
| Heating / AC | Central Heat/AC |
| Grade Adjustment | X- |
| Physical Condition | Average |
| Cond / Desir / Util | Average |
| Element | Units |
| Room: Bedroom | 4 |
| Room: Total | 8 |
| Room: Rec | 1 |
| Room: Half Bath | 2 |
| Room: Full Bath | 3 |
| Fireplace: Metal Prefab | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA UPR | 1,973 |
| BASE AREA PRI | 2,759 |
| OPEN FRAME PORCH PRI | 80 |
| OPEN MAS PORCH PRI | 268 |
| FRAME GARAGE PRI | 928 |
| CANOPY PRI | 42 |
| OPEN FRAME PORCH PRI | 32 |

### Extra Features

| Line | Description | Quality | Condition | Units | Year Built |
|---|---|---|---|---|---|
| 1 | Gunite Pool | Good | Good | 704.00 | 2009 |
| 2 | Pool SPA with Heater | Good | Good | 1.00 | 2009 |




# Montgomery County Elections
# Voter Registration Information

| VUID: | | Purged |
|---|---|---|

**Name: MICHAEL DEAN POWELL**
Residence: 4775 W PANTHER CREEK #130-A THE WOODLANDS, TX 77381
Mailing: 4775 W PANTHER CREEK #130-A THE WOODLANDS, TX 77381

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
|---|---|---|---|---|---|
| 48 | M | 11/8/1962 | 9/1/2004 | 9/1/2004 | 7/22/2010 |

## Voter History

| ID | Date | Election Name | Party | Precinct |
|---|---|---|---|---|
| GEN110408 | 11/4/2008 | Conroe Independent School District Special Election | G | 48 |
| GEN110408 | 11/4/2008 | Montgomery County General Election | G | 48 |
| GEN110706 | 11/7/2008 | Montgomery County General Election | G | 48 |
| GEN110706 | 11/7/2008 | NORTH HARRIS MONTGOMERY COMMUNITY COLLEGE DISTRICT GENERAL AND SPECIAL ELECTION | G | 48 |
| ELE110204 | 11/2/2004 | Montgomery County General Election | G | 48 |

Page 1 of 1



# Montgomery County Elections
## Voter Registration Information



| VUID: | | | | | | Purged |
|-------|--|--|--|--|--|--------|

**Name:** SHELLEY KATHLEEN POWELL
**Residence:** 4775 W PANTHER CREEK #130-A THE WOODLANDS, TX 77381
**Mailing:** 4775 W PANTHER CREEK #130-A THE WOODLANDS, TX 77381

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
|----------|--------|-----|----------|----------|------------|
| 48 | F | 10/14/1972 | 2/14/1993 | 2/14/1993 | 8/8/2010 |

## Voter History

| ID | Date | Election Name | Party | Precinct |
|----|------|---------------|-------|----------|
| GEN110408 | 11/4/2008 | Conroe Independent School District Special Election | G | 48 |
| GEN110408 | 11/4/2008 | Montgomery County General Election | G | 48 |
| ELE110700 | 11/7/2000 | Montgomery County General Election | G | 04 |
| ELE110596 | 11/5/1996 | Montgomery County General Election | G | 04 |
| ELE110894 | 11/8/1994 | Montgomery County General Election | X | 33 |

**Page 1 of 1**

VOTER DETAIL

THE WOODLANDS ROAD UTILITY DISTRICT #1

Name            JOSEPH THADIS WHISENANT  : VUID 1127751040

RUD Address :        4185 TECHNOLOGY FOREST BLVD #160 THE WOODLANDS, TX 77381

Exhibits

    Official Voter History

    Commercial Property Sheet

    Homestead Designation

    Wife Voter History

# VOTER REGISTRATION APPLICATION (SOLICITUD PARA REGISTRO DE...)

PLEASE COMPLETE ALL OF THE INFORMATION BELOW. PRINT IN INK OR TYPE.
*(POR FAVOR COMPLETE LA SIGUIENTE INFORMACION. ESCRIBA EN LETRA DE MOLDE CON TINTA O ESCRIBA A MAQUINA.)*

For Official Use
PCT ___ Cert. ___

| Last Name *(Apellido)* | First Name (NOT HUSBAND'S) *(Nombre de Pila) (NO DEL ESPOSO)* | Middle Name (if any) *(Segundo Nombre (si tiene)* | N |
|---|---|---|---|
| Whisenant | Joseph | Thadis | |

| Sex *(Sexo)* | Date of Birth *(Fecha de Nacimiento)* | Place of Birth *(Lugar de Nacimiento)* | | County and Address |
|---|---|---|---|---|
| M | 12/29/65 month, day, year *(el mes, el día, el año)* | city or county *(ciudad o condado)* Hancock Co. | state or foreign country *(estado o país extranjero)* Mississippi MS | *(Condado y direccion...)* Harris County 9449 Bci... |

**Permanent Residence Address: Street Address and Apartment Number, City, State, and ZIP. If none, describe location...** P.O. Box or Rural Rt.) *(Dirección de Residencia Permanente: Calle y Número de Departamento, Ciudad, Estado, y Zona Postal; si no tiene, cia. No incluya su caja postal o ruta rural.)*

22 Plum Blossom Pl. The Woodlands, TX. 77381

Social Security Number

**Mailing Address, City, State and ZIP: If mail cannot be delivered to your permanent residence address.** *(Dirección Postal, Ciudad, Estado y Zona Postal) (si es imposible entregar correspondencia a su dirección permanente)*

Telephone Number (Op...) *(Número de Teléfono) (No ob...)*

Precinct Number (if kno...) *(Número de precinto (si lo se...)*

The applicant is a citizen of the United States and a resident of this county. Applicant has not been finally convic... is eligible for registration under Section 13.001(a)(4) of the Texas Election Code. I understand that the giving of fals... registration of a voter is a misdemeanor. *(El suplicante es ciudadano de los Estados Unidos y es residente de este condado. El supli... finalmente de un crimen, o, si es criminal, está elegible para registrarse para votar bajo las condiciones de la Sección 12.001(a)(4) del Código de Elecciones de Texas. Yo entiendo que es un delito menor dar infor- mación falsa con motivo de conseguir el registro de un votante.)*

Date of Naturalization (If Applicable) *(Corte de Naturalización, si aplicable)* MAY 09

Signature of Applicant or Agent or Printed Name of Appli- cant If Signed by Witness *(Firma del Suplicante o Agente, o Nom- bre del Suplicante En Letra de Molde Si Fue Firmado Por Un Testigo)*

FOR AGENT (PARA AGENTE) Application may be made by agent, who must be a... ...ted a registration application and must otherwise be eligible... ...son or daughter. *(La solicitud podrá estar dirigida por un agente que deberá ser... que habrá presentado una solicitud para registrarse para votar, y de otro modo de... deberá ser el esposo, esposa, padre, madre, hijo o hija del suplicante.)*

Relationship *(Parentesco)*

RECEIVED MAY 04

FOR WITNESS *(PARA TESTIGO)*

Signature *(Firma)* ___ Check here if applicant is unable to make mark. *(Marque aquí si el suplicante no puede hacer su marca.)*

Printed name *(Nombre En Letra de Molde)*

\* The disclosure of social security number is voluntary. It is solicited by authority of Sec. 13.122 and will be used only to maintain the accuracy of the registration records. *(... social. Se solicita bajo la autoridad de la Sec. 13.122 y se usará solamente para mantener la exactitud de los archivos.)*

For Assistance Call
*Si Necesita Asistencia*
Secretary of State's
*Llame Gratis Al:*
Office Toll Free:
1-800-252-(VOTE) 8683

HOUSTON, TX 770
PM
3 MAY

# BUSINESS REPLY MAIL
## FIRST CLASS MAIL  PERMIT NO. 4511  AUSTIN, TX

POSTAGE WILL BE PAID BY ADDRESSEE

## REGISTRAR OF VOTERS
## COUNTY COURTHOUSE
(CITY)                                    (ZIP CODE)

_Conroe_____ , TX _77305-2640_



LINDA GARNER
ELECTIONS ADMINISTRATOR
MONTGOMERY COUNTY
P.O. BOX 2646
CONROE, TEXAS 77305
409/539-7843 OR
281/353-9791 EXT. 7843
281/689-3133 EXT. 7843

Secretary of State's Office
Elections Division
1-800-252-VOTE (8683)

OFFICIAL BUSINESS

**RETURN SERVICE REQUESTED**

DEC 1 '99

RECEIVED
DEC

**VOTER REGISTRATION CERTIFICATE**
*(Certificado de Registro Electoral)*

DO NOT CUT - FOLD ON DO
*Favor de no cortar - Doble su certificad*

**MONTGOMERY COUNTY** *(Condado de Montgomery)*

| U.S. REP. *(Rep. de los E.U.)* | STATE SEN. *(Sen. Estatal)* | STATE REP. *(Rep. Estatal)* | COMM. PR *(Com. Pc* |
|---|---|---|---|
| 8 | 3 | 15 | 3 |

| Cert. No. *(Núm. de Cert.)* | Gender *(Sexo)* | Valid from *(Válido desde)* |
|---|---|---|
| 210521 | M | 01/01/00 |

| Date of Birth *(Fecha de Nacimiento)* | Prec. No. *(Pct. Núm.)* | thru *(hasta)* |
|---|---|---|
| 12/29/65 | 59 | 12/31/01 |

Name and Permanent Residence Address *(Nombre y dirección residencial permanente)*

WHISENANT, JOSEPH
22 PLUM BLOSSOM PL
THE WOODLANDS, TX      77381

X *Joseph D Whisenant*

**VOTER MUST PERSONALLY SIGN HIS/HER NAME IMMEDIATELY UPON RECEIPT, IF ABLE**
*(El votante debe firmar esta tarjeta personalmente al punto de recibirla, si puede.)*

Party Primary
*(Voto en la elección primaria del partido político nombrado arriba)*

Name and mailing address *(Nombre*

ENTERED DEC

JOSEPH WHISENANT
22 PLUM BLOSSOM
THE WOODLANDS, T
19 Mirror R
The Woodlan

You may vote without your certificate by showing another form of identification. If you lose your certificate, you
certificate by contacting the voter registrar. (Usted podrá votar sin su certificado de votante si presenta otra forma de identific
usted podrá pedir un certificado de reemplazo comunicandose con el registrador de votantes.)

You will receive a new certificate every two years as long as your voter registration is not cancelled under some p
by use of this certificate by any person other than the person in whose name this certificate is issued is a felony.
nuevo cada dos años mientras que no se cancele su certificado bajo alguna disposición de la ley. El uso de este certificado por algún
cuyo nombre aparece en el certificado es un delito.)

If you move within the county, you must transfer your registration to your new address after you move. You ma
previous precinct if your registration has not become effective in your new precinct. Before you are allowed to vo
the election judge will ask you to fill out a statement of residence confirming your new address in your new precinct.
dentro del mismo condado, deberá transferir su inscripción de votante después del cambio. En caso de que no haya entrado en vig
precinto, podrá votar con boleta íntegra en su precinto anterior. Antes de darle autorización para votar en el precinto anterior, el ju
una declaración de residencia en la que confirme su nueva dirección en el precinto nuevo.)

If you move from one Texas county to another, you must re-register in the county of your new residence. Howe
vote a limited ballot for 90 days after you move if your new registration is not yet effective. Contact the county clerk
in your new county for information. (Si usted cambia su residencia de un condado a otro dentro del Estado de Texas, uste
en el condado de su residencia nueva. Sin embargo, usted puede tener derecho a votar una boleta limitada por un plazo de 90 d
residencia si su nuevo certificado de votante todavía no está vigente. Para recibir información, comuníquese con el Secretario d
de elecciones del condado de su residencia nueva.)

If any information on this certificate changes or is incorrect, including birthdate, correct the information in the s
and return this certificate to the voter registrar. (Si resulta que alguna información sobre este certificado de votante cambi
la fecha de nacimiento, favor de corregir la información en el espacio provisto abajo, y luego firme y devuelva este certificado de vot

New address:
19 Mirror Ridge
The Woodlands, TX 77382

I affirm the changes made to the left are corr
hecho al lado izquierdo están correctos.)

_Joseph J. Williams_
Signature of Voter (Firma del votante)

Ridge
...nds, TX
...382

HOUSTON TX
PM
01 DEC 2001

UNITED STATES POSTAGE
PB 9781520
$00.34^{0}$ NOV 30 01
MAILED FROM ZIP CODE 77380

Linda Garner
Elections Administrator
Montgomery County
PO BOX 2646
Conroe, TX 77305

RECEIVED
DEC 03 2001

77305+2646

# 05 -- ONLINE DATA CHANGE

**2105**

Date Received: 05.20.2016     Trans Date: 05.24.2016

| Last Name | First Name | Middle Name | Former Name |
|-----------|-----------|-------------|-------------|
| WHISENANT | JOSEPH | THADIS | |

**Residence Address:**
4185 TECHNOLOGY FOREST BLVD STE #160 THE WOODLANDS, TX77381

**Mail Address:**
PO BOX 131771 SPRING, TX 77393

**TX Driver's License**

**EMAIL ADDRESS**

**Voter Status**  ☐ NEW   ☒ CHANGE   ☐ REPLACE

**Trace ID**
SOS000000753130

# 4185 Technology Forest Dr - Medical Professional
## 0.73 AC of Office Space Available in The Woodlands, TX

 

2009-030563

RECORDED AT THE REQUEST
OF FIRST AMERICAN TITLE

## HOMESTEAD AFFIDAVIT

STATE OF TEXAS           )
                         ) §
COUNTY OF MONTGOMERY     )

BEFORE ME, the undersigned authority, on this day personally appeared Molly T. Whisenant, who, after being duly sworn, did depose and state as follows:

"Affiant now owns and resides on, claims and designates Affiant's homestead property as Affiant's only legal homestead, exempt from forced sale under the Constitution and laws of Texas, that certain property described as follows:

LOT 12, IN BLOCK 3, OF THE WOODLANDS, VILLAGE OF INDIAN SPRINGS, SECTION EIGHTEEN (18), A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET M, SHEETS 84-88, OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS."

This affidavit is made for the benefit of AmTrust Bank and First American Title Insurance Company and the undersigned Affiant hereby acknowledges that the said AmTrust Bank and First American Title Insurance Company have relied upon the representations herein being true and correct, and if these representations were not true and correct, First American Title Insurance Company would not issue title insurance in connection with the subject property.

EXECUTED this 6th day of April, 2009.

Molly T. Whisenant

STATE OF TEXAS           )
                         ) §
COUNTY OF MONTGOMERY     )

SWORN TO AND SUBSCRIBED BEFORE ME on this 6th day of April, 2009, by Molly T. Whisenant.

Notary Public, State of Texas
Printed Name :
My Commission Expires:

YESSICA APOLINAR
Notary Public, State of Texas
My Commission Expires
February 28, 2013

STATE OF TEXAS           )
                         ) §
COUNTY OF MONTGOMERY     )

This instrument was acknowledged before me on the Sixth day of April, 2009, by Molly T. Whisenant.

Notary Public, State of Texas
Printed Name :
My Commission Expires:  130917L40

YESSICA APOLINAR
Notary Public, State of Texas
My Commission Expires
February 28, 2013

FILED FOR RECORD

2009 APR 14  PM 2: 16

*Mark Turnbell*
COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
    I hereby certify this instrument was filed in
File Number Sequence on the date and at the time
stamped herein by me and was duly RECORDED in
the Official Public Records of Real Property at
Montgomery County, Texas.

APR 1 4 2009



*Mark Turnbell*
County Clerk
Montgomery County, Texas




# Montgomery County Elections
# Voter Registration Information

| VUID: 1127751038 | Active |
|---|---|

**Name: MOLLY THORNBERRY WHISENANT**

Residence: 4185 TECHNOLOGY FOREST BLVD #160 THE WOODLANDS, TX 77381

Mailing: PO BOX 131771 SPRING, TX 77393

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
|---|---|---|---|---|---|
| 62 | F | 10/18/1968 | 5/20/2016 | 6/2/1994 | 1/1/2018 |

## Voter History

| ID | Date | Election Name | Party | Precinct |
|---|---|---|---|---|
| GEN110618 | 11/6/2018 | Lone Star Groundwater Conservation District | G | 62 |
| GEN110618 | 11/6/2018 | Single Member Water Conservation District – The Woodlands Township | G | 62 |
| GEN110618 | 11/6/2018 | Lone Star Groundwater Conservation District - Precinct 3 | G | 62 |
| GEN110618 | 11/6/2018 | Conroe Independent School District | G | 62 |
| GEN110618 | 11/6/2018 | The Woodlands Township | G | 62 |
| GEN110618 | 11/6/2018 | Montgomery County | G | 62 |
| PRI030618 | 3/6/2018 | March 6, 2018 Primary Election | REP | 62 |
| GEN110717 | 11/7/2017 | The Woodlands Township | G | DB |
| GEN110717 | 11/7/2017 | Montgomery County | G | DB |
| GEN110816 | 11/8/2016 | The Woodlands Township | G | 62 |
| GEN110816 | 11/8/2016 | Montgomery County Hospital District | G | 62 |
| GEN110816 | 11/8/2016 | Lone Star College District 5 | G | 62 |
| GEN110816 | 11/8/2016 | Montgomery County | G | 62 |
| RUN052416 | 5/24/2016 | May 24, 2016 Primary Runoff Election | REP | 61 |
| PRI030116 | 3/1/2016 | March 1, 2016 Primary Election | REP | 61 |
| GEN110315 | 11/3/2015 | Conroe Independent School District | G | DD |
| GEN110315 | 11/3/2015 | The Woodlands Township | G | DD |
| GEN110315 | 11/3/2015 | Montgomery County | G | DD |
| CON050915 | 5/9/2015 | Montgomery County | G | AH |
| GEN110414 | 11/4/2014 | Montgomery County Hospital District Precinct 3 | G | 61 |
| GEN110414 | 11/4/2014 | Conroe ISD | G | 61 |
| GEN110414 | 11/4/2014 | The Woodlands Township | G | 61 |
| GEN110414 | 11/4/2014 | Montgomery County Hospital District | G | 61 |
| GEN110414 | 11/4/2014 | Lone Star College System | G | 61 |
| GEN110414 | 11/4/2014 | Montgomery County | G | 61 |
| RUN052714 | 5/27/2014 | May 27, 2014 Primary Runoff Election | REP | 61 |
| CON051014 | 5/10/2014 | Montgomery County Special State Senate District 4 Election | G | 79 |
| PRI030414 | 3/4/2014 | March 4, 2014 Primary Election | REP | 61 |
| GEN110612 | 11/6/2012 | Conroe Independent School District | G | 61 |
| GEN110612 | 11/6/2012 | Montgomery County | G | 61 |
| RUN073112 | 7/31/2012 | July 31, 2012 Primary Runoff Elections | REP | 61 |
| PRI052912 | 5/29/2012 | Montgomery County Democratic and Republican Party Primary Election | REP | 61 |
| CON051212 | 5/12/2012 | The Woodlands Township General Election | G | G |
| GEN110210 | 11/2/2010 | CONROE INDEPENDENT SCHOOL DISTRICT TRUSTEE GENERAL ELECTION | G | 61 |
| GEN110210 | 11/2/2010 | MONTGOMERY COUNTY GENERAL ELECTION | G | 61 |
| PRI030210 | 3/2/2010 | Montgomery County Democratic and Republican Party Primary Election | R | 61 |
| GEN110408 | 11/4/2008 | Conroe Independent School District Special Election | G | 78 |
| GEN110408 | 11/4/2008 | Montgomery County General Election | G | 78 |
| RUN040808 | 4/8/2008 | Montgomery County Democratic and Republican Party Primary Runoff Election | R | 78 |
| PRI030408 | 3/4/2008 | Montgomery County Democratic and Republican Party Primary Election | R | 78 |
| SPE110607 | 11/6/2007 | MONTGOMERY COUNTY CONSTITUTIONAL AMENDMENT ELECTION | G | 78 |
| SPE110607 | 11/6/2007 | TOWN CENTER IMPROVEMENT DISTRICT CONFIRMATION AND TAX ELECTION | G | 78 |
| GEN110706 | 11/7/2006 | Montgomery County General Election | G | 78 |
| GEN110706 | 11/7/2006 | NORTH HARRIS MONTGOMERY COMMUNITY COLLEGE DISTRICT GENERAL AND SPECIAL ELECTION | G | 78 |




# Montgomery County Elections
# Voter Registration Information

**VUID: 1127751038**                                                      **Active**

**Name: MOLLY THORNBERRY WHISENANT**
Residence: 4185 TECHNOLOGY FOREST BLVD #160 THE WOODLANDS, TX 77381
Mailing: PO BOX 131771 SPRING, TX 77393

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
|---|---|---|---|---|---|
| 62 | F | 10/18/1968 | 5/20/2016 | 6/2/1994 | 1/1/2018 |

## Voter History

| ID | Date | Election Name | Party | Precinct |
|---|---|---|---|---|
| RUNOFF.06 | 4/11/2006 | Montgomery County Democratic and Republican Party Primary Runoff Election | R | 78 |
| PRIMARY.06 | 3/7/2006 | Montgomery County Democratic and Republican Party Primary Election | R | 78 |
| ELE110204 | 11/2/2004 | Montgomery County General Election | G | 78 |
| ELE091303 | 9/13/2003 | Montgomery County Special Constitutional Amendment Election (+Civil Service) | G | 78 |
| ELE110502 | 11/5/2002 | Montgomery County General Election | G | 78 |
| ELE040902 | 4/9/2002 | Montgomery County Democratic and Republican Party Primary Runoff Election | R | 78 |
| ELE031202 | 3/12/2002 | Montgomery County  Democratic and Republican Party Primary Election | R | 78 |
| ELE110700 | 11/7/2000 | Montgomery County General Election | G | 59 |
| ELE031400 | 3/14/2000 | Montgomery County Democratic and Republican Party Primary Election | R | 59 |
| ELE110398 | 11/3/1998 | Montgomery County General Election | G | 59 |
| ELE031098 | 3/10/1998 | Montgomery County Democratic and Republican Party Primary Election | R | 59 |
| ELE110596 | 11/5/1996 | Montgomery County General Election | G | 59 |
| ELE040996 | 4/9/1996 | Montgomery County Democratic and Republican Party Primary Runoff Election | R | 59 |
| ELE031296 | 3/12/1996 | Montgomery County Democratic and Republican Party Primary Election | R | 59 |
| ELE110894 | 11/8/1994 | Montgomery County General Election | X | 59 |

Whisenant
19 Mirror Ridge
The Woodlands, TX
77382

HOUSTON TX
PM
01 DEC 2001

Linda Garner
Elections Administrator
Montgomery County
PO BOX 2646
Conroe, TX   77305

77305+2646

LINDA GARNER
ELECTIONS ADMINISTRATOR
MONTGOMERY COUNTY
P.O. BOX 2646
CONROE, TEXAS 77305
409/539-7843 OR
281/353-9791 EXT. 7843
281/689-3133 EXT. 7843

Secretary of State's Office
Elections Division
1-800-252-VOTE (8683)

12/1
12-31

MONTGOMERY COUNTY

'DEC 1 '99

**RETURN SERVICE REQUESTED**

---

### VOTER REGISTRATION CERTIFICATE
*(Certificado de Registro Electoral)*

**MONTGOMERY COUNTY** *(Condado de Montgomery)*

DO NOT CUT - FOLD ON D
Favor de no cortar - Doble su certificad

| Cert. No. *(Núm. de Cert.)* | Gender *(Sexo)* | Valid from *(Válido desde)* |
|---|---|---|
| 210520 | F | 01/01/00 |

| Date of Birth *(Fecha de Nacimiento)* | Prec. No. *(Pct. Núm.)* | thru *(hasta)* |
|---|---|---|
| 10/18/68 | 592 | 12/31/01 |

| | U.S. REP. *(Rep. de los E.U.)* | STATE SEN. *(Sen. Estatal)* | STATE REP. *(Rep. Estatal)* | COMM. P *(Com. P)* |
|---|---|---|---|---|
| | 8 | 3 | 15 | 3 |

Name and mailing address *(Nomb*

**Name and Permanent Residence Address** *(Nombre y dirección residencial permanente)*

WHISENANT, MOLLY
22 PLUM BLOSSOM PL
THE WOODLANDS, TX      77381

X

VOTER MUST PERSONALLY SIGN HIS/HER NAME IMMEDIATELY UPON RECEIPT, IF ABLE
*(El votante debe firmar esta tarjeta personalmente al punto de recibirla, si puede.)*

Party Primary
Voted in the _____
*(Votó en la elección primaria del partido político nombrado arriba)*

ENTERED DE
MOLLY WHISENANT
22 PLUM BLOSSOM
THE WOODLANDS, T
19 Mirror R
The Woodla

You may vote without your certificate by showing another form of identification. If you lose your certificate, you certificate by contacting the voter registrar. (Usted podrá votar sin su certificado de votante si presenta otra forma de identifica usted podrá pedir un certificado de reemplazo comunicándose con el registrador de votantes.)

You will receive a new certificate every two years as long as your voter registration is not cancelled under some p by use of this certificate by any person other than the person in whose name this certificate is issued is a felony. nuevo cada dos años mientras que no se cancele su certificado bajo alguna disposición de la ley. El uso de este certificado por algun cuyo nombre aparece en el certificado es un delito.)

If you move within the county, you must transfer your registration to your new address after you move. You m previous precinct if your registration has not become effective in your new precinct. Before you are allowed to vo the election judge will ask you to fill out a statement of residence confirming your new address in your new precinct dentro del mismo condado, deberá transferir su inscripción de votante después del cambio. En caso de que no haya entrado en vig precinto, podrá votar con boleta íntegra en su precinto anterior. Antes de darle autorización para votar en el precinto anterior, el ju una declaración de residencia en la que confirme su nueva dirección en el precinto nuevo.)

If you move from one Texas county to another, you must re-register in the county of your new residence. Howe vote a limited ballot for 90 days after you move if your new registration is not yet effective. Contact the county clerk in your new county for information. (Si usted cambia su residencia de un condado a otro dentro del Estado de Texas, uste en el condado de su residencia nueva. Sin embargo, usted puede tener derecho a votar una boleta limitada por un plazo de 90 d residencia si su nuevo certificado de votante todavía no está vigente. Para recibir información, comuníquese con el Secretario d de elecciones del condado de su residencia nueva.)

If any information on this certificate changes or is incorrect, including birthdate, correct the information in the s and return this certificate to the voter registrar. (Si resulta que alguna información sobre este certificado de votante cambi la fecha de nacimiento, las orden corregir la información en el espacio provisto abajo, y luego firme y devuelva este certificado de vot

new address.
19 Mirror Ridge
The Woodlands, TX 77382

I affirm the changes made to the left are corr hecho al lado izquierdo están correctos.)

Signature of Voter (Firma del votante)

# VOTER REGISTRATION APPLICATION (SOLICITUD PARA REGISTRO DE VO

PLEASE COMPLETE ALL OF THE INFORMATION BELOW. PRINT IN INK OR TYPE.
(POR FAVOR COMPLETE LA SIGUIENTE INFORMACION. ESCRIBA EN LETRA DE MOLDE CON TINTA O ESCRIBA A MAQUINA.)

For Official Use On
PCT ___ Cert. N. ___

| Last Name (Apellido) | First Name (NOT HUSBAND'S) (Nombre de Pila) (NO DEL ESPOSO) | Middle Name (If any) (Segundo Nombre) (si tiene) | |
|---|---|---|---|
| Whisenant | Molly | Thornberry | |

| Sex (Sexo) | Date of Birth (Fecha de Nacimiento) month, day, year (el mes, el dia, el año) | Place of Birth (Lugar de Nacimiento) city or county (ciudad o condado) / state or foreign country (estado o pais extranjero) | County and Address (Condado y direccion |
|---|---|---|---|
| F | 10/18/68 | Tyler, TX / Texas | Harris, Hou |

**Permanent Residence Address:** Street Address and Apartment Number, City, State, and ZIP. If none, describe location
P.O. Box or Rural Rt.) (Dirección de Residencia Permanente: Calle y Número de Departamento, Ciudad, Estado, y Zona Postal; si no tiene, cia. No incluya su caja postal o ruta rural.)

22 Plum Blossom Place The Woodlands Tx 77381

**Mailing Address, City, State and ZIP:** If mail cannot be delivered to your permanent residence address. (Dirección Postal, Ciudad, Estado y Zona Postal) (si es imposible entregar corresponden- cia a su dirección permanente)

Telephone Number (Op (Número de Telefono) (No ob

Precinct Number (If kn (Número de precinto (si la a

The applicant is a citizen of the United States and a resident of this county. Applicant has not been finally convi
is eligible for registration under Section 13.001(a)(4) of the Texas Election Code. I understand that the giving of fal
registration of a voter is a misdemeanor. (El suplicante es ciudadano de los Estados Unidos y es residente de este condado. El sup
linalmente de un crimen, o, si es criminal, esté elegible para registrarse
para votar bajo las condiciones de la Sección 13.001(a)(4) del Código
de Elecciones de Texas. Yo entiendo que es un delito menor der infor-
mación falsa con motivo de confeder el registro de un votante.)

Court of Naturalization, If Applicable
(Corte de Naturalización, Si es Aplicable)   MAY 09

FOR AGENT (PARA AGENTE): Application may be made by agent, who must be a
ted a registration application and must otherwise be eligible to vote and must be the
son or daughter. (La solicitud podrá estar pedida por un agente, que debe s
quererse presentado una solicitud para registrarse para votar, y de otro modo d
debará ser el esposo, esposa, padre, madre, hijo o hija del suplicante.)

Relationship (Parentesco) ___ Husband

X _Chad Whisenant_

**Signature of Applicant or Agent or Printed Name of Appli-cant If Signed by Witness** (Firma del Suplicante o Agente, o Nom- bre del Suplicante En Letra de Molde Si Fue Firmado Por Un Testigo)

FOR WITNESS (PARA TESTIGO:
Signature (Firma)
___ Check here if applicant is unable to make mark. (Marque aqui si el suplicante no puede hacer su marca.)

Printed name (Nombre En Letra de Molde)   RECEIVED MAY 0

* The disclosure of social security number is voluntary. It is solicited by authority of Sec. 13.122 and will be used only to maintain the accuracy of the registration records.
social. Se solicita bajo la autoridad de la Sec. 13.122 y se usará solamente para mantener la exactitud de los archivos.)




# Montgomery County Elections
# Voter Registration Information

**VUID: 1127751040**          **Active**

**Name: JOSEPH THADIS WHISENANT**
**Residence: 4185 TECHNOLOGY FOREST BLVD #160 THE WOODLANDS, TX 77381**
**Mailing: PO BOX 131771 SPRING, TX 77393**

| Precinct | Gender | DOB | Reg Date | EDR Date | Valid Date |
|---|---|---|---|---|---|
| 62 | M | 12/29/1965 | 5/20/2016 | 6/2/1994 | 1/1/2018 |

## Voter History

| ID | Date | Election Name | Party | Precinct |
|---|---|---|---|---|
| PRIMARY.06 | 3/7/2006 | Montgomery County Democratic and Republican Party Primary Election | R | 78 |
| ELE110204 | 11/2/2004 | Montgomery County General Election | G | 78 |
| ELE030904 | 3/9/2004 | Montgomery County Democratic and Republican Party Primary Election | R | 78 |
| ELE091303 | 9/13/2003 | Montgomery County Special Constitutional Amendment Election (+Civil Service) | G | 78 |
| ELE110502 | 11/5/2002 | Montgomery County General Election | G | 78 |
| ELE031202 | 3/12/2002 | Montgomery County  Democratic and Republican Party Primary Election | R | 78 |
| ELE110700 | 11/7/2000 | Montgomery County General Election | G | 50 |
| ELE110398 | 11/3/1998 | Montgomery County General Election | G | 59 |
| ELE110596 | 11/5/1996 | Montgomery County General Election | G | 59 |
| ELE040996 | 4/9/1996 | Montgomery County Democratic and Republican Party Primary Runoff Election | R | 59 |
| ELE031296 | 3/12/1996 | Montgomery County Democratic and Republican Party Primary Election | R | 59 |
| ELE110894 | 11/8/1994 | Montgomery County General Election | X | 59 |

**For Assistance Call**
*Si Necesita Asistencia*
Secretary of State's
*Llame Gratis Al:*
Office Toll Free:
1-800-252-(VOTE) 8683



# BUSINESS-REPLY MAIL
## FIRST CLASS MAIL PERMIT NO. 4511 AUSTIN, TX

POSTAGE WILL BE PAID BY ADDRESSEE

**REGISTRAR OF VOTERS**
**COUNTY COURTHOUSE**
(CITY)                                    (ZIP CODE)
_____Conroe_____, TX _77305-26%0_

# 05 — ONLINE DATA CHANGE

**Date Received:** 04.08.2014      **Trans Date:** 04.09.2014

**2105**

| Last Name | First Name | | Middle Name | Former Name |
|---|---|---|---|---|
| **WHISENANT** | **MOLLY** | | **THORNBERRY** | |

**Residence Address:**
**19 MIRROR RIDGE DR THE WOODLANDS, TX77382**

**Mail Address:**
**19  MIRROR RIDGE THE WOODLANDS, TX 77382**

**TX Driver's License**

**EMAIL ADDRESS**

**VoterStatus**
☐ NEW     ☒ CHANGE     ☐ REPLACE

**Trace ID**
**SOS000000555957**

STRATION APPLICATION

Trans Date: 11.18.2014

PCT 61

EDR: 06.02.1994

210520

| First Name | Middle Name | Former Name |
| --- | --- | --- |
| MOLLY | THORNBERRY | |

R THE WOODLANDS, TX 77382-2507

R THE WOODLANDS, TX 77382

Gender(Optional): ☐ MALE ☒ FEMALE

TX Driver's License or Personal I.D.

Are you interested in serving as an election worker?

[redacted]

ED STATES CITIZEN

VoterStatus ☒ NEW ☐ CHANGE ☐ REPLACE

X [signature] 11/4/2014

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date

# 05 -- ONLINE DATA CHANGE

**2105**

Date Received: 05.20.2016       Trans Date: 05.24.2016

| Last Name | First Name | | Middle Name | Former Name |
|---|---|---|---|---|
| WHISENANT | MOLLY | | THORNBERRY | |

Residence Address:
4185 TECHNOLOGY FOREST BLVD STE #160 THE WOODLANDS, TX77381

Mail Address:
PO BOX 131771 SPRING, TX 77393

TX Driver's License

EMAIL ADDRESS

VoterStatus
☐ NEW    ☒ CHANGE    ☐ REPLACE

Trace ID
SOS000000753129

# A shopping center? Office couch? Here's where Houston council candidates claim they live to meet residency rules

Dylan McGuinness and Mike Morris Oct. 10, 2019 Updated: Oct. 13, 2019 9:33 p.m.
Comments



1of8Nelvin Adriatico is running for the District J seat on Houston's city council. He has faced scrutiny over his residency.Photo: Jill Karnicki, Staff photographer / Houston Chronicle

2of8Cynthia Bailey is testing a state law that forbids felons from running for office. In this photo from 2017, Bailey leads a Hot Team tasked with locating and cleaning illegal dumping sites.Photo: Steve Gonzales, Staff Photographer / Houston Chronicle

3of8J. Brad Batteau is making his sixth consecutive bid for city council. Batteau's felony conviction from 1987, when he was 17, has never stopped him from getting on the ballot, despite a state law that forbids felons from seeking office.Photo: Buster Dean, Staff / Houston Chronicle
4of8Michelle Bonton is running for an at-large council seat. The mayor's office informed her this month she is ineligible for the seat because she lives in a part of Harris County annexed by Houston for limited purposes.Photo: Jerry Baker, Freelance / For the Chronicle

· It was one of the more unusual videos made for a Houston city council race.

Throughout much of his campaign for the District J seat, Nelvin Adriatico had been dogged by one question: Why do you claim to live in a daycare?

Google searches for Adriatico's address yield a photo of the Shining Stars Academy, not a home or residence. Some detractors quickly assumed he was listing the business to skirt the requirement that he actually live in District J.

It is the two-bedroom apartment above the daycare that Adriatico listed on his form. Amid the constant chatter last month, he posted a tour of the apartment on Facebook Live.

"We can just get this out of the way because I'm sick and tired of responding and answering to this," he said in the video. "You're more than welcome to come and visit me at my home."

The debate over Adriatico's residency has been the most public of this year's election cycle, but at least five other candidates are directly flouting the city's residency rule or capitalizing on its loose interpretation. The rule requires candidates to live in the district they hope to represent for 12 months before election day.

At least four others have felony convictions that would seem to bar them from running under a state law that prohibits convicted felons from seeking office.

All ten will appear on the November ballot.

That is because the residency and felony requirements rarely are enforced.

When candidates file for office, city attorneys verify that they have checked the box swearing they have not been convicted of a felony. They also ensure the address candidates list is within the district they hope to represent. Eight candidates were disqualified after those checks, according to the mayor's office.

The lawyers do not, however, investigate further to determine whether candidates are being truthful.

Most of the enforcement is left to the candidates themselves, who can sue opponents with potential residency or criminal issues in an effort to remove them from the ballot. That rarely happens.

Even when it does, both rules contain enough ambiguity to make a court ruling difficult.

Amid evolving discussions about criminal justice, candidates with felony records successfully have reached the ballot in Houston, Austin and San Antonio. The state law that forbids their candidacies invites interpretation and has not been thoroughly tested in court.

The city's residency requirement, while more clear-cut, seems to qualify any candidate who can claim he or she has ties to a property in the district and "intends" to live there, according to attorneys familiar with the rule.

"Every election, someone calls me to ask about this particular issue," said Doug Ray, special assistant attorney for Harris County. "It's very hard to establish that somebody doesn't have residency if they have some physical tie to the address and state that that's their intent."

The questions over the council candidates' residency arise in myriad ways.

**Nelvin Adriatico**, District J

Adriatico provided a lease to the Chronicle that shows he began renting the Beechnut Street apartment in October of last year, fulfilling the 12-month requirement.

Fort Bend County records, however, still show a homestead exemption on a brick house Adriatico and his husband own in Sugar Land. Adriatico said they tried to rescind the exemption last year, but it will not be reflected until next year's tax period.

Adriatico said he splits his time between the two residences, but he actively pursued a residence in District J when he decided to run for office because he has community ties to the area that exceed how long he has lived there.

**Michelle Bonton**, At-Large 5

Bonton lives in an area of Harris County annexed for limited purposes by Houston. That means she can vote in city elections and is represented by District E Councilman Dave Martin.

She cited her eligibility to vote as evidence of her eligibility to run for city office.

The Texas Local Government Code says otherwise: "A resident of an area annexed for limited purposes is not eligible to be a candidate for or to be elected to a municipal office."

After an inquiry from the Chronicle, the city informed Bonton she was "ineligible" to run. Bonton still will appear on the ballot because officials missed the deadline to remove her, but votes for Bonton will not count.

**Jeremy Darby,** District D

Darby, who is a write-in candidate, said he lives at the home his family has owned for decades in South Acres.

Court records show he was evicted from an apartment in neighboring District K in January of 2019, which would suggest he lived outside the district within the required 12-month window.

Darby said he ran business meetings out of the apartment but never actually lived there. He says he has always lived at the South Acres home.

**Anthony Dolcefino,** At-Large Place 4

Dolcefino lives with his parents at a home they bought in Braeswood Place. The family moved there from Katy in February.

To fulfill the requirement for the full year, Dolcefino said he switched his residence last year to his father's Kirby Drive office building.

"We've consulted with election lawyers about the situation…They didn't seem to have a problem," Dolcefino said.

His father, former TV investigative reporter Wayne Dolcefino, acknowledged his son spent much of his early period of residency in Houston at addresses other than the Kirby Drive office he claimed. Still, he said the law allows that location, with an Ashley HomeStore couch, to pass muster.

"It complies with the statute. If anyone wants to make it an issue, 'Bring it on,' I say," the elder Dolcefino said.

**Van Huynh,** District F

Huynh listed his address as a house he rents just off Brays Bayou, but he and his wife have owned a home in Brays Oaks for two decades.

That home — in District K — is where they still claim a homestead exemption, according to property records.

Huynh said he stays in the rental he listed on his filing form two to three nights a week because it is "more convenient" for his work in District F, where he is chief of staff to incumbent Steve Le.

"Sometimes we have a late meeting and everything, I don't have to go to the other place," he said of his primary residence on Wrenthorpe, a 15-minute drive away.

Huynh provided a copy of his lease for the rental within the district, which likely qualifies him under the law. That lease says Huynh has his "main address" at the home outside the district.

The family is in the process of moving to a new home on Turtlewood Court, which is in the district, but they did not purchase that home until July of this year.

**George Harry Zoes,** District A

Zoes lists his address in the shopping center where he owns Ruby's Wig Salon.

He owns a home nearby on Westview Drive that is less than a one-minute drive from the store, but that house is located in the small city of Spring Valley, outside Houston city limits.

Reached by phone, Zoes said he lives in the strip mall on Bingle Road.

"What are you checking on, exactly?" he said. Then he said he was getting a call on another line and agreed to call back later. He did not respond to questions when reached later.

His lawyer, Joe Synoradzki, said Zoes has been forced to live in the shopping center because his Westview home flooded in Hurricane Harvey.

**Felony restriction**

Four other candidates are testing a state law that forbids people with felony convictions from running for office.

The Texas Election Code says that candidates for public office must not have been "finally convicted a felony" from which the person has not been pardoned or otherwise "released from resulting disabilities."

The latter phrase has been subject to interpretation. The secretary of state's office has said completing one's sentence does not qualify as a release from those "resulting disabilities."

"While the right to vote can be restored upon completion of the terms of one's sentence, Texas law does not provide for a similar automatic restoration of an individual's right to hold public office or serve on a jury," wrote Adam Bitter, general counsel in the office of the secretary of state, in a January guidance.

That must be done explicitly by an executive pardon, a writ of habeas corpus invalidating the conviction or through judicial clemency, Bitter wrote.

That law thwarted the candidacy of William Dennis, the former Geto Boys rapper who cited it in his decision not to turn in needed paperwork to get on the November ballot for the District B race. It did not stop others.

**Cynthia Bailey, District B**

Bailey was convicted in 2007 of theft over $200,000 and sentenced to 10 years in jail, though she did not have to serve the full sentence.

Bailey declined an interview, but provided the Chronicle with a statement.

"I am eligible to run to serve the great people of District B, as I have paid my debt to society, my voting rights have been restored and I meet all necessary criteria to run and serve," the statement said.

**Derrick Broze, Mayor**

Broze was convicted in 2008 of possessing between 1 and 4 grams of methamphetamine, a third-degree felony. He had been given deferred adjudication for the original 2005 charge, but he violated parole and was convicted three years later.

The mayoral hopeful has been open about the felony, mentioning it in forums and discussing how difficult it is to find housing with a felony record.

He said he believed he was eligible after finishing his sentence. Broze said he hopes his candidacy and honesty about his past continues the evolution of public opinion on criminal justice reform.

"The reason I'm hopeful about it is because the conversation is shifting in some circles and I'm hoping to contribute to that by running openly as a felon," he said. "I don't think I should have anything to be ashamed about."

**J. Brad Batteau**, At-Large 5

Batteau is a perennial candidate on Houston city council ballots, making his sixth consecutive bid for a council seat this year.

His 1987 conviction for armed robbery, which happened when he was 17, is well-documented from his previous campaigns. Batteau has cast it as a mistake from which he has moved on.

He has said he believes he can run because the felony conviction was set aside in 1995 after eight years on probation.

That interpretation would seemingly conflict with the the one taken by the Secretary of State's office, but no one has ever sought to remove Batteau from the ballot.

**Ralph Garcia**, At-Large 5

Garcia has two felony convictions: one in 1999 for theft and another in 2014 for tampering with a government record.

He served eight months of a ten-month sentence for the latter charge, which involved filing false petition signatures for a judicial candidate to get her on the ballot. He said someone else confessed after his conviction.

"Nobody's told me nothing," he said of the state law forbidding felons from running for office. He said he believes he is eligible because others have run with felony records.

"I don't see why not, unless they changed the rules," he said.

Garcia had a more recent run-in with the law this month. He said he was arrested Tuesday and spent the night in jail, accused of stealing 50 campaign signs from Councilman Robert Gallegos. He is facing a misdemeanor theft charge in that case. He denied responsibility for the missing signs.

*dylan.mcguinness@chron.com*

*mike.morris@chron.com*

# In area MUD elections, handful of voters decide $1 billion in bonds

## 'Rent-a-voter' districts chided while supporters point to progress

Cindy Horswell Nov. 1, 2015 Updated: Nov. 1, 2015 8:36 p.m.
Comments
4

1of4Daniel and Deborah Spiecher's manufactured home houses the only two eligible voters on an 82-acre municipal utility district in Conroe who will decide the fate of $500 million in bond proposals during Tuesday's election.Photo: Jerry Baker, Freelance

2of41713 Southern Oaks Drive in Conroe, an 82-acre site that is going to be turned into 300 single-family homes, is listed as the address for Daniel and Debra Spiecher's trailer. (Photo by Jerry Baker/Freelance)4Photo: Jerry Baker, for the Houston Chronicle

3of41713 Southern Oaks Drive in Conroe, an 82-acre site that is going to be turned into 300 single-family homes, is listed as the address for Daniel and Debra Spiecher's trailer. (Photo by Jerry Baker/Freelance)4Photo: Jerry Baker, for the Houston Chronicle

- A few months ago, a cabinet maker and his wife were recruited to move into a manufactured home parked on a dirt road that was plowed into the woods on the west side of Conroe in Montgomery County.

Daniel and Deborah Spiecher are now the only residents of a newly created municipal utility district, or MUD, carved from 82 acres of land there. They are also the only ones eligible to vote Tuesday on $500 million in proposed bonds to develop that tract.

In fact, they are among just seven voters who will decide the fate this week of $1.07 billion in bonds for roads, water, sewer and recreational facilities in three such districts that were recently formed in this fast-growing county north of Houston. The debt will be repaid with taxes imposed on future residents and businesses. While some believe the MUDs provide a means to bring about high-end development in an orderly way, critics say they are out of control, with developers manipulating the democratic process to essentially take on the roles of cities and borrow hundreds of millions of dollars to make public improvements.

Montgomery County resident Adrian Heath decries the lack of transparency and citizen input into what critics call "rent-a-voter" MUD elections. Heath notes that the billion-dollar MUD proposals make the contentious, countywide election over a $280 million road bond package look like "kid stuff."

Yet an attorney representing one of the developers for the three MUDs refers to these initial seven voters as "urban pioneers."

"They move onto the land and help establish new communities, paving the way for the future homeowners," said Angela Lutz, the attorney for Stoecker Corp., which plans to develop land covered by a separate MUD on Conroe's west side and also north of The Woodlands. She stressed these elections are completely legal, as well as being "typical and ordinary" and the way MUDs have operated for decades.

### Wave of MUDs

Explosive growth has caused a surge in the number of MUDs that have been created this year not only in Montgomery but also in Fort Bend County. These two counties account for the formation of 15 new MUDs apiece, state records show. The remaining six counties in the Houston region have seen fewer or no new MUDs: Harris County with 11 such new districts, Waller with 4; Brazoria with 1 while Galveston, Liberty and Chambers have seen none.

In Montgomery County, three of the new districts holding elections Tuesday include: MUD 148, encompassing the 82 acres where the Spiechers live; MUD 142, which covers 92 acres on Conroe's west side being developed by Stoecker; and Conroe's Municipal Management District No. 1, which is spread over 2,000 acres that was once a Boy Scout camp on Conroe's south side.

On Adrian Heath's website, countycitizen.com - he questions the propriety of such elections. He posts a copy of the city permit issued for the trailer where the Spiechers now call home, showing it was issued in August and labeled a "temporary voting trailer."

# More Information

By the numbers

$1.07 billion: Total in bonds up for a vote Tuesday in three municipal utility districts in Montgomery County.

7: Number of voters who are eligible to vote on those bonds.

Read More

Daniel Spiecher, who is originally from Lufkin, said he was enticed into signing a nine-month lease for the trailer by Stingray Services Inc. because the rent was cheap, only $150 a month. "It's better than an apartment," he said.

Stingray Services did not return phone calls from the Chronicle. However, on its website, the company says that it specializes in "turn-key voter trailer" election services and has completed nearly 100 such trailer installations and elections in the past decade.

Spiecher's trailer sits on a small piece of the 82 acres in MUD 148 that is owned by Friendswood Development Co.

Friendswood spokesman Michael Johnson could not be reached for comment, but the developer has plans to build 300 homes that will sell for about $215,000 and will be intertwined around 18 acres of nature trails.

### 'We just live here'

Meanwhile, the only two people who can vote in Stoecker's MUD 142, Tracey Viehe and Nikolas Mitchell, live in an old house down a long dirt driveway on this property. Both refused comment, with

one saying simply, "We just live here, that's all." Stoecker plans to carve 400 residential lots from the property.

Finally, only three voters are eligible to cast ballots in Conroe's Municipal Management District No. 1. They are Tamara Martinez, Sara Woehle and Michael Wallin, who are living in two houses previously utilized by the Boy Scouts before the land was purchased by Johnson Development Corp., which plans a mixed-use development there.

"Johnson has great plans for this prime property off Interstate 45," said Rafael Martinez, whose wife is one of the voters. "This will become a great new place to shop and live."

Martinez, who previously lived and worked at the camp, has since been hired as a land manager for Johnson. As a permanent resident with a green card, he is ineligible to vote, but his American wife can, as well as two others who recently moved onto the property, he said.

Virgil Yoakum, a spokesman for Johnson Development, could not be reached for comment on efforts to hold an election to pass these bonds.

All but one of the seven voters have listed the same mailing address with the county voter registrar: 20615 Marilyn Lane in Spring. Records show the property at this address has been connected to a mobile home service, Jaylerton Properties LLC, which also has links to Stingray Services, but representatives of the entities could not be reached for comment.

In Tuesday's election, Johnson is asking for approval of $448 million in bonds for its development (and up to a $1.10 tax rate to pay for it); Friendswood is seeking $500 million (and up to a $3.10 tax rate); and Stoecker wants $126 million (and up to a $1.75 tax rate).

While MUDs provide a way for developers to recoup the cost for installing new infrastructure from waterlines to roads, these developers must cover the initial expense themselves and then later are reimbursed, typically over one to five years by taxing those who move into the district, said Andrea Morrow, spokeswoman for the Texas Commission on Environmental Quality, which oversees the districts. "The state has strict regulations on how this is done," she said.

In the past decade, none of the MUDs in the eight-county Houston region has filed for bankruptcy, she said.

Conroe Mayor Webb Melder is excited about the coming elections for the three MUDs that lie within his city limits: "It means a larger tax base, more sales tax and jobs," he said.

Without MUDs, much of Harris County and The Woodlands would not exist today, he said. In order for MUDs to be confirmed in an election as state law requires, developers have to move residents onto their property to vote, Melder said.

"While the method may seem unusual, it has led to hundreds of thousands of high-quality and affordable homes in the Houston area," said Lutz, the attorney for Stoecker.

***Blurred lines***

However, others, such as University of Connecticut School of Law professor Sara Bronin, question the "lack of formal democratic process" in these MUD elections, utilizing a small voter pool that is

"handpicked by the developer."

Bronin, who wrote an article for the Fordham Law Review on Texas' MUDs, notes how MUDs were originally designed only as a vehicle for supplying water to unincorporated areas. Since then, as the number of MUDs has proliferated, their power also has grown, she said.

"The lines are so blurred that you can't tell much difference between a MUD and what a city can do," she said.

MUDs can not only build infrastructure and levy taxes, but some also have the power of eminent domain and can initiate fire and police security.


Yet Melder and others say the overwhelming majority of the 972 MUDs created in the Houston region since 1971 have been a resounding success, providing quality growth to the area.

"Houston and this whole region would not be where we are today without them," he said.

**Cindy Horswell**

<u>AFFIDAVIT</u>

STATE OF TEXAS                          {
                                        {
COUNTY OF MONTGOMERY                     {

     ON THIS DAY personally appeared James Doyle, who under oath deposed and, under penalty of perjury, said:

     "My name is James Doyle.  I am over the age of 18, a reside at 16728 Bending Oaks, Conroe, Montgomery County, Texas 77385, for more than 40 years.  I have never been convicted of a felony or a crime of moral turpitude.  I am competent to make this affidavit and I have personal knowledge as to each assertion herein.

     "I have been an election judge for more than 16 years and an elected Republican Precinct for 16 years.  In the Fall of 2010, after attending a Montgomery County Repuyblican Executive Committee meeting in Conroe, I had a conversation with State Senator Tommy Williams about the May 2010 Woodlands Road Utility District election and the voters registered at the Residence Inn on Six Pines Drive, in the Woodlands, Texas.  Knowing that the District gave tax abatements to the only two people whose votes were allowed to be counted in that election, I asked Senator Williams why this District was gerrymandered for only two voters.  Before answering the question, Senator Williams became very angry, his face turned red.  In a loud voice, he said that he would influence the Attorney General, Greg Abbott, to prosecute the Residence Inn voters to the fullest extent of the law.  When I mentioned to him that my wife and daughter were among those voters he wished to prosecute, he calmed down somewhat.  I believe Senator Williams knew that I was an election judge at the time  and that he understood that I saw no election law violations by the Residence Inn voters.

     "Senator Williams argued that, since this taxing District contains no residential property (ostensibly, only businesses are taxed), no homeowners are taxed.  I reminded him that businesses pass their taxes on through higher prices to the homeowners using their services and buying their products.  At this point, Senator Williams said that there are other ways to deal with a taxing District with only two voters—but he didn't say how.

     "In witness whereof, under penalty of perjury, I affix my hand on this September 23, 2020.

*James Doyle*

James Doyle

Sworn to and subscribed before me, on this 23rd day of September 2020, by James Doyle.

*San Juanita Cavazos*
Notary Public, State of Texas

SAN JUANITA CAVAZOS
Notary Public, State of Texas
Comm. Expires 06-29-2024
Notary ID 2928719

Exhibit 10—

----- Original Message -----
From: Tommy Williams <███████████████████████>
To: James Stilwell; Bruce Tough <btough@toughlawfirm.net>
Cc: Jason Baxter <Jason.Baxter@senate.state.tx.us>; Janet Stieben <Janet.Stieben@senate.state.tx.us>; rjfs-archive-
4ed@raymondjames.com <rjfs-archive-4ed@raymondjames.com>; ███████████████
███████████████████████
Sent: Wed Sep 15 14:34:29 2010
Subject: RE: Township 6/23

James Stillwell & Bruce Tough:

A few moments ago I concluded a conference call with the attorney general's office on the voter fraud in the 23 June
township election.
The appropriate procedure to follow under OAG guidelines is as follows:

1. Submit your complaint to the Secretary of State's Office. Jason Baxter in my Capitol Office can assist you in making
sure this is handed off to the right person. Address your complaint to the Secretary of State, send your complaint to
Jason and he will walk it over and put it in the right person's hands at the SOS office.

2. After reviewing the complaint and making a determination voter fraud may have been committed, the SOS office will
forward the complaint to the OAG for prosecution.

3. If you have any questions please do not hesitate to contact Jason Baxter in my Capitol Office 512-463-0104.

We support the vigorous enforcement of our elections laws. We will monitor the progress of this matter and keep you
informed.

Thank you for bringing this matter to our attention. While I am happy you brought this to my attention I would ask you
to contact me through my Senate office at tommy.williams@senate.state.tx.us on matters of official state business.

Regards,
tommy

-----Original Message-----
From: James Stilwell [mailto:james@msjlawfirm.com]
Sent: Monday, June 28, 2010 12:24 PM
To: Bruce Tough
Subject: RE: Township 6/23

Bruce:
Nine voters using the address "9333 Six Pines Drive" voted in the Township election. These nine voters' registration at
that address was fraudulent
--
that is they swore that they resided at that address (a hotel) in order to get a voter's registration card at that address;
however not one of these nine voters live at that address. None of them properly registered to vote.
If you do not properly register to vote at least 30 days before an election, then you cannot vote in the election. The nine
voters' votes in the Township election were illegitimate. It was morally wrong (based on lies under oath); ethically wrong
(same) and legally wrong (same). You cannot vote where you do not live, and cannot get around that requirement by
register to vote by giving false information. I believe that the Township should not tolerate people casting illegal votes in
the Township election.  My request was for the Township to have an agenda item for discussion about requesting the
District Attorney's office to take action.

Exhibit 11

**Patsy Spaw**

| | |
|---|---|
| **From:** | James Stilwell <James@msjlawfirm.com> |
| **Sent:** | Thursday, October 28, 2010 11:48 AM |
| **To:** | Tommy Williams; Janet Stieben |
| **Cc:** | Jason Baxter; rjfs-archive-4ed@raymondjames.com; |
| **Subject:** | RUD - Beaumont Affirms |
| **Attachments:** | Beaumont Opinion - Affirmed.pdf |

Sen. Williams:
I thought you might be interested in seeing the attached opinion issued today by the Beaumont Court of Appeals, affirming the prior trial victory in the RUD case stemming from the May 8, 2010 election.

James Stilwell
Martin, Stilwell & Jones LLP
1400 Woodloch Forest Drive, Suite 590
The Woodlands, Texas 77380
P: 281-419-6200 | F: 281-419-0250
james@msjlawfirm.com

-----Original Message-----
From: Tommy Williams [mailto:                          ]
Sent: Wednesday, September 15, 2010 3:14 PM
To: James Stilwell
Cc: Jason Baxter; rjfs-archive-4ed@raymondjames.com;
Subject: RE: Township 6/23

Jason:

Why don't you get a messenger to deliver this stuff directly to the attorney Stillwell spoke to.

-----Original Message-----
From: James Stilwell [mailto:james@msjlawfirm.com]
Sent: Wednesday, September 15, 2010 2:50 PM
To:                              otough@toughlawfirm.net; tommy.williams@senate.state.tx.us
Cc: Jason.Baxter@senate.state.tx.us; Janet.Stieben@senate.state.tx.us; rjfs-archive-4ed@raymondjames.com;

Subject: Re: Township 6/23

Sen. Williams:
I spoke directly with the General Counsel at SOS (Rep. Eissler spoke to him and gave me his direct line) and gave him some verbal background. He gave me suggestions on the package and asked me to send it to the head of the Elections division CC'd to him, and stated that if the docs back the oral description I gave him, he would move it to the OAG, like you describe. I also cc'd you and Rep. Eissler with the package (I will double check which address I sent it to -- I am hoping your office has already received it). I will be happy to get another package together for Jason Baxter so that he can directly take it to whomever you believe is appropriate.
Many thanks for all of your help, and I will be in touch with Jason shortly.
James H. Stilwell

1

**Patsy Spaw**

| | |
|---|---|
| **From:** | James Stilwell <James@msjlawfirm.com> |
| **Sent:** | Monday, December 27, 2010 8:52 AM |
| **To:** | Jason Baxter; Janet Stieben |
| **Subject:** | Woodlands RUD: SOS referral to AG |
| **Attachments:** | Ltr f Ann McGeehan @State of TX - to Clete Buckaloo @ Atty Gen - re criminal conduct - 12 20 10.pdf |

Janet and Jason:
I separately sent this onward to Sen. Williams, but wanted to send it to you as well.  This is the letter from the SOS referring the RUD criminal investigation to the AG's office.
Let me know if you have any questions,

James Stilwell
Martin, Stilwell & Jones LLP
1400 Woodloch Forest Drive, Suite 590
The Woodlands, Texas  77380
P: 281-419-6200 | F: 281-419-0250
james@msjlawfirm.com

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

Hope Andrade
Secretary of State

December 20, 2010

Mr. Clete Buckaloo
Director of Law Enforcement
Office of the Attorney General
209 W. 14th Street
Austin, Texas 78701

Dear Mr. Buckaloo:

I respectfully request your assistance in reviewing an allegation of criminal conduct in connection with an election conducted in the Woodlands Road Utility District, Number 1 of Montgomery County (the "District"), pursuant to Section 31.006 of the Texas Election Code (the "Code"). Tex. Elec. Code Ann. § 31.006 (Vernon 2010).

Enclosed is correspondence sent to our office which contains a complaint from Mr. James Stilwell, attorney for three candidates in an election contest challenging the result of the District's May 8, 2010 general election, regarding possible criminal violations in that election. The complainant has provided a written statement, copies of court documents and transcripts, and other materials concerning his allegation that certain persons described in the documents swore to false residence addresses on their voter registration applications and subsequently voted illegally in the District's election in violation of the procedures in the Code.

In addition to Mr. Stillwell's complaint, we have included a referral on this matter from the Montgomery County District Attorney's office. The District Attorney's materials largely duplicate the information included in Mr. Stillwell's complaint, but also include copies of correspondence between the District and the Montgomery County Elections Administrator concerning the voter registration of the alleged illegal voters, affidavits from the hotel to which the voters transferred their registration prior to the District's election, and copies of e-mail correspondence between Mr. Adrian Heath, one of the alleged illegal voters, and the Secretary of State's office prior to the election.

In response, Mr. Heath submitted a letter to our office asserting that the District ignored and disenfranchised eligible voters, in part by failing to take affirmative action to determine the voters' presence within the District's boundaries and inform them of their right to participate in District elections.

The attached file reflects possible criminal violations of the Code, including:

Pursuant to § 13.007 (False Statement on Application), it is a Class B misdemeanor if a person knowingly makes a false statement on a voter registration application.

Mr. Clete Buckaloo
Page 2

Pursuant to § 64.012(a)(1) (Illegal Voting), it is a third degree felony to vote in an election in which the person knows the person is not eligible to vote.

As you know, our office does not have investigatory authority to resolve fact issues.  However, the enclosed documents reflect possible violations such that we are forwarding to your office for your review, and for possible investigation to further establish the facts.

For more information regarding this matter, you may contact Mr. Stilwell directly as follows:

> Mr. James Stilwell
> Attorney at Law
> Martin, Stilwell & Jones, LLP
> 1400 Woodloch Forest Drive, Suite 590
> The Woodlands, Texas 77380
> 281-419-6200
>
> Mr. Phil Grant
> First Assistant District Attorney
> 9th Judicial District
> 207 West Phillips, 2nd Floor
> Conroe, Texas 77301
> 936-539-7800
> phil.grant@mctx.org
>
> Mr. Adrian Heath
> 43 W. Stony Bridge Ct.
> The Woodlands, Texas 77381
> 281-651-2920
> adrianheath@yahoo.com

If you have any questions or need assistance from our office, please feel free to contact Staff Attorney, Paul Miles at 512-463-5650.

Sincerely,

Ann McGeehan
Director of Elections

AM:PM:id

c:  ✓Mr. James Stilwell
    Mr. Phil Grant
    Mr. Adrian Heath

Enclosures

CAUSE NO. 12-03-02580-CR

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 359th JUDICIAL |
| VS. | § | BY |
| | § | DISTRICT COURT OF |
| ADRIAN DAVID HEATH | § | MONTGOMERY COUNTY, TEXAS |

### STATE'S MOTION TO QUASH SUBPOENA DUCES TECUM

The State of Texas, by and through her Assistant Attorney General, files this Motion to Quash Subpoena Duces Tecum of Jordan Hale of the Texas Attorney General's Office (OAG). Defendant has failed to make the requisite showing that Ms. Hale's testimony is both material and favorable to the defense. In addition, the subpoena fails to specify the documents sought with reasonable accuracy or specificity, and is overbroad to the point of being impossible to be complied with. Finally, the subpoena requires Ms. Hale to deliver documents protected by attorney work product doctrine, attorney-client privilege, or other law. For these reasons, the State of Texas respectfully asks this Court to quash the subpoena.

### INTRODUCTION

On Friday, October 11, 2013, Texas Office of the Attorney General Public Information Coordinator Jordan Hale was served with the Subpoena Duces Tecum attached as *Exhibit A*. The Subpoena Duces Tecum requires that Ms. Hale appear at trial and testify on behalf of Defendant Adrian David Heath and bring with her all written correspondence between any representative of the OAG and five listed individuals – State Senator Tommy Williams, attorney Michael G. Page, attorney James Stilwell, Montgomery County First Assistant District Attorney Phil Grant, and Montgomery County District Attorney Brett Ligon – over a time period of more than three years.



Exhibit 12

## ARGUMENT

Defendant's Subpoena Duces Tecum to Jordan Hale should be quashed for three reasons. First, defendant has failed to establish that Ms. Hale's testimony would be both material and favorable to the defense. *Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998) (citations omitted). Second, Defendant's request is overbroad and seeks voluminous documents which he has failed to show are material or relevant. *Ex Parte Gould*, 60 Tex. Crim. 442, 449 (Tex. Crim. App. 1910). Third, Defendant is using a subpoena duces tecum to improperly seek attorney work product and attorney-client privileged communications from the State. Because Defendant has failed to make the requisite showings, and seeks to improperly obtain privileged communications, the subpoena should be quashed.

**1. Defendant Has Made No Showing that Ms. Hale's Testimony Will Be Material and/or Favorable to the Defense as Required Under *Coleman v. State*.**

The United States and Texas Constitutions contain provisions which allow criminal defendants to compel testimony from witnesses. U.S. CONST. AMEND VI; TEX. CONST. ART. 1, § 10. However, this right is not absolute:

> [T]he Sixth Amendment does not guarantee, however, the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense. To exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense.

*Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866-67 (1982); *Ex parte Scarbrough*, 604 S.W.2d 170, 173-174 (Tex. Crim. App. 1980); *Perez v. State*, 590 S.W.2d 474, 479

(Tex. Crim. App. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2157, 64 L.Ed.2d 790 (1980); *Spencer v. State*, 503 S.W.2d 557, 560-561 (Tex. Crim. App. 1974); *Jones v. State*, 501 S.W.2d 677, 679 (Tex. Crim. App. 1973); *Hardin v. State*, 471 S.W.2d 60, 62-63 (Tex. Crim. App. 1971); accord, *United States v. Mejia-Uribe*, 75 F.3d 395, 399-400 (8th Cir.), *cert. denied*, 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 97 (1996); 22A C.J.S. *Criminal Law § 473* (1989)).

Here, Defendant has failed to substantiate, by sworn evidence, agreed facts, or otherwise, that Ms. Hale's testimony and/or requested documents are material and beneficial to the defense. Defendant's application for subpoena fails, on its face, to satisfy the requirements set forth by the Texas Court of Criminal Appeals in *Coleman v. State*; therefore, the subpoena should be quashed.

### 2. The Subpoena Is Overbroad, Fails to Identify Documents It Seeks with the Required Specificity, and Cannot Be Complied With.

A subpoena duces tecum must specify the documents or evidence sought with reasonable accuracy, either by specifying the date, title, substance, or subject to which the evidence or documents relate. *Ex Parte Gould*, 60 Tex. Crim. 442, 449 (Tex. Crim. App. 1910). In addition, the party issuing the subpoena must show the court that the documents are material evidence in the case. *Id.*

The Subpoena Duces Tecum served on Ms. Hale fails on both counts. The Subpoena Duces Tecum directs Ms. Hale to bring all emails and/or letters received, sent, or exchanged between any representative of Attorney General Greg Abbott and any of five individuals: 1) State Senator Tommy Williams, 2) Woodlands Road Utility District (WRUD) attorney Michael G. Page, 3) attorney James Stilwell, who fought defendant and his illegal voting co-conspirators in the 2010 WRUD civil election contest, 4) Montgomery County First Assistant District Attorney Phil Grant, and 5) Montgomery County District Attorney Brett Ligon.

The application for subpoena fails to specify any documents with reasonable accuracy, failing to identify any element in *Gould*: date, title, substance, or subject matter. Further, the application for subpoena makes no showing whatsoever that the voluminous documents sought by the defense are material to the case, and is, in fact, so broad that it creates a correct presumption that the voluminous requested documents are indeed not relevant. The subpoena is wholly indiscriminate as to documents that might be related to the instant case, and those that are unrelated. The subpoena fails on its face to make the requisite showings of specificity and relevance, and must be quashed.

The Office of the Attorney General, with its various responsibilities and legal divisions, and receives an enormous volume of routine communications from members of the state legislature, special utility districts, and district and county attorneys. In this case, defendant has requested a group of documents so large as to be impracticable to comply with the subpoena for trial. Moreover, the vast majority of these documents could have no relevance whatsoever to this trial. Just one example of irrelevant document responsive to this subpoena would include the referral of a criminal investigation involving child pornography, which in addition to being irrelevant, non-material, and non-favorable to the defendant, would be impermissible for Ms. Hale to release under Texas law.

On multiple occasions the Texas Supreme Court has prohibited discovery that it has characterized as constituting a fishing expedition. *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996, per curiam); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492; *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995, per curiam). The Texas Supreme Court also requires that requests to produce be tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998, per curiam).

Defendant's subpoena is very clearly a fishing expedition, and no attempt has been made whatsoever to tailor the request to include only matters relevant to the

case. In fact, there is a total dearth of indicia that any relevant documents exist at all. Because defendant fails to make requisite showings of specificity and relevance, and broadly requests irrelevant documents so voluminous as to be impracticable for Ms. Hale to comply with the subpoena duces tecum, it must be quashed.

### 3. The Subpoena Seeks Attorney Work Product and Material Protected by Attorney-Client Privilege.

The work product exemption protects documents prepared by attorneys or their agents that contain the attorney's mental processes, conclusions, or legal theories in anticipation of litigation. *See Humphreys v. Caldwell*, 888 S.W.2d 469, 471 (Tex. 1994); *National Tank Co. v. Brotherton*, 851 S.W.2d 191, 200 (Tex. 1993, writ den'd w/o prej.) Attorney-client privilege protects communications to or from an attorney seeking advice on a legal matter or issue pertaining to an active case. *See* Tex. R. Evid. 503.

Here, the overly broad scope of defendant's request would include any communications, written for the purpose of preparing for this case for trial, between the prosecution and two attorneys (Page and Stilwell) who have represented either the WRUD or its directors and possess material knowledge of defendant's illegal voting scheme to take over the WRUD in May 2010. Such communications between the prosecuting agency and these attorneys, to the extent that they exist, are privileged, and an attempt to obtain attorney work product or attorney-client privileged information through a back channel by a subpoena duces tecum of the prosecuting agency's Public Information Coordinator is improper and must be denied.

In addition to its prosecutorial role in this case and its many other roles, the OAG has the duty of serving as counsel to State officials and individuals serving in law enforcement, regarding matters arising out of their official duties. Defendant's subpoena would also include any communications made between any of the public

servants listed in the subpoena and the OAG in the course of an attorney-client relationship. Because the subpoena seeks privileged communications, it is improper and should be quashed.

## CONCLUSION

While criminal defendants have broad rights to require witnesses to attend trial to testify and to bring documents and evidence with them, those rights are not unlimited. Defendants must show that the evidence sought is material and beneficial to the defense. *Coleman v. State*, 966 S.W.2d at 527-28. A subpoena may not be used merely as a fishing expedition. *K Mart Corp. v. Sanderson*, 937 S.W.2d at 431; *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d at 492; *Texaco, Inc. v. Sanderson*, 898 S.W.2d at 815. Rather, defendants seeking documents or evidence must describe the documents or evidence sought with reasonable accuracy. *Ex Parte Gould*, 60 Tex. Crim. at 449. The subpoena must not be so overbroad so as to include irrelevant information. *In re Am. Optical Corp.*, 988 S.W.2d at 713. And the subpoena cannot compel the witness to disclose documents protected by work product doctrine or attorney-client privilege. *See Humphreys v. Caldwell*, 888 S.W.2d at 471; *National Tank Co. v. Brotherton*, 851 S.W.2d at 200; TEX. R. EVID. 503. The subpoena served on Ms. Hale violates each requirement and principle. The State therefore respectfully asks the Court to quash the subpoena.

Respectfully submitted,

Jonathan White
Assistant Attorney General
P. O. Box 12548
Austin, Texas 78711-2548
(512) 475-2547
(512) 370-9723 (fax)
State Bar No. 24054475

## CERTIFICATE OF SERVICE

I, Jonathan White, certify that on October 16, 2013, a true and correct copy of the above document was forwarded to counsel for the Defendant via CMRRR, facsimile transmission, electronic transmission, overnight mail, or hand delivery:

Jay Wright
Law Office of Jay M. Wright
322 North Main St.
Conroe, TX 77301
(936) 494-2462
(936) 494-1976 (fax)
Attorney for Adrian Heath

Jonathan White

# SUBPOENA DUCES TECUM

**THE STATE OF TEXAS    VS. ADRIAN DAVID HEATH**
Cause No. 12-03-02580-CR

TO ANY PEACE OFFICER OF THE STATE OF TEXAS, OR ANY PERSON AT LEAST 18 YEARS OLD AND NOT A PARTICIPANT IN THE PROCEEDINGS - GREETING:

YOU ARE HEREBY COMMANDED TO SUMMON

JORDAN HALE,   ASSISTANT ATTORNEY GENERAL,   CUSTODIAN OF RECORDS, PUBLIC INFORMATION COORDINATOR

TEXAS ATTORNEY GENERAL'S   OFFICE,   P.O.   BOX 12548,   AUSTIN, TEXAS 78711

to be  and personally appear  at 9:00 A.M. on the  28th  day of OCTOBER, 2013 before  the  Honorable 359TH Judicial District Court of  Montgomery  County,  Texas  to  be held  within and  for said County at the Court House thereof, in Conroe, Texas  then and there to testify and the truth to speak on behalf of the Defendant in the above and numbered cause, now pending in said Court, and  there to to remain from day  to  day, and  from  term to term until discharged  from the Court.

Said above named witness  is further commanded to produce at said time  and place above  set  forth  the  following books,  papers, documents or other tangible things to-wit:

*****SEE ATTACHED APPLICATION FOR SUBPOENA*****

Please Contact JAY M. WRIGHT at  936-494-2462  upon request for further instructions.

HEREIN FAIL  NOT, but of  this  Writ make  due  return, showing how you have executed the same.

WITNESS my  official signature, at Conroe, Texas on the 4th day of OCTOBER, 2013.

Barbara Gladden Adamick, District Clerk
Montgomery County, Texas

By _Velma Hugice_
   Deputy

EXHIBIT
A

**OFFICER'S RETURN**
**Cause No. 12-03-02660-CR**

Came to hand the ___ day of _____A.D. 20 _, at _____ o'clock__.M.
and executed on the _____ day of _____A.D. 20___
by delivering to the within named _____
at _____ in _____ County, Texas in
person, a true copy of this subpoena or not executed as to the witness
_____ for the following reason _____
_____

_____ Sheriff/Constable
_____ County, Texas
By_____ Deputy.



NO. 12-03-02580-CR        2013 OCT -2 AM 10: 37

|  |  |  |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| vs. | § | 359TH JUDICIAL DISTRICT |
| ADRIAN HEATH | § | MONTGOMERY COUNTY, TEXAS |

## APPLICATION FOR SUBPOENA

TO THE CLERK OF SAID COURT:

Now comes Adrian Heath, defendant in the above entitled and numbered cause, by and through undersigned counsel, and respectfully makes Application to the clerk of the Court for the issuance of a subpoena for each of the following witnesses designated below, pursuant to Article 24.03 of the Texas Code of Criminal Procedure. In support of this Application, Defendant shows the following:

I.

The name, location and vocation, where known, of each witness desired is as follows:

1. - Jordan Hale, Assistant Attorney General, Custodian of Records, Public Information Coordinator, Texas Attorney General's Office, P.O. Box 12548, Austin, Texas 78711; 512-463-2100.

II.

The testimony of each witness is material to the defense.

III.

The trial is presently set in the 359TH Judicial District

1

SCANNED

Court, Montgomery County, Texas on October 28, 2013 at 9:00 A.M.
The requested subpoenas should summon the named witnesses to
appear at that time and place.

IV.

Defendant further requests that each witness be directed to
diligently and carefully search, examine and bring with witness
and produce in Court the following items which are material to the
defense:

1.  All emails and/or letters received, sent or exchanged between
Attorney General Greg Abbott or any representative of Greg Abbott
and State Senator Tommy Williams or any agent of Tommy William's
Office between the dates of April 1, 2010 and September 1, 2013.

2.  All emails and/or letters received, sent and/or exchanged
between Attorney General Greg Abbott or any representative of Greg
Abbott and Michael G. Page, attorney at Schwartz, Page and Harding
law firm, between the dates of April 1, 2010 and September 1,
2013.

3.  All emails and/or letters received, sent and/or exchanged
between Attorney General Greg Abbott or any representative of Greg
Abbott and James Stilwell, attorney at Martin Stilwell and Jones
law firm, between the dates of April 1, 2010 and September 1,
2013.

4.  All emails and/or letters received, sent and/or exchanged

2

between Attorney General Greg Abbott or any representative of Greg
Abbott and Phil Grant, First Assistant District Attorney for
Montgomery County, Texas, between the dates of April 1, 2010 and
September 1, 2013.

5.   All emails and/or letters received, sent and/or exchanged
between Attorney General Greg Abbott or any representative of Greg
Abbott and Bret Ligon, Montgomery County District Attorney,
between the dates of April 1, 2010 and September 1, 2013.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that the
Clerk of this Court issue the subpoenas requested in this
Application and direct that the same be served by the proper
officer of this Court.

Respectfully submitted,

Jay M. Wright
204 West Davis Street
Conroe, Texas 77301
Telephone: 936-494-2462
Telecopier: 936-494-1976

BY: _____
Jay M. Wright
STATE BAR NO.: 22041800
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing
Application for Subpoena was mailed by certified mail to the
District Attorney's Office, at 207 West Phillips, Second Floor,

3

Conroe, Texas 77301, on _October 1_, 2013.

_____
Jay M. Wright

STATE OF TEXAS                    §
                                  §
COUNTY OF MONTGOMERY              §

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared Jay M. Wright, who after being duly sworn stated:

"I am the attorney for the Defendant in the above numbered and entitled cause. I have read the foregoing Application for Subpoena and swear that all of the allegations of fact contained therein are true and correct."

_____
Jay M. Wright
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME on _October 1_, 2013, to certify which witness my hand and seal of office.



_____
Notary Public, State of Texas

4

CAUSE NO. 12-03-02560-CR

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 359th JUDICIAL |
| VS. | § | |
| | § | DISTRICT COURT OF |
| ADRIAN DAVID HEATH | § | MONTGOMERY COUNTY, TEXAS |

## PROPOSED ORDER GRANTING STATE'S MOTION TO QUASH SUBPOENA DUCES TECUM

The Court, having considered the State's Motion to Quash Subpoena Duces Tecum, hereby finds the State's Motion meritorious, and hereby GRANTS the Motion.

IT IS THEREFORE ORDERED that Defendant's Subpoena Duces Tecum to Jordan Hale is hereby quashed.

Signed this the _____ day of _____, 2013.

_____
Honorable John Stevens
Presiding Judge

REPORTER'S RECORD
CASE NO. 14-14-00532-CR
TRIAL CAUSE NO. 12-03-12580-CR
VOLUME 3 OF 12 VOLUMES

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
10/22/2014 9:50:39 PM
CHRISTOPHER A. PRINE
Clerk

| | |
|---|---|
| THE STATE OF TEXAS | ) IN THE DISTRICT COURT |
| | ) |
| | ) |
| VS. | ) MONTGOMERY COUNTY, TEXAS |
| | ) |
| ADRIAN DAVID HEATH | ) 359TH JUDICIAL DISTRICT |
| | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PRETRIAL HEARING
OCTOBER 28, 2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On October 28th, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable John Stevens, Judge Presiding, 359th District Court, held in Conroe, Montgomery County, Texas.

Proceedings reported by machine shorthand and computer-aided transcription.

Exhibit 13

1    witnesses in this case who are material witnesses in the case

2    and have been designated so by the State.  And I understand and

3    I anticipate they're going to invoke that some of it might be

4    privileged attorney/client or whatever.  But under that rule

5    there is requirement that those documents be produced in camera

6    for the Court to inspect those documents and see if there is

7    anything that is material and relevant to the Defense in this

8    case.  And, particularly, if there is anything exculpatory that

9    has to be disclosed to the Defendant in a timely fashion.  And,

10   so, I would tender Exhibit Number 2, which I believe is

11   probably already in the court file, the State's superseding

12   witness list and ask that it be admitted for the purposes of

13   this motion.

14                 MR. WHITE:  No objection.

15                 THE COURT:  Admitted.

16                 (MOTION EXHIBIT NO. 2 OFFERED AND ADMITTED.)

17                 THE COURT:  Anything else?

18                 MR. WHITE:  That's all I have of the motion.

19                 THE COURT:  Anything else from the State.

20                 MR. WHITE:  Your Honor, I don't believe that the

21   concerns about the overbroad nature of the request were

22   addressed or the fact that the scope is so broad.

23                 THE COURT:  Anything else you want to add?

24                 MR. WHITE:  No, Your Honor.

25                 THE COURT:  Motion to Quash is denied.  The

```
 1   Court is going to -- I'm sorry, the Motion to Quash is granted.
 2   And that's the State's Motion to Quash.  The Court finds that
 3   what is compelling based upon the information that I have in
 4   the arguments it does seem in all due respect that it is
 5   fishing.  I mean, there is nothing articulated to this Court
 6   that supports a finding that this testimony and information
 7   that this witness may be able to provide is described with
 8   sufficient articulated detail to show it's accuracy, it's
 9   relevance.  It does seem overbroad at this time.  And, again,
10   seems to be fishing, simply because there is some folks who are
11   on a witness list and there is a motion to produce under an
12   open records act doesn't mean that that's relevant in this
13   case.  And it may be; we'll see.  And you can raise this later.
14   But at this time what the Court has before it, the Court is
15   satisfied that this State's Motion to Quash this subpoena duces
16   tecum should be granted under the State of the record as it
17   exists now.
18                   Anything else?
19                   MR. WHITE:  Nothing from the State.
20                   THE COURT:  If not what we're going to do then
21   is bring to jury panel in, seat them, get that information.
22   They will provide information and here's what I would like to
23   do is I don't need to talk to them first, do I?  Well, I can go
24   overall this information later on qualifications and all.  But
25   I would like to do is get the information, then get copies and
```

1



REPORTER'S RECORD
CASE NO. 14-14-00532-CR
TRIAL CAUSE NO. 12-03-12580-CR
VOLUME 6 OF 12 VOLUMES

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

10/22/2014 9:50:29 PM
CHRISTOPHER A PRINE
Clerk

THE STATE OF TEXAS      )   IN THE DISTRICT COURT

                         )

                         )

VS.                 )   MONTGOMERY COUNTY, TEXAS

                         )

                         )

ADRIAN DAVID HEATH      )   359TH JUDICIAL DISTRICT

                         )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JURY TRIAL
OCTOBER 29, 2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On October 29th, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable John Stevens, Judge Presiding, 359th District Court, held in Conroe, Montgomery County, Texas.

Proceedings reported by machine shorthand and computer-aided transcription.

Exhibit 14

KAREN D. DESHETLER, CSR
281-723-9090

1          MR. WRIGHT:  Well, this is my last -- this my

2   last thing.

3          MR. GLICKLER:  I can assure you of one thing,

4   she has no knowledge of that.

5          MR. WRIGHT:  Well, she may not.

6          (End of bench conference.)

7          MR. WRIGHT:  Pending any Motion in Limine

8   matters, I have no further questions of this witness.

9          THE COURT:  Anything further from the State?

10          MR. WHITE:  Just a question or two.

11                 REDIRECT EXAMINATION

12   BY MR. WHITE:

13     Q.   Sergeant Bowlin, this homestead exemption that you

14   got on the Laukiens, did you actually go to the central

15   appraisal district and grab that this afternoon?

16     A.   Not yet, no.

17     Q.   Is this something that anyone can get?

18     A.   Yes, sir.

19     Q.   Okay.  This could have been gotten at any time

20   between when it was entered March 11, 2010, and today, the 29th

21   of October, 2013?

22     A.   Yes, I believe so.

23          MR. WHITE:  No further questions.

24          MR. WRIGHT:  No other matters other than what I

25   have outside the presence of the jury.

1          THE COURT:  Okay.  Then ladies and gentlemen, we

2     are going to release you for the evening and please return back

3     at 9:00 -- 9:00 o'clock.  Thank you very much.  Please remember

4     the instructions and have a nice evening.  Everyone allow the

5     jury to exit.  Thank you.

6               (At this time the jury is in recess.)

7          THE COURT:  Be seated.  All right.  The defense

8     wanted to ask some questions outside the presence.  I've asked

9     that this be done -- or directed it be done outside the

10    presence of the jury so the Court can make a ruling and you can

11    proffer what it is you would like to ask of the witness and see

12    what her answer is.

13              MR. WRIGHT:  If I may approach the witness?

14              THE COURT:  All right.

15                    RECROSS EXAMINATION

16    BY MR. WRIGHT:

17       Q.   Sergeant, I'm going to show you a copy, I guess, of

18    an e-mail.  Have you ever seen that e-mail?  Was that ever

19    received by you from Senator Tommy Williams' office?

20       A.   I can tell you, I've never received any e-mails from

21    Tommy Williams' office.

22       Q.   Has this been forwarded to you?

23       A.   I don't believe that I've ever -- I think I might

24    have seen a copy of this.  I do not know if I was forwarded via

25    e-mail, if that's your question.

1   Q.   Okay.  And basically what it states is Senator Tommy

2  Williams is saying collect up the information and I'll get it

3  to the Secretary of State and then Jason Baxter assists you in

4  making sure that gets taken over to the attorney general's

5  office?

6   A.   I can't swear that I haven't seen this.  But I

7  don't -- I'm not recalling this specifically, if that's what

8  your question is.

9   Q.   Well, the reason I'm showing this to you is you were

10  asked -- one of the first questions you were asked is how did

11  this case come to you.  Do you remember being asked that?

12   A.   Yes, sir.

13   Q.   Okay.  And isn't it true that this case came to you

14  because Senator Williams had Jason Baxter in his office collect

15  the information from Mr. Stillwell and then take it to the

16  Secretary of State so it can be taken to the OAG for

17  prosecution?

18   A.   Not that I'm aware of.  I believe it came through --

19  that Mr. Stillwell filed a complaint with the Secretary of

20  State and that's the information that was forwarded to our

21  office.

22   Q.   You have identified that you think this e-mail was

23  somewhere in the paperwork?

24   A.   It may have.  There was a lot of paperwork.  I don't

25  know if it was or it wasn't.

1       MR. WRIGHT:  Thank you.  I'll pass the witness.

2                  REDIRECT EXAMINATION

3  BY MR. WHITE:

4      Q.   Sergeant Bowlin, I might be able to refresh your

5  memory on that, I'm not sure.  Were you researching on the

6  Internet documents that were posted by the Defendant, Adrian

7  Heath, over the last week, week and a half?

8      A.   Yes.

9      Q.   And on a website called Scribd.com, did you notice

10 somewhere in the neighborhood of 30 or 40 documents posted by

11 Mr. Heath?

12     A.   I don't remember the exact website.  If you're

13 referring to the one that had a lot of scanned PDFs in it,

14 then, yes, I recall that website.

15     Q.   Is it possible that you saw the document on that

16 website?

17     A.   That's entirely possible.  I've seen lots of

18 documents throughout the duration of this case.  I couldn't

19 specify that -- when specifically I've seen that one, if I've

20 seen it before.

21     Q.   Have you had any communication with anyone from

22 anyone from any legislator's office about this case?

23     A.   No, sir.

24     Q.   Have you had any communication with any outside

25 agencies about this case?

1    A.   No, I don't -- I don't believe so.

2    Q.   Particularly in regard to pursuing this case?

3    A.   No, sir.

4    Q.   Have you received any directive whatsoever to pursue

5  this case more than you would a normal case?

6    A.   No.

7              MR. WHITE:  Pass the witness.

8              THE COURT:  Anything else?

9              MR. WRIGHT:  No further questions.

10             THE COURT:  All right.  You've got an objection?

11 You're still asserting as to this, because this defense -- I

12 guess you still want to explore this area?

13             MR. WRIGHT:  Yes, Your Honor.  I wanted to go

14 into the fact that Senator Williams actually did urge in the

15 prosecution of this case and that's how she came to get this

16 case to start working.  How did the case come to you?

17             THE COURT:  All right.

18             MR. WRIGHT:  That's how it did.

19             THE COURT:  And what do you say for the State,

20 Mr. White?

21             MR. WHITE:  In terms of this particular

22 evidence, Your Honor, it's a hearsay document.  The witness has

23 no personal knowledge of this document or of any of the

24 surrounding facts.  And on the bigger picture, this is a

25 selective prosecution or malicious prosecution argument which

1  is not an argument for the jury. It's not evidence that the

2  jury should ever hear. It's not appropriate for them. It's

3  only appropriate for the Court to hear and make a decision

4  based on whatever showing the Defense has managed to put on.

5  And if that prima facia showing is made, then we can respond

6  and respond to the issue.

7          THE COURT: All right. It's my understanding

8  that the Defense wished to explore this area because of the

9  issue and the question that had been asked of the witness by

10  the State, how did the case come to you, and then her answer.

11  And this was an area that the Defense wanted to explore based

12  upon the State opening that door of that issue.

13          And what the Court finds after listening to this

14  is that the witness -- the Court finds this issue, according to

15  the record that we have on this witness now, the state of the

16  record is the case did not come to her based upon that item

17  that the Defense wishes to look into. And if it did, the Court

18  will find that it is not relevant. And even if relevant, it is

19  excluded because it's probative value is substantially

20  outweighed by the danger of unfair prejudice, certainly

21  confusion of the issues and other basis under the Texas Rules

22  of Evidence under Rule 403.

23          So your objection by the State is sustained.

24  Your proffer is noted in the record, and the Court disallows

25  that fishing expedition into that area, because that's all it

1   would be, based upon the state of the record.

2                  May this lady be excused?

3                  MR. WHITE:  Yes, Your Honor.

4                  THE COURT:  All right, ma'am.  You are excused.

5   Thank you.

6                  (Proceedings adjourned for the evening.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S RECORD
CASE NO. 14-14-00532-CR
TRIAL CAUSE NO. 12-03-12580-CR
VOLUME 7 OF 12 VOLUMES

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
10/22/2014 9:50:29 PM
CHRISTOPHER A. PRINE
Clerk

THE STATE OF TEXAS          )   IN THE DISTRICT COURT
                           )
                           )
                           )
VS.                        )   MONTGOMERY COUNTY, TEXAS
                           )
                           )
ADRIAN DAVID HEATH         )   359TH JUDICIAL DISTRICT
                           )

************************************************

JURY TRIAL
OCTOBER 30, 2013

************************************************

       On October 30th, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable John Stevens, Judge Presiding, 359th District Court, held in Conroe, Montgomery County, Texas.

       Proceedings reported by machine shorthand and computer-aided transcription.

KAREN D. DESHETLER, CSR
281-723-9090

Exhibit 15

1  impression that what he was planning to do was okay?

2      A.   No.  I tried to -- as much as I could within the

3  bounds of what I believe the duties of the district attorney's

4  office are, in my limitations, I tried to caution him against

5  the course of action it appeared he was about to take.

6      Q.   In your experience with dealing with Mr. Heath, does

7  he have a selective hearing problem?

8      A.   Sometimes, yes, sir.

9      Q.   Are you familiar with the legal term "deliberate

10 ignorance"?  Have you heard that before?

11     A.   Yes, sir.

12     Q.   And thinking back to when you heard that, does that

13 term have -- do you know what the meaning of that term is,

14 "deliberate ignorance"?

15     A.   Yes.  Yes, I do believe it applies somewhat in

16 Mr. Heath's case.

17               MR. WHITE:  I'll pass the witness.

18                    REDIRECT EXAMINATION

19 BY MR. WRIGHT:

20     Q.   Well, you were asked at one point about prosecuting

21 these people, isn't that true?

22     A.   Yes.

23     Q.   And what did you say about the residency rule?

24     A.   I said that the Secretary of State has issued some

25 vague opinions on the residency requirements.

1      Q.   And that because of that, it makes prosecuting these

2  people for a knowing violation of the law very difficult,

3  right?

4      A.   I don't know that I agree with that.

5      Q.   Okay.  But you said that the law was vague?

6      A.   I said the Secretary of State's opinions on the law

7  have been vague.

8      Q.   Okay.  And that's the Secretary of State's opinion

9  that you sent or told them to go look up and read, right?

10     A.   That's one of them, yes, sir.

11     Q.   Okay.

12          MR. WRIGHT:  That's all the questions I have of

13  this witness.

14          THE COURT:  Anything else?

15          MR. WHITE:  Just briefly.

16          THE COURT:  Yes, sir.

17                      RECROSS-EXAMINATION

18  BY MR. WHITE:

19     Q.   In terms of the vagueness or flexibility in the

20  residency law, is it your understanding that the reason for

21  that is because there are specific categories of people that

22  make residency determinations challenging?

23     A.   Yes.

24     Q.   And would those groups include soldiers, snowbirds,

25  college students, homeless people, RV enthusiasts, and

**Affirmed and Memorandum Opinion filed May 10, 2016.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-14-00532-CR

---

### ADRIAN HEATH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Court Cause No. 12-03-02580 CR**

---

## M E M O R A N D U M    O P I N I O N

A jury convicted appellant Adrian Heath of illegal voting.[1] The trial court sentenced appellant to confinement for three years in the Institutional Division of the Texas Department of Criminal Justice and assessed a $10,000 fine. Appellant brings this appeal raising four issues: (1) the trial court lacked subject-matter jurisdiction; (2)

---

[1] This appeal was transferred to this court from the Ninth Court of Appeals. In cases transferred from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

— Exhibit 16

section 1.015 of the Election Code is unconstitutional as applied; (3) the evidence is insufficient; and (4) the trial judge was disqualified. For the reasons stated below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a board-of-directors election for the Woodlands Road Utility District No. 1 (the "RUD") in Montgomery County, Texas, held on May 8, 2010. The RUD was created to build and maintain roads in The Woodlands, Texas, and is governed by an elected board of five directors. In May 2010, there were six candidates for three positions on the board. Three of those candidates were challengers Bill Berntsen, Peter J. Goeddertz, and Richard McDuffee.

On the day of the election, ten voters listed an identical address as their residence — 9333 Six Pines Drive, a Marriott Residence Inn ("the Inn") in The Woodlands. The ten voters were appellant, James Jenkins,[2] Berntsen, Goeddertz, McDuffee, Roberta Cook, Sybil Doyle,[3] Thomas Curry, Robert Allison, and Benjamin Allison. The Inn's records reflected Jenkins arrived on May 7 and departed May 9 and identified four other people in his room — appellant, Curry, Goeddertz, and McDuffee. Curry also registered for a room on May 7 for one adult.

Prior to the election, Phil Grant, the First Assistant District Attorney for Montgomery County, Texas, received a complaint that voters had illegally registered. After a preliminary investigation, Grant issued a letter to appellant, among others. The letter cautioned appellant against voting in the election and informed him there could be criminal charges. Grant's office finished its investigation and it was forwarded to the

---

[2] Jenkins was also convicted of illegally voting in an election in which he knew he was not eligible to vote. That conviction was reversed and remanded for a new trial due to jury charge error. *See Jenkins v. State*, 468 S.W.3d 656 (Tex. App.—Houston [14th Dist.] 2015), pet. granted).

[3] Doyle was also convicted of illegally voting in an election in which she knew she was not eligible to vote. That conviction was affirmed. *Doyle v. State*, 09-14-00458-CR, 2016 WL 908299, at *2-3 (Tex. App.—Beaumont Mar. 9, 2016, no pet.) (mem. op., not designated for publication).

office of the Secretary of State.

Election records from Montgomery County reflected that on appellant's registration application, signed March 5, 2010, he swore that he resided at the Inn but listed his mailing address as a post office box. Appellant admitted that he lived at 43 West Stony Bridge Court ("Stony Bridge") and had not spent a single night at the Inn when he swore to that information on the application. The first time appellant was inside a room at the Inn was the night before the election.

Appellant had a certified deed record for Stony Bridge; appellant had owned the property since 1990. Appellant had also claimed Stony Bridge as a residence with the Montgomery County Appraisal District (MCAD) for a homestead tax exemption; the exemption was in effect following the election, and the homestead was not located within the bounds of the RUD.

According to appellant, he stayed at the Inn the night before the election in an attempt to bolster the validity of his residence and the idea that he intended to return. He brought only an overnight bag containing some clothes, a book, and toiletries to the Inn. Appellant admitted that his family, pet, and possessions all remained at his home at Stony Bridge, without interruption, throughout the time of the RUD election. Appellant acknowledged that he had not rented a room at the Inn in March 2010. Appellant claimed he lived at the Inn on May 7 and May 8, but admitted that prior to and after those dates he lived at his home on Stony Bridge. From 1992 until the RUD election, appellant had voted based on his residence at Stony Bridge.

Kandy Heath, appellant's wife, testified that apart from several overnight absences, appellant lived with her at their home during the time of the RUD election. All of appellant's belongings remained at their home except for what items he put in a duffel bag during those few absences. Appellant always returned to their home after those temporary absences.

3

The election occurred on May 8, 2010, and the ten voters cast votes for each of the three challengers, Berntsen, Goeddertz, and McDuffee, who received more votes than the incumbents. The incumbent RUD directors filed suit contesting the election results.[4]

Subsequently, appellant was indicted for the third-degree felony of illegal voting.[5] The indictment alleged that he voted in an election "when he knew that he did not reside in the precinct in which he voted." As charged, the jury found appellant guilty.

## II.   JURISDICTION

In his first issue, appellant claims the trial court lacked subject-matter jurisdiction to hear this case. Appellant then argues the Office of the Attorney General ("OAG") did not have authority to prosecute this case. Specifically, appellant contends no complaint was filed by two or more registered voters prior to the investigation by the OAG and the indictment. Appellant relies upon section 273.001(a) of the Texas Election Code, which provides:

> If two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations. If the election covers territory in more than one county, the voters may present the affidavits to the attorney general, and the attorney general shall investigate the allegations.

See Tex. Elec. Code Ann. § 273.001(a) (West 2010). According to appellant, the lack of evidence in the record that "two or more registered voters" presented such affidavits deprived the OAG of authority to prosecute this case. Citing *Saldano v. State*, 70

---

[4] The ten votes were found "not valid." The trial court's judgment was affirmed. *See McDuffee v. Miller*, 327 S.W.3d 808 (Tex. App.—Beaumont 2010, no pet.).

[5] At the time of the election, the offense was a third-degree felony. *See* Act of May 9, 1985, 69th Leg., R.S., ch. 211, §1, 1985 Tex. Gen. Laws 881 (amended 2011). As amended, the severity of the offense is increased to a second-degree felony. *See* Tex. Elec. Code Ann. § 64.012(b) (West Supp. 2015).

S.W.3d 873 (Tex. Crim. App. 2002), appellant also asserts because the OAG's assistance was not requested by the District Attorney of Montgomery County, the OAG lacked authority to institute a criminal prosecution.

Appellant cites no authority, and *Saldano* does not hold, that the OAG's lack of authority, if any, deprives the trial court of subject-matter jurisdiction. Appellant's only argument is that the OAG did not have authority to institute a criminal prosecution. Appellant does not claim this issue was presented to the trial court and the failure to do so waived any error. *See* Tex. R. App. P. 33.1; and *Stephens v. State*, 978 S.W.2d 728, 730 (Tex. App.—Austin 1998, pet. ref'd) (error was waived by appellant's failure to object to authority of attorney pro tem during trial). *See also Hartsfield v. State*, 200 S.W.3d 813, 816 (Tex. App.—Texarkana 2006, pet. ref'd); *Modica v. State*, 151 S.W.3d 716, 721 (Tex. App.—Beaumont 2004, pet. ref'd); and *Marbut v. State*, 76 S.W.3d 742, 750 (Tex. App.—Waco 2002, pet. ref'd). Section 273.021 provides that the OAG "may prosecute a criminal offense prescribed by the election laws of this state." *Medrano v. State*, 421 S.W.3d 869, 877 (Tex. App.—Dallas 2014, pet. ref'd) (citing Tex. Elec. Code Ann. § 273.021(a) (West 2010)). Moreover, section 273.001(b) of the Texas Election Code provides ". . . the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election." Tex. Elec. Code Ann. § 273.001(b) (West 2010). Likewise, subsection (d) of that statute provides that "[o]n referral of a complaint from the secretary of state under Section 31.006, the attorney general may investigate the allegations." Tex. Elec. Code Ann. § 273.001(d) (West 2010).[6] Accordingly, contrary to appellant's assertions, the election code expressly allows the OAG to investigate and prosecute criminal offenses in connection with an election.

Appellant's issue argues the trial court lacked subject-matter jurisdiction. Subject-

---

[6] The record contains evidence that Grant forwarded his investigation to the office of the Secretary of State.

matter jurisdiction may be raised for the first time on appeal. *See Mata v. State,* 991 S.W.App. 900, 902 (Tex.App.—Beaumont 1999, pet. ref'd). Subject-matter jurisdiction is established if the indictment gave notice the State intended to prosecute the defendant for an offense of which the trial court had jurisdiction. *Teal v. State,* 230 S.W.3d 172, 182 (Tex. Crim. App. 2007). The indictment in this case gave appellant notice that the State intended to prosecute him for a felony offense and the trial court has jurisdiction over felony offenses. Accordingly, the indictment was sufficient to vest the district court with subject-matter jurisdiction. *Id.* Because the trial court had subject-matter jurisdiction and appellant's other arguments were not preserved for our review, appellant's first issue is overruled.

### III. VAGUENESS CHALLENGE

Appellant's second issue asserts that section 1.015 is unconstitutionally vague as applied to him because the definition of "residence" is fatally ambiguous and encourages arbitrary enforcement of the penal law in violation of appellant's right to due process under the state and federal constitutions.[7]

### A. Standard of Review

We "construe a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended." *Williams v. State,* 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). A statute is unconstitutionally vague when persons of common intelligence must necessarily guess at its meaning and may differ as to its application. *Baker v. State,* 478 S.W.2d 445, 449 (Tex. Crim. App. 1972). When a statute is not ambiguous, we assume the Legislature meant what it has expressed, and we should not add or subtract from the

---

[7] The record reflects appellant filed a motion for new trial raising this issue and obtained the trial court's ruling on the motion, thus demonstrating the requirement of presentment was fulfilled. *See Gillenwaters v. State,* 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). *See also Carranza v. State,* 960 S.W.2d 76, 79 (Tex. Crim. App. 1998).

meaning of the statute. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009). The standard of review when considering whether a statute is vague is the same under both federal and State Constitutions. *See Ely v. State*, 582 S.W.2d 416 (Tex. Crim. App. 1979)

When a statute is challenged as unconstitutionally vague "as applied," we "need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct." *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989). The fact it may be unconstitutional as applied in other circumstances is insufficient. *Cain v. State*, 855 S.W.2d 714, 718 (Tex. Crim. App. 1993). We must look at appellant's conduct alone and then examine whether that conduct was clearly prohibited by the statute. *Id.*

**B.    Analysis**

In an appeal arising from another conviction for illegally voting in this same election, the Beaumont Court of Appeals considered whether the term "residence," as used in section 1.015 of the Election Code, is unconstitutionally vague. *Doyle v. State*, 09-14-00458-CR, 2016 WL 908299, at *2-3 (Tex. App.—Beaumont Mar. 9, 2016, no pet.) (mem. op., not designated for publication). Doyle challenged the trial court's denial of her motion to quash the indictment on the grounds that the meaning of the term "residence" is so vague it violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Doyle argued because the Election Code's residence requirements are so uncertain they cannot be enforced, the trial court should have quashed her indictment.

The *Doyle* court reasoned that "[a]lthough several factors are used under the Election Code to determine whether an individual has established 'residence' within an election district," that fact "does not demonstrate that persons of ordinary intelligence cannot determine whether they are eligible (or ineligible) to vote in an election when

7

they reside outside an election district's boundaries." *Id.* at *3. The court decided:

> The plain language of section 1.015 makes it clear that a voter cannot establish residence by being in a place temporarily while at the same time never intending to make that place her home. Tex. Elec. Code Ann. § 1.015(a), (d). The provision is not vague, and reasonable voters would not be misled by the Election Code's requirement that the voter both be present within the election boundaries of the entity holding the election and while there, the voter must also have the intent to make a home within the district to cast a legal vote in the entity's election.

The court concluded the residence requirements of the Election Code regarding residence are not ambiguous and do not subject voters like Doyle to absurd results. *Id.* For the reasons set forth below, we agree with the *Doyle* court.

A person commits the offense of illegal voting "if the person: (1) votes or attempts to vote in an election in which the person knows the person is not eligible to vote." Act of May 9, 1985, 69th Leg., R.S., ch. 211, §1, 1985 Tex. Gen. Laws 881 (amended 2011) (current version at Tex. Elec. Code Ann. § 64.012(a) (West. Supp. 2015)).  To be eligible to vote in an election in this state, a person must, among other things, "be a resident of the territory covered by the election for the office or measure on which the person desires to vote." Tex. Elec. Code Ann. § 11.001(a)(2) (West 2010).

A residence is "one's home and fixed place of habitation to which one intends to return after any temporary absence." Tex. Elec. Code Ann. § 1.015(a) (West 2010). A residence is not "lost" by leaving "to go to another place for temporary purposes only," nor is it acquired by going to another place "for temporary purposes only and without the intention of making that place the person's home." Tex. Elec. Code Ann. § 1.015(c) and (d) (West 2010).

Nowhere in his brief does appellant identify what part of the definition of residence is incomprehensible. The statute clearly and specifically provides that if a person intends to return to his home after a temporary absence, his home is his

residence; his home is still his residence even if he goes to another place temporarily; and going to another place temporarily, with no intention of making that place home, does not alter his residence. Thus the challenged definition is clear, specific, and easily understandable by any person of ordinary intelligence. *See Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. [Panel Op] 1978).

When we apply the definition to appellant's specific conduct, it is clear the statute is not impermissibly vague. The record reflects appellant's home was the house on Stony Bridge. He left that home to go to the Inn. The absence was temporary as evidenced by the fact that he only took an overnight bag containing some clothes, a book, and toiletries, and left everything else, including his family and pet. There was no evidence that appellant was leaving his family or intended to make the Inn his home. Considering appellant's conduct alone, his residence never changed from the house on Stony Bridge. Accordingly, his conduct was clearly prohibited by the statute. *See Cain*, 855 S.W.2d at 718.

Appellant argues he did not know his actions violated the law because the legality of his claimed residence was not established until the election contest determined he was not a resident of the Inn. As explained above, appellant's residence never changed. Thus it was not established for the first time by the election contest.

Further, appellant claims subsection (b) requires a person of ordinary intelligence to know the common law in order to avoid violating the statute. Subsection (b) expressly provides that the statutory definition controls over the common law. Tex. Elec. Code Ann. § 1.015(b) (West 2010).

Appellant also contends the vagueness of the definition of "residence" encourages arbitrary and erratic arrests and convictions for illegal voting based upon the "wrong residence." Again, as noted above, appellant only had one residence. Because the record is devoid of any evidence that his absence from Stony Bridge was anything other than

temporary, or that he intended the Inn to become his home, the Inn was never his residence.

We therefore conclude the definition of "residence" is not vague as applied to appellant. Issue two is overruled.

## IV.   SUFFICIENCY OF THE EVIDENCE

In his third issue, appellant contends the evidence was legally and factually insufficient to support his conviction. We address appellant's argument regarding the sufficiency of the evidence in accordance with *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

### A.   Standard of review

When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences therefrom. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.*

### B.   Analysis

As pertinent to the fact of this case, a person commits the offense of illegal voting if he "votes or attempts to vote in an election in which the person knows the person is not eligible to vote." Act of May 9, 1985, 69th Leg., R.S., ch. 211, §1, 1985 Tex. Gen. Laws 881 (amended 2011). To be eligible to vote in an election in this state, a person must, among other things, "be a resident of the territory covered by the election for the

office or measure on which the person desires to vote." Tex. Elec. Code Ann. § 11.001(a)(2) (West 2010). Thus the State is required to show a defendant voted in an election knowing he was not a resident of the territory covered by the election for the office on which he desired to vote. *Medrano*, 421 S.W.3d at 869. This does not require the State to prove a defendant subjectively knew he was not eligible to vote; it needed only to prove he voted in the election at issue when he knew he was not a resident of the territory for which he was voting. *Id.* Ignorance of the law is no excuse. *Id.*

As he admits in his reply brief, appellant's presence at the Inn was solely "to make his residence *for voting purposes* a hotel." (Emphasis added.) Thus appellant concedes his presence at the Inn was not for the purposes of making it his "fixed place of habitation" to which he intended to return after a temporary absence. Appellant's admission also reflects that he knew he could not vote as a resident of Stony Bridge.

The crux of appellant's argument is that he believed it was legal for him to register and vote from the Inn despite the fact that it was not his residence. The jury, however, rejected appellant's affirmative defense of mistake of law and found him guilty.

The evidence showed appellant lived at a home outside the territory covered by the RUD district, registered to vote using the address of the Inn because it was inside that territory, voted in the election as a resident of that territory, and knew when he registered to vote and when he voted that he was not a resident of the Inn and did not intend to reside there. Consequently, the State provided evidence beyond a reasonable doubt that appellant knew the facts making him ineligible to vote, which is all that was required. *See id.*

We therefore conclude a rational trier of fact could have found appellant voted in an election in which he knew he was not eligible to vote. We hold the evidence was legally sufficient to support appellant's conviction and overrule his second issue.

## V. DISQUALIFICATION

In his fourth issue, appellant complains that he was denied the right to an impartial judge and thus his conviction is void. Appellant makes two arguments regarding this issue. First, he complains the presiding judge erred in denying his motion to recuse. Second, appellant asserts the record reflects the trial judge was biased.

### A.    Denial of the motion to recuse

A judge must recuse when "(1) the judge's impartiality might reasonably be questioned or (2) the judge has a personal bias or prejudice concerning the subject matter or a party." Tex. R. Civ. P. 18b(1), (2); *Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011). *See In re Joyner*, 357 S.W.3d 844, 845 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993)) (holding that "absent explicit or implicit legislative intent indicating otherwise" civil rules of procedure governing recusal apply in criminal cases).

#### 1.    *Standard of review*

An order denying a motion to recuse is reviewed for an abuse of discretion. *See* Tex. R. Civ. P. 18a(j)(1)(A); *DeLeon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004). Under this standard, a trial court abuses its discretion only if the ruling was not within the zone of reasonable disagreement. *See Gaal*, 332 S.W.3d at 456. We consider the totality of the evidence presented at the hearing on the recusal motion to determine if the record reveals sufficient evidence supporting the trial court's ruling. *Id.*

#### 2.    *Analysis*

Trial was set for Monday, June 24, 2013. On June 14, 2013, appellant filed a first amended motion to recuse the trial judge,[8] alleging the trial judge had obtained

---

[8] Appellant's first motion for recusal alleged the trial judge should recuse because he had "a personal bias or prejudice." Appellant specified that the judge was running for election against appellant's counsel and had refused to transfer the case to a different court. It was denied by the trial

information through extrajudicial sources and formed an opinion about the defendant's conduct and role in this case. The motion also alleged that "the trial judge had substantive ex parte communications with the prosecution in this case that indicate [sic] a coordination with the prosecution and a bias in favor of the prosecution." Following a hearing, the presiding judge denied the amended motion to recuse.

### a. Extrajudicial source

In general, partiality or bias must stem from an extrajudicial source and result in an opinion on the merits of the case beyond what the judge learned from participating in the case. *See Roman v. State*, 145 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). "Extrajudicial" is defined as "[o]utside court" or "outside the functioning of the court system," and "[n]ot done or made as a part of a judicial proceeding." *Id.* (citing BLACK'S LAW DICTIONARY 606 (7th ed. 1999)). Thus, if a statement is made within the context of a judicial proceeding, and repeated therein, it cannot be considered as arising from an extrajudicial source. *Id.*

In his affidavit, appellant's counsel averred that on Thursday, May 16, 2013, he met with the prosecutor, who wanted to try appellant and Jenkins together, or try appellant first. Counsel reminded the prosecutor that the trial judge had said the trials would be conducted from the lowest cause number to the highest, thus Jenkins would be tried first. Counsel told the prosecutor that he had spoken with some of the other defense attorneys about consolidating all the trials. The prosecutor reminded counsel that the trial judge had also stated that he did not want all of the trials combined.

On Friday, May 17, 2013, counsel returned a phone call from the trial judge. According to counsel, the trial judge stated, "I understand that your client and this

---

judge on May 15, 2012, and then by the presiding judge on May 29, 2012. Appellant does not complain of the order denying his first motion to recuse.

Jenkins fellow are more culpable than the others, that they were the ring-leaders" and that he thinks they should be put on trial before the other defendants with the same jury.

Counsel averred that he became concerned there had been ex parte communications between the trial judge and the prosecutor "because the Judge now wanted to try my client with James Jenkins just as [the prosecutor] had told me the day before." Counsel "wondered how the Judge came to believe that my client and James Jenkins were 'more culpable than the others' or were 'the ring-leaders' since that is not contained in the allegations found at that time in the court's file. The only way he could have such knowledge would be if some person gave him that knowledge outside the courtroom pretrial hearing that we had held in April." Counsel stated his belief that the trial judge "has communicated with persons about the facts of this case through extrajudicial communications without my presence and that he has reached conclusions of critical facts in this case without hearing any evidence."

At the hearing on appellant's motion to recuse, the prosecutor stated that at a pretrial hearing on March 28, "statements were made using a very significant legal word, which was that trying defendants, Heath and Jenkins, could be dispositive of all seven cases." According to the prosecutor's verified response to the motion to recuse, "in-court, on-the-record statements of the prosecution on March 28, 2013, provide legitimately-formed inferences for a reasonable trial attorney or trial judge to determine the State's position as to the relative culpability of Heath and Jenkins, without serving to bias the trial court against those two defendants." At the hearing, and in his response, the prosecutor stated he has never had ex parte communications with the trial judge.

During the hearing, counsel admitted that he had no evidence that the prosecutor had ex parte communications with the trial judge. Counsel further testified that he did not recall if, at a pretrial hearing approximately three months before the motion was filed, the prosecutor had suggested that trying appellant and Jenkins together would be dispositive of the other individuals similarly charged. However, counsel did recall that

14

the prosecutor suggested that if some of the defendants were tried first, the trials might be dispositive of the others.

We cannot say the record reflects the partiality or bias, if any, arose from an extrajudicial source. Rather, there is every indication that the trial judge's comments represent ideas formed on the basis of events occurring in the course of prior proceedings. *See Roman*, 145 S.W.3d at 321–22. Thus, we conclude the record fails to establish that the trial court's comments originated from an extrajudicial source.

### b. Impartiality or bias

In the context of this case, recusal is warranted if the trial judge's impartiality might reasonably be questioned or he has a personal bias. *See* Tex. R. Civ. P. 18b(2). Impartiality is demonstrated only when it appears that the judge harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside. *Rhodes v. State*, 357 S.W.3d 796, 799 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Bias arises from what the judge knows and feels. *Id.* Where bias is alleged, but does not originate from an extrajudicial source, recusal is proper only where the bias indicates a "high degree of favoritism or antagonism." *Id.* at 800.

Appellant argues the trial judge's comments reflect that he reached a conclusion as to appellant's culpability and thus it was an abuse of discretion for the presiding judge to deny the motion to recuse. As support, appellant relies on *Norton v. State*, 755 S.W.2d 522, 523 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd), and *Jefferson v. State*, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet. ref'd). In both cases, however, the trial court "unequivocally told the parties what the punishment would actually be." *Gaal*, 332 S.W.3d at 457. Because nothing in the record reflects the trial judge pre-judged appellant's punishment, neither *Norton* nor *Jefferson* are applicable to the case at bar. *See Jefferson*, 803 S.W.3d at 472; *Norton*, 755 S.W.2d at 524.

The only evidence appellant refers to regarding bias concerns events that occurred

after the hearing on the motion to recuse. We do not consider that evidence in determining if the trial court erred in overruling appellant's motion. *See Gaal*, 332 S.W.3d at 456. Because the record does not demonstrate either the trial judge's comments originated from an extradjudicial source or that he harbored an aversion or hostility to appellant, we conclude the presiding judge did not abuse his discretion in denying the motion to recuse. *Id.*

**B.    Evidence of bias**

Appellant contends the record reflects the trial judge "created an atmosphere within the courtroom to give the jury the impression that Appellant was obviously guilty as charged and Appellant's proof should not be taken seriously." Appellant did not object to any alleged bias or prejudice by the trial judge during trial or in a motion for new trial. Consequently, he has not preserved his claim for review. *See* Tex. R. App. P. 33.1; *Cole v. State*, 931 S.W.2d 578, 579–80 (Tex.App.—Dallas 1995, pet. ref'd); *Cole v. State*, 757 S.W.2d 864, 865–66 (Tex.App.—Texarkana 1988, pet. ref'd).

Moreover, the record does not support appellant's contention. Appellant claims the trial judge's bias was evident from remarks he made. The record reflects the State objected when appellant offered a tax-abatement document as evidence that his motive to vote in the election was to receive a tax abatement. During a bench conference out of the jury's presence, the trial judge remarked, "If that's what the motive is, then the wrong–the wrong method doesn't justify the means." Appellant's counsel responded, "That's true." The trial judge admitted the tax-abatement document. Appellant claims the trial judge's remark reflects his belief that what appellant did was wrong.

The record reflects the trial judge was responding to the State's assertion the tax abatement was not relevant. Subsequently, the trial judge stated:

> Well, the wrong motive for the wrong reason is irrelevant if it doesn't have
> -- if it doesn't go to proving or disproving one of the elements of the
> offense. And I want you to address how this Defendant's Exhibit Number

16

> 31 shows a motive that shows the Defendant is not guilty of voting or attempting to vote in an election in which he knows he is not eligible to vote in. Which one of those elements would this motive go to other than just -- or is what I am gathering and what the State is contending, is that there is a motive that the Defendant seems to be using here which is contending that there are things he disagrees with and may be inappropriate in the way this district is being run and then he acts to stop that.

Taken in context, and coupled with his ruling in appellant's favor, the trial judge's remark does not indicate a high degree of favoritism toward the State or antagonism against appellant.

Appellant also asserts the trial judge showed bias by refusing to admit certain emails and audio recordings. The trial judge found the evidence contained hearsay, could be elicited within the rules of evidence, and was cumulative. Nothing in the record reflects the trial judge's rulings were based on anything other than his understanding of the rules of evidence.

"Recusal is generally not required purely on the basis of judicial rulings, remarks, or actions." *Rhodes*, 357 S.W.3d at 800. These will usually be grounds for reversal if in error, but not for recusal because they would not typically evidence the degree of favoritism or antagonism required. *Id.* However, if the facts are such that a reasonable person would harbor doubts as to the impartiality of the trial judge, recusal is appropriate. *Id.* (citing *Kemp v. State*, 846 S.W.2d 289, 305 (Tex. Crim. App.1992)). Our examination of the record leads us to conclude that the trial judge's remarks and rulings do not establish the trial judge exhibited a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Gaal*, 332 S.W.3d at 458.

Lastly, appellant contends the trial judge's sentence of imprisonment for three years is evidence of bias. When sentence was pronounced, the trial judge noted that a prison sentence of three years was "a sentence that was given by another jury." He then made an independent finding that under the circumstances of this case, a sentence of

confinement for three years was fair and proper. The range of punishment for the offense, a third degree felony, was from two to ten years. Tex. Penal Code Ann. § 12.34 (West 2011). Thus appellant was sentenced at the lower end of that range. Appellant cites no authority that his sentence was so unusual as to constitute evidence of bias.

For the reasons set forth above, we overrule appellant's fourth issue.

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


/s/    John Donovan
       Justice


Panel consists of Justices Christopher and Donovan and Guiney.[9]
Do Not Publish — Tex. R. App. P. 47.2(b).

---

[9] The Honorable Kristin M. Guiney sitting by assignment.

18