United States Courts Southern
District of Texas
FILED

*January 11, 2021*

Nathan Ochsner, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

X̶X̶X̶X̶1̶2̶X̶X̶1̶X̶X̶

Clerk of Court

**EX PARTE**                              {
                                          {
                                          {     **CASE NO. _____N**
**ADRIAN DAVID HEATH**                    {

## BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

GROUND ONE:  EQUAL PROTECTION CLAIM

In cause number 12-03-02580-CR, 359th District Court of Montgomery County,

Texas, Adrian Heath was convicted of Illegal Voting under Section Sec. 64.012, Texas

Election Code, which provides:  "ILLEGAL VOTING.  (a)  A person commits an

offense if the person:  (1)  votes or attempts to vote in an election in which the person

knows the person is not eligible to vote...."  He appealed his conviction to the 14th  Court

of Appeals which affirmed the conviction in the Opinion issued on May 10, 2016, in

case number 14-14-00532-CR.  The Petition for Discretionary Review was denied by

the Court of Criminal Appeals in cause number .  The United States Supreme Court

denied the Application For Writ of Certiorari in Supreme Court Case Number 16-1090.

Subsequently, Adrian Heath filed a Post-Conviction Petition For Writ of Habeas Corpus

with the Texas Court of Criminal Appeals.  The Writ was denied in cause number WR-

91,018-01 Therefore, all conditions precedent to file this Application for Writ of Habeas

Corpus have been met.

1

Adrian Heath has the right to bring this Writ of Habeas Corpus within one year of

his exhaustion of State Court remedies because:

(1) the current claims and issues have not been and could not have been presented

previously in an original application or in a previously considered application filed

under this article because the factual or legal basis for the claim was unavailable on the

date the applicant filed the previous application;  or

(2) by a preponderance of the evidence, but for a violation of the United States

Constitution no rational juror could have found the applicant guilty beyond a reasonable

doubt.

For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or

before a date described by Subsection (a)(1) if the legal basis was not recognized by and

could not have been reasonably formulated from a final decision of the United States

Supreme Court, a court of appeals of the United States, or a court of appellate

jurisdiction of this state on or before that date.

For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or

before a date described by Subsection (a)(1) if the factual basis was not ascertainable

through the exercise of reasonable diligence on or before that date.

Adrian Heath is under continuing restraint from exercising his right to run for and

hold public office based upon certain provisions of the Texas Election Code, Section

141.001, which provides:

2

"Sec. 141.001.  ELIGIBILITY REQUIREMENTS FOR PUBLIC OFFICE.  (a)  To be

eligible to be a candidate for, or elected or appointed to, a public elective office in this

state, a person must:

...
(4)  have not been finally convicted of a felony from which the person has not been
pardoned or otherwise released from the resulting disabilities...."

As a finally convicted felon, Adrian Heath can no longer run for, or serve in,

public office in Texas.  His final conviction for Illegal Voting is denying his First

Amendment Right to "Free Speech" and "Assembly."  It is also denying his right to

"keep and bear arms" under the Second Amendment.  It is also denying his right to "Due

Process" under the Fifth and Fourteenth Amendments because he cannot pursue his

"liberty interest" in his chosen field of work.

When the conviction was appealed, the Court of Appeals did not conduct a strict

scrutiny analysis required of First Amendment "Free Speech" cases.  See Anderson v.

Celebrezze, 460 U.S. 780 (1983).  The appellate Court did not give consideration to

paragraph (b) of the definition of "residence" found at 1.015 of the Election Code, which

states:  "(b) Residence shall be determined in accordance with the common-law rules, as

enunciated by the courts of this state, except as otherwise provided by this code."

Petitioner joined with other community activists who registered to vote declaring the

extended-stay "Residence Inn" hotel as their residence because it was located inside the

boundaries of the Woodlands Road Utility District.  There were also other persons

3

registered to vote from that location.  This group of political activist wanted to force an

election for three positions on the Woodlands Road Utility District Board in the May 8,

2010, Board election.

      Before declaring the "Residence Inn" on his voter registration card and casting his

vote, Adrian Heath had been counseled by an expert attorney from the Secretary Of

State's Office, Elections Division, named Joe Kulhavy, who directed Heath to review the

vague, overly-broad language found in paragraph (b) of the definition of residence in the

Texas Election Code:   "(b) Residence shall be determined in accordance with the

common-law rules, as enunciated by the courts of this state, except as otherwise

provided by this code."  Eventually, based upon that advice, and because there were

other voters registered to vote from that address, Heath went to the "Residence Inn,"

spent a short period of time at the hotel, and subsequently changed his residence for

voting purposes to the "Residence Inn."

      The advice given by Mr.  Kulhavy caused Adrian Heath to review the legal

opinions defining "residence" for voting purposes issued by the Texas Secretary of

State's Office and the Texas Attorney General's Office.  Each of the legal opinions

contained numerous state and federal case opinions indicating that the voter has the right

to determine the location of his residence according to his own desires and the residence

chosen does not have to be the person's homestead.  Mr. Joe Kulhavy gave Adrian

Heath his legal opinion that a voter can establish a "residence for voting purposes" using

4

a hotel, utility trailer, office address, a vacant lot, or post office box, and many other locations other than the voter's homestead.

Following this legal advice, Adrian Heath, Sybil Lea Doyle, Roberta Margaret Cook,  James Jenkins, and others registered and voted in the May 8, 2010, election as residents of the "Residence Inn" hotel and their slate of candidates won the three open board positions by a vote of ten activist votes to two "developer-backed" votes.  The election results were then overturned in an election contest suit upheld by the 9th Court of Appeals in McDuffey v. Miller, 09-10-00293-CV .

About ten months after the election contest, Adrian Heath and the others were indicted for "illegal voting," in March of 2012, alleging that he voted in an election in which he knew he was not eligible to vote.  After a jury trial, Petitioner was convicted and sentenced to three years in the Texas Department of Corrections.  He is parole expired in February 2020, approximately one month before his Application for Writ of Habeas Corpus was denied by the Texas Court of Criminal Appeals (Appendix Exhibit 1).

At trial and on appeals, Petitioner has contended that the Texas Election Code definition of residence is too vague and overly-broad, as applied to his circumstances, to prosecute him under the Election Code provisions for illegal voting.  Petitioner brings this Writ seeking relief from the court to set aside his conviction under the Election Code for illegal voting because, based upon the unconstitutionally vague definition of

"residence," he had the right to select the "Residence Inn" as his residence for voting

purposes without fear that he was violating the Election Code. Hence, what Adrian

Heath did cannot constitute a crime because that would violate his First Amendment

Constitutional Right to Free Speech and Assembly.

The most important recent Texas case dealing with the First Amendment of the

United States Constitution is the case of Perry v. State. "The First Amendment protects,

among other things, the freedom of speech. The First Amendment right to freedom of

speech applies to the states by virtue of the Fourteenth Amendment. Under the First

Amendment's 'overbreadth' doctrine, a law may be declared unconstitutional on its face,

even if it might have some legitimate applications." Ex Parte Perry, 483 S.W.3d 884,

(Tex. Crim. App. 2016)(footnotes omitted), at p. 208. "The overbreadth of a statute

must be "substantial, not only in an absolute sense, but also relative to the statute's

plainly legitimate sweep. The statute must prohibit a substantial amount of protected

expression, and the danger that the statute will be unconstitutionally applied must be

realistic and not based on 'fanciful hypotheticals.' The person challenging the statute

must demonstrate from its text and from actual fact 'that a substantial number of

instances exist in which the Law cannot be applied constitutionally.'" Ex Parte Perry, id.

at p. 209. In determining plain meaning, we consult dictionary definitions, apply rules

of grammar, and consider words in context, and we presume that every word in a statute

has been used for a purpose and that each word, clause, and sentence should be given

effect if reasonably possible. **When the meaning of statutory language is not plain, or leads to absurd results, extratextual factors that may be considered** include: (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision. *Ex parte Thompson*, 442 S.W.3d 325, 333, 342 n.91, 349 (Tex. Crim. App. 2014).  101 *United States v. Williams*, 553 U.S. 285, 292 (2008).  102 *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002); *Thompson*, 442 S.W.3d at 349-50.  103 *Regan v. Time*, 468 U.S. 641, 651 n.8 (1984); *Thompson*, 442 S.W.3d at 350.  104 *See Stevens*, 559 U.S. at 485 (Alito, J., dissenting) (citing *Williams*, 553 U.S. At 301-02).  *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988).  106 *Williams*, 553 U.S. At 293.  107 *Thompson*, 442 S.W.3d at 340; *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)." <u>Ex Parte Perry</u>, id. a p. 210.

The wording of the Texas Election Statute at issue in Adrian Heath's case was interpreted in <u>United States V. Texas,</u> 445 F. Supp. 1245 (S.D. Tex. 1978), *aff'd, Symm v. United States*, 439 U.S. 1105 (1979).   In order to register to vote, one must be a "resident" of the county in which one desires to vote.  Adrian Heath was a resident of Montgomery County, Texas, when he registered and voted.  "Residence" for purposes

both of registration and voting is defined to mean "domicile," *i.e.*, "one's home and fixed

place of habitation to which one intends to return after any temporary absence." Tex.

Elec. Code Ann. § 1.015(a) (Vernon 2003).  In addition, "residence" must be determined

in accordance with the common-law rules, as enunciated by the courts of this state,

unless the code provides otherwise. *See id.* § 1.015(b).  A person does not lose residence

by leaving his home to go to another place for temporary purposes only; nor does a

person acquire a residence in a place to which he has come for temporary purposes only

and without the intention of making that place his home. *See id.* § 1.015(c)-(d).

However, the choice of residence is up to the voter to be fixed at least thirty days

before an election.  Prior to Whatley v. Clark, 482 F.2d 1230 (5th Cir. 1973), students in

Texas were presumed by statute to have a domicile at the residence of their parents, not

where they were enrolled at institutions of higher education. *Whatley* struck down the

statutory presumption in former article 5.08(k) of the Election Code providing that "a

student in a school, college, or university shall not be considered to have acquired a

voting residence at the place where he lives while attending school unless he intends to

remain there and to make that place his home indefinitely after he ceases to be a

student." Whatley, 482 F.2d at 1231 (quoting former article 5.08(k) of the Election Code,

*see* Act of May 19, 1967, 60th Leg., R. S., ch. 723, § 21, sec. 40 (art. 5.08), 1967 Tex.

Gen. Laws 1858, 1879-80, *repealed by* Act of May 13, 1985, 69th Leg., R. S., ch. 211, §

1, sec. 1.015, 1985 Tex. Gen. Laws 802, 807) (substantive recodification of Texas

8

Election Code, repealing former article 5.08 and enacting section 1.015). The court

noted that the statutory presumption illegally treated student voters differently than non-

student voters:

> "By its terms it creates a presumption that students are not domiciliaries of the places they live while attending school. Of course, the presumption is rebuttable; but unless a student carries the burden of persuading the voter registrar that he is in fact a domiciliary of the place where he resides for the better part of each year, he is not permitted to vote there and is consequently denied an opportunity to participate in elections which may have considerably more impact on his life than do those in the area where he resided before becoming a student. Other prospective voters, on the other hand, are not subject to this presumption of nonresidency or to the attendant burden of overcoming it."
> Whatley, 482 F.2d at 1233 (footnotes omitted).

Through Whatley, supra, the courts have declared that such a presumption violates

the Equal Protection Clause of the 14th Amendment and must be struck down.  Under

current law, the determination regarding "residence" thus involves both physical

presence and current intention of the applicant; if a person, like a student or any other

applicant, satisfies the requirements of section 1.015, that he is a "resident" of the county

in which he seeks to register. The intention of the voter registration applicant is crucial

to a proper determination of residence, and every person is strongly presumed to have

"the right and privilege of fixing his residence according to his own desires" under

established Texas law.  See McBeth v. Streib, 596 S.W.2d 992, at 995 (Tex. Civ. App.-

San Antonio 1936, no writ).

All applicants for registration, including students, must be subject equally to

whatever presumptions or restrictions are imposed by law. See Dunn v. Blumstein, 405

9

U.S. 330 (1972);  and United States v. Texas, 445 F. Supp. 1245 (S.D. Tex. 1978), *aff'd*,

*Symm v. United States*, 439 U.S. 1105 (1979).  In United States v. Texas, the Court

ordered that, *inter alia*, college students of Waller County must be registered and

allowed to vote on the same basis and by application of the same standards and

procedures as non-students, without reference to whether such students had dormitory

addresses, whether or not they resided in Waller County prior to attending school, and

whether or not they planned to leave Waller County upon graduation. While the Voter

Registrar had the authority, under the Election Code, to make a factual determination as

to whether each applicant to vote was a bona fide resident of Waller County, in making

this factual determination the registrar could not find that a person was a non-resident of

Waller County for any of the following reasons:

A. That such person resides in a dormitory at Prairie View A&M University;

B. That such person owns no property in Waller County;

C. That such person is a student at Prairie View University;

D. That such applicant has no employment or promise of employment in Waller County;

E. That such applicant previously lived outside Waller County, or may live outside

Waller County after his graduation;

F. That such person visits the home of his parents, or some other place during holidays

and school vacations. *Id.* at 2.

  In Adrian Heath's case, the argument made by the Attorney General's Office to the

Judge and Jury was that Adrian Heath had a house in Montgomery County which was his declared homestead for property tax purposes and that, under the law as they now interpreted it at his trial, that address had to be his "residence for voting purposes" under the Election Code.  This is the first time such an assertion has been made by the Attorney General's Office and it clearly goes against the prior Attorney General Opinion GA-0141, as well as the prior Secretary of State Opinion GSC—1, that hold that the voter has the right to chose his/her "residence for voting purposes."   The Attorney General's trial argument also goes against the Court's conclusion in United States v. Texas when it held:  "Thus, clearly, in light of *Whatley*, students in Texas may no longer be subjected, whether by statute or by practice, to any presumption with respect to "residence" not also applied to all other voters in Texas."  id.

There was never a provision in the Election Code that declared a person property tax homestead designation must be their "residence for voting purposes."  In addition, requiring a voter to declare their homestead for property tax purposes could never be required of military personnel who have no house in Texas, or of persons who have more than one house in Texas, or another State, or of college students who may have a house with a homestead declaration on file even though they choose register from an apartment rented in their college town.  The argument made and sold to the Jury in this trial was specious, misled the Jury, and was allowed by the Trial Judge over objection. The argument violated the "Equal Protection" clause of the Fourteenth Amendment

while violating Adrian Heath's "First Amendment" right to participate in the political activity of the Road Utility District.

Petitioner was indicted and prosecuted for "illegal voting" under Section 64.012(a) of the Texas Election Code alleging that he "vote(d) in an election which the Defendant knew he was not eligible to vote, to wit:  Defendant voted in the May 8, 2010 Woodlands Road Utility District Board of Directors election, when he knew he did not reside in the precinct in which he voted."  See Appendix Exhibit 2.  The gravamen of the offense was that Mr. Heath decided to become a resident of The Residence Inn hotel (which is within the boundaries of the Utility District) for "voting purposes,"  had timely registered at that address as his residence, and voted as a "resident" of the precinct on the day of the election.  The definition of "residence" for voting purposes is set forth in Section  plain language of the applicable Election Code provision at the time in question was:  "(a)  In this Code, "residence" means domicile, that is, one's home and fixed place of habitation to which he intends to return after any temporary absence.

(b)  Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

(c)  A person does not lose his residence by leaving his home to go to another place for temporary purposes only.

(d)  A person does not acquire a residence in a place to which he has come for temporary purposes only and without the intention of making that place his home.

(e)  A person who is an inmate in a penal institution or who is an involuntary inmate in a hospital or eleemosynary institution does not, while an inmate, acquire residence at the place where the institution is located."

The allegations of the State were that he "knew he did not reside in the precinct in which he voted."  However, Petitioner had chosen and designated The Residence Inn hotel as his "residence for voting purposes" after reading Texas Attorney General's Opinion GA-0141, dated February 4, 2004, and Secretary of State's Election Opinion GSC-1, dated January 22, 2004 (Appendix Exhibits 5 and 6).  The prosecution argued that Petitioner had a homestead residence in the County that was different from the hotel and, therefore, The Residence Inn hotel could not be his "residence" because a voter's homestead residence must be his or her "residence for voting purposes."   However, there were other voters who have registered and voted from business locations even though they had, on file, homestead residences, and those people have not been prosecuted because they did not vote in an election that challenged the Board Members of the Woodlands Road Utility District.  See Appendix Exhibits 7, 8 and 9.

<u>Section 1.015(b) of the Texas Election Code is Void for Vagueness</u>

"To pass constitutional muster, a law that imposes criminal liability must be sufficiently clear (1) to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) to establish determinate guidelines for law enforcement. When the law also implicates First Amendment freedoms, it must also be sufficiently

13

definite to avoid chilling protected expression.  Greater specificity is required when First Amendment freedoms are implicated because "uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas are clearly marked."  Nevertheless, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  A scienter requirement in the statute may sometimes alleviate vagueness concerns but does not always do so.

The United States Supreme Court has ruled that crimes must be defined in advance so that individuals have fair warning of what is forbidden.  As the Supreme Court has stated: a lack of notice poses a "trap for the innocent …." See United States v. Cardiff, 344 U.S. 174, p. 176 (1952) and "violates the first essential of due process." See Connally v. General Construction Co., 269 U.S. 385 (1926).   Failing to give fair warning renders the criminal statute unconstitutionally "vague."

This was further clarified in Grayned v. City of Rockford, 408 U.S. 104, p.p. 108-109 (1972),  when it adopted a two part analysis:

> "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications."

14

In a First Amendment case involving concerns about the indeterminacy of a law, the Texas Court of Criminal Appeals has followed federal case law which struck down a statute that prohibited the wearing of a "political badge, political button, or other political insignia" when "political" was not defined and had been haphazardly construed by the state courts." State v. Doyal, PD-0254-18 (February 27, 2019), op. at p. 4.

Section 64.012(a)(1), the statute under which Adrian Heath was convicted, allows for the prosecution and conviction for voting in an election in which the defendant knows he is not eligible because he was not a "resident" of the Woodlands Road Utility District. Section 1.015 sets forth the definition of residence as: "(a) "Residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence. (b) Residence shall be determined in accordance with the common-law rules as enunciated by the courts of this state, except as otherwise provided by the Texas Election Code. (c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only. And (d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home."

Section (b) is so vague that it is subject to numerous interpretations as evidenced by the official Opinions of the Attorney General, in GA- 0141, February 4, 2004, and the

Secretary of State's Opinion GSC-1, January 22, 2004 (Appendix Exhibits 5 and 6),

upon which Adrian Heath relied when he determined it was legal to change his residence

to The Residence Inn Hotel.  Specifically, Attorney General Gregg Abbott's Opinion

holds that a student away at college can select his residence as his/her college

dormatory, or her/his parent's home in another city, following the Texas Supreme Court

holding in <u>Mills v. Bartlett,</u> and the San Antonio Court of Appeals holding in <u>McBeth v.</u>

<u>Streib,</u> cited in the Opinion (Appendix Exhibit 5).  The Attorney General specifically

held that "Under the current law, the determination regarding "residence" thus involves

both physical presence and current intention of the applicant...."  It further states "The

intention of the voter registration applicant is crucial to a proper determination of

residence, and every person is strongly presumed to have 'the right and privilege of

fixing his residence according to his own desires,'" citing <u>McBeth</u>.  This state of the law

allows people to register and vote from whatever location they have "fixed" as their

residence according to that person's own "desires."

The federal case law cited by the Secretary of State, and relied upon by Adrian

Heath, was his Opinion:

"Evidence of intent to establish domicile may include, but is not limited to, such

factors as where a person **'exercises civil and political rights**, pays taxes, owns real and

personal property, has driver's and other licenses, maintains bank accounts, belongs to

clubs and churches, has places of business or employment, and maintains a home for his

family.' *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996)." Election Law Opinion GSC-1 (January 22, 2004) p. 6. (emphasis added)(Appendix Exhibit 6).

However, it goes on to say: "…No applicant is required to assert such a future durational intention when registering to vote. If a voter were held to such a standard, it is the opinion of this office that such a requirement would be contrary to the rationale in *Dunn v. Blumstein*, 405 U.S. 330 (1972)" citing *United States v. Texas*, 445 F.Supp. 1245, (S.D. Tex. 1978), aff'd in memorandum op. sub nom. *Symm v. United States*, 432 U.S. 1105 (1979)." Election Law Opinion GSC-1 (January 22, 2004) p. 7(Appendix Exhibit 6).

Adrian Heath was following the federal law which determined that he had the same right as a soldier in the armed services, or any other American, to choose his residence for voting purposes in order to engage in political activity.

The Secretary of State, whose opinion was issued the month before the Greg Abbott's Opinion, goes further and presents examples of a voter "fixing" his residence according to his "own desires" including: members of the military (who don't even have a fixed place of residence in Texas), migrant workers, "winter Texans," college students, married couples in which one spouse lives and works primarily in one location and the other spouse in another location. It goes on to say that:

"College students, and other traveling Texans, including those in the United States military, have, on a number of occasions, expressed concerns to personnel

in my office about their proper residency for voting purposes due to the fact that their lives are 'split' among one or more physical locations.  There a a plethora of election cases on Texas residence regarding both voters and candidates.  Because of the fact-intensive nature of the residence question, some have argued that it is possible to select one case or another as "proving" that a certain factor is dispositive with respect to the question of intent for residence purposes.  However, it is the opinion of this office that such an approach can be misleading.  The one constant in the common law tests that have been approved by the Texas Supreme Court, and federal courts interpreting Texas law, is that no one factor is dispositive...As we have noted above, analysts of Texas residence cases select a single case at their peril." (Appendix Exhibit 6).

When the reasonable average voter reviews "the common-law rules, as enunciated by the courts of this state," one can see that the law is extremely unclear, subject to many interpretations and can be, and has been, unequally applied (see testimony of First Assistant District Attorney, Phil Grant, at Appendix Exhibit 15).

As stated in the Ex Parte Thompson case above:  When the meaning of statutory language is not plain, or leads to absurd results, extratextual factors that may be considered include: (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the

consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.

The definition of "residence" is not "plain." The enforcement of the definition of "residence" has led to the absurd result that Adrian Heath changed his chosen residence to a location within the Woodlands Road Utility District in order to force an election and participate in governance of a public body ("First Amendment" political activity), with absolutely no remuneration, while Mr. and Mrs. Speicher (see Appendix Exhibit 9, which also includes a Houston Chronicle Newspaper article about the vagueness of the definition of "residence" in the Election Code), among many others, have been paid to temporarily change their residence for voting purposes so that a M.U.D. can be established and so that Hundreds of Millions of dollars of public bonds can be approved to build roads so that developers don't have to spend their own money to build roads. Therefore, extratextual factors must be considered:

1. The object sought to be attained is to fix the residence of a voter at least 30 days prior to an election. See GSC-1(Appendix Exhibit 6): "It is our opinion that any state requiring a voter to state that he or she will be residing in a location for a stated number of months or years in the future would face a similar challenge. An applicant filling out a Texas voter registration form is not required to state that the residence will be his or her home forever, or for the next five years, or even the next year. The applicant is only required **for administrative reasons** to submit the application 30 days

19

before the election in which the applicant wishes to vote." The 30-day requirement to fix residence does not, in and of itself, lead to the absurd result which makes the statute vague.

2. The circumstances under which the statute was enacted varied over time and in response to many Court rulings, in particular, the Texas Supreme Court ruling in Mills v. Bartlett, and also federal court rulings such as Carrington v. Rash, Whatley v. Clark, United States v. Texas, Ballas v. Symm, and Dunn v. Blumstein (all cited in the Opinion). These opinions all struck down parts of the law that sought to limit the voter's choice of his/her "residence" for voting purposes.

3. The legislative history is based upon reactions to the Court rulings identified above which had the effect of removing restrictions the Legislature had attempted in order to stop military personnel, college students, and migrant workers from voting in Texas.

4. Common law or former statutory provisions, including laws on the same or similar subjects includes statutes with similarly vague definitions such as those found unconstitutional in Ex Parte Perry and, more recently, in State v. Doyal. In Ex Parte Perry, the Court found that the definition of "coercion" as used in the statute was vague for being overbroad because it could include many perfectly legal activities which violates the First Amendment "Free Speech Clause." It also considered that enforcement could be "politically motivated." In State v. Doyal, the Court expressed

20

that "What renders a statute vague is the 'indeterminacy of precisely what' the

prohibited conduct is." (as cited above).  In that case, Craig Doyal was accused of

acting to "conspire," "circumvent," and engage in "secret" conversations about matters

pertaining to the public body of which he was a member, without a quorum present, in

violation of the Texas Open Meeting Act.  The Court concluded that these terms were

subject to multiple interpretations and overly broad in violation of the First Amendment

"Free Speech" Clause.  The holding in State v. Doyal  is completely consistent with the

holding in Grayned v. City of Rockford, 408 U.S. 104, p.p. 108-109 (1972), cited above.

In this case, the First Amendment principles are the same and the void for vagueness

principle is the same.  Adrian Heath's First Amendment "Free Speech" rights have been

violated because the definition of "residence" is so vague that the reasonable person

cannot determine precisely what conduct is prohibited after one reads the case law, the

Attorney General's Opinion, and the Secretary of State's Opinion (cited above and

included in Appendix Exhibits 5 and 6).

   5.  As to the consequences of a particular construction, (6) administrative

construction of the statute, and (7) the title (caption), preamble, and emergency

provision of the Statute, the consequence is that dozens and dozens of people around the

state are not prosecuted for establishing their voting residence in order to engage in

political and even economic activity (for payment from developers) while a political

activist wanting to address a perceived abuse of government power is prosecuted and

sent to prison for a three-year term.  See Appendix Exhibits 8 and 9, which contain examples of persons who have also registered and voted from office locations, or temporary locations as their "residence" for voting purposes.

Specifically, Appendix Exhibit 9 shows the registrations of Daniel Robert Spiecher and Deborah Welder Spiecher who registered to vote within the newly created M.U.D. 148 on August 7, 2015 for the election held on November 3, 2015, after having registered to vote in Magnolia on July 24, 2014, to vote in another M.U.D. election there.  These come on top of registering to vote and voting in a M.U.D. election in Conroe in 2013—each time with these voters receiving payment from Stingray Services to register an address as "their residence for voting purposes" **so they could participate in the political activity** of a new M.U.D. and then move on.  See enclosed Article by Cindy Horswell, November 1, 2015, Houston Chronicle, Appendix Exhibit 9.

Specifically, Appendix Exhibit 9 shows the registrations of persons registered at business addresses within the Woodlands Road Utility District #1 (the same district Adrian Heath was convicted of illegal voting in) even though they have a residence address that is not in the Utility District:  See John Barry Donoho, registered in 2005 at 9590 Six Pines Drive (a retail store in the Utility District) while his residence was 7 Switchbud Place, Suite C192, Spring, Texas (not in the Utility District);  See Michael Dean and Shelley Kathleen Powell, registered at 4775 West Panther Creek #130-A (a retail/office location in the Utility District) while there residence was 20803 Rosestone

Lane, Spring, Texas (not in the Utility District);  See Joseph Thadis and Molly Whisenant registered at 4185 Technology Forest Blvd #160 (an office in the Utility District) while their residence was at 22 Plum Blossom Place and later 19 Mirror Ridge Court, The Woodlands (not in the Utility District);  and the behavior continues to this day (see article by Dylan McGuinness and Mike Morris, October 10, 2019, Houston Chronicle attached herein and fully incorporated herein) with persons such as Nelvin Adriatico, Michelle Bonton, Jeremy Darby, Anthony Docefino, Van Huynh, and George Harry Zoes who list non-homestead locations as "their choice of residence for voting purposes."  None of these persons have been prosecuted.

What these exhibits show is that other people have done what Adrian Heath did (i.e. change his/her residence for voting purposes to a location in a Utility District so he/she could participate in the District's election and political activity), and some of them were actually paid money to do it—without prosecution!  The import of this evidence, in addition to the obvious "Equal Protection" violation, is to show that the statute is overbroad, vague, subject to multiple interpretations and has resulted in a failure "(1) to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) to establish determinate guidelines for law enforcement" as set forth in State v. Doyal, cited above, invoking the federal authority of United States v. Cardiff, 344 U.S. 174 (1952);  Connally v. General Construction Co., 269 U.S. 385 (1926);  and Grayned v. City of Rockford, 408 U.S. 104 (1972).  The Doyal case

correctly points out that, when an enumerated right (in this case, First Amendment Right to Free Speech and Assembly) is under attack by a penal statute, the burden shifts to the state to prove a rational basis exists to treat similarly situated citizens differently under the Fourteenth Amendment to the United States Constitution.  It goes on to state that "When the law also implicates First Amendment freedoms, it must also be sufficiently definite to avoid chilling protected expression."

The Court of Criminal Appeals decisions in Ex Parte Perry and State v. Doyal did not exist when Adrian Heath's case was tried and appealed.  Taking those decisions into account and applying their holdings to the definition of "residence" in Section 1.015 of the Election Code, it is clear that Section 1.015 of the Election Code is unconstitutionally overbroad and vague, in violation of the Fourteenth Amendment's "Equal Protection" clause, the Fifth Amendment's "Due Process" clause, and the Writ of Habeas Corpus should be granted, the conviction set aside, and an order of acquittal entered on that basis.

GROUND TWO:  SELECTIVE PROSECUTION

Castleberry v. State, 704 S.W.2d 21 (Tex. Crim. App. 1984), recognized vindictive judicial prosecution—not vindictive selective prosecution.  The defense of selective, or vindictive, prosecution by a prosecutor for non-racial reasons was not clearly recognized or established in Texas until the ruling in Hill v. State, 499 S.W.3d 853 (Tex. Crim. App. 2016), which was four years after Adrian Heath's trial.  In the Hill case, the Court of

Criminal Appeals reviewed the evidence of the political connections between the complaining witness and the prosecution—not whether there was a racial motivation for the prosecution. See Hill, at p.p. 854-858 (in which the Court recites a series of transactions/conversations showing political connections were used to get the prosecuting authority to indict Mr. Hill). This fact pattern was different from cases cited in the opinion dealing with selective/vindictive prosecution such as United States v. Armstrong, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)(which involved an allegation of retaliation against defendant based upon his race); and Neal v. State, 150 S.W.3d 169 (Tex. Crim. App. 2004) (which involved an allegation of retaliation against the defendant because he filed a civil suit after the District Attorney dismissed his case —hence the re-indictment was alleged to be in retaliation for the filing of the civil suit). The fact pattern set forth in Hill (published in 2016), was the first time the highest Texas Court recognized this form of selective/vindictive prosecution.

The conclusion found in the Hill decision was that it was error for the trial court to not hold a hearing on Hill's allegations of prosecutor vindictiveness:

> "Following *Neal*, it would make no sense to require a defendant to preserve a
> complaint based on vindictive prosecution by filing a pretrial motion to quash and
> dismiss, but then limit the trial court's discretion to hold an evidentiary hearing on
> such motion. (footnote omitted)....The State urges this Court to follow federal case
> law holding that a defendant must present "some evidence" of selective

prosecution in order to merit an evidentiary hearing.  However, the federal courts

setting this threshold requirement did so in the context of addressing whether the

trial court erred in denying a defendant's request for an evidentiary hearing." <u>Hill</u>,

at p. 868.

This is the claim Adrian Heath makes in Ground Two of this Application for Writ

of Habeas Corpus:  the trial judge quashed the Subpoena for State Senator Tommy

Williams and denied the right for Adrian Heath to obtain the testimony necessary to put

forth his claim of selective/vindictive prosecution.  See Appendix Exhibits 12, 13 and

14, which includes the Motion to Quash with Subpoena, the trial arguments and

colloquy, and the Court's reasoning on this issue denying Adrian Heath the right to

pursue the selective/vindictive prosecution defense.  The trial Court granted the State's

Motion in Limine seeking to exclude evidence of Senator Williams' involvement in this

case.  See Appendix Exhibit 14, colloquy during the trial concerning the claims that

Senator Williams influenced Attorney General to file charges against Heath and the

other voters.  See Appendix Exhibit 10, Affidavit of James J. Doyle in which Senator

Williams admitted he intended to influence the Attorney General to file charges.  The

emails between Senator Williams, and parties related to the Woodlands Road Utility

District who were seeking Senator William's help in getting charges filed against Heath

and the other voters, corroborate the testimony of James Doyle regarding the vindictive

motive of Senator Williams in influencing the Attorney General to file charges that he

otherwise would not have filed.

The refusal of the trial court to allow the discovery necessary to present the evidence of a vindictiveness defense violates Equal Protection and Due Process under the holdings in <u>United States v. Batchelder</u>, 442 U.S. 114, 12 (1979); <u>Bolling v. Sharpe</u>, 347 U.S. 497, 00 (1954); and <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 373 (1886). And the elephant in the room during all of this prosecution was that the State Senator, Tommy Williams, was Chair of the powerful Appropriations Committee of the Texas Senate, at that time, which appropriated funds for the Attorney General's Office, State District Court Judges (trial Judge included), and all State Agencies directly or indirectly involved in this prosecution. There was no interest in enforcing Federal Constitutional rights shown by these State political actors. Adrian Heath is entitled to have his United States Constitutional rights restored by a Federal Court which is not under the political influence of elected State Officials funded by the State Legislators seeking to influence individual prosecution decisions. A neutral review of the evidence in the record of this case should result in a finding that this is a clear case of politically motivated vindictive prosecution. Adrian Heath respectfully requests the Writ to be granted and the judgment of conviction and sentence be set aside.

GROUND THREE:  THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW

(Citations made to the Trial Court Transcript are available for the Hearing)

The Constitutional standard for judicial review of the sufficiency of the evidence

is: "considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt. See <u>Jackson v. Virginia</u>, <u>443 U.S. 307</u>, <u>99 S.Ct. 2781</u>, <u>61 L.Ed.2d 560 (1979)</u>.

In determining whether there is a "rational justification" for the jury's findings the appellate court reviews the entire record. The record shows that Adrian Heath's case revolved almost exclusively around the element of knowledge. Almost the entire trial dealt with evidence concerning his knowledge of the definition of "residence" contained within the Election Code. Virtually the same evidence supported his affirmative defense of mistake of law that was submitted to the jury. CR Vol. 1, p.p. 56-57.

Not only did Adrian Heath not have scienter, or knowledge, that it was against the law to register and vote from a hotel, he had a positive, well-educated, well-informed belief that he was well within the law to register and vote from the Residence Inn hotel. Joe Kulhavy made it clear to Adrian Heath, in phone conversations testified to at trial, that the voter's choice of residence is presumed to be correct unless it is subsequently challenged by an election contest: "Well, the question or a dispute over residence usually comes up in the context of some sort of court proceeding related to residence, like an election contest or a dispute over an elected official's capacity to continue to hold office. So in the absence of dispute, there is presumption that the residence statement of the voter or candidate is true since it's supported by the sworn affidavit that appears on the voter registration application or, in the case of a candidate, by the affidavit that's on

the candidate's application.  Q. Okay. So all of this that you've been telling the jury, those are the things you discussed with Mr. Heath on the phone?  A. Yes."  RR Vol. 7, p. 162.  NOTE:  one does not know before the election if the election will be contested and he will learn that his choice of residence was illegal AFTER THE ELECTION!

Joe Kulhavy emphasized the openness of the decision in <u>Mills v. Bartlett</u>:  "Q. And where they use this word -- this phrase that neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined.  Q.  Did you recall ever using that phrase with Mr. Heath in any of the conversation you had with him?  A. I think *Mills versus Bartlett* is one of the cases I cited to him because it's one of the sort of lead cases in Texas in law that discusses residence issues."  RR Vol. 7, p. 163 and p.p. 139-208 in toto.

In his last conversation with Joe Kulhavy before deciding to register to vote from the Resident Inn hotel, Kulhavy convinces Adrian Heath that he has every right to register and vote from the hotel:  "A. They were people registered at hotels. There was two people registered at hotels.  Q. What did you tell Mr. Kulhavy about that?  A. Well, beginning to say that I said, based on all the scenarios you've described and, you know, anecdotes that you've given like the other president chose a hotel as his residence when he wanted to establish a residence in Texas. This man lives at this hotel and it's all okay. That I could establish residence in the Residence Inn if my intent was to establish residence there and I had bodily presence there, what you're telling me is I could go

29

there and I could vote and force them to have an election. And he said, yes, you could do

that and if you did, I would love to see the look on their face." RR Vol. 8, p. 83.

Subsequent to that conversation, Adrian Heath then tells Carol Gaultney, Elections

Administrator, what he is doing and she never tells him that it is illegal and that he may

be prosecuted for a third degree felony (and she complains to no one about it).  RR Vol.

7, p. 231.  In fact, Gaultney accepted Adrian Heath's change of address at the front

counter when he told her was going to register and vote from he hotel to challenge the

Road Utility District's claim that there were no voters.  In response, Gaultney told him "I

appreciate what you are trying to do"--not "I think that will be illegal....I don't think you

can do that....if you do that it will be a third degree felony...." or any warning of that

sort.  After that change in registration, Gaultney was asked to generate a list of certified

registered voters in the Road Utility District and Adrian Heath's name was listed.  See

Appendix Exhibit 7.  Why would Adrian Heath, at that point, think he was committing a

third degree felony illegal vote when he told the Voter Registrar what he was doing, why

he was doing it, how he was doing it, and she told him she appreciated what he was

trying to do?

Adrian Heath then received an "informational" letter from the First Assistant

District Attorney, at the behest of the incumbent RUD board members who fear they are

now about to be unseated by ten newly registered voters to their two.  Adrian Heath met

with the First Assistant, Phil Grant, showed him the qualified voters (Appendix Exhibit

7), which includes him, and Phil Grant told him "thank you for the information" and he will investigate the activities of the RUD.  RR Vol. 7, p. 125.  Phil Grant does not tell Adrian Heath that he is about to commit a third degree felony but, instead, he gives him a medal.  Vol. 8, p.p. 96-101.

Adrian Heath even went to a private attorney, Adam Muery, and had the scenario approved by him.  RR Vol. 8, 102-105.  No rational person, after receiving all of the legal advice Adrian Heath received, would know beyond a reasonable doubt that he was committing a crime by voting in the RUD election and that his declared residence was "illegal."  An un-legally-educated jury, hearing this scenario for the first time, could easily be misled into ignoring the important Constitutional issues of "Free Speech and Assembly," " Equal Protection," and "Due Process" involved in this highly protected bailiwick of Constitutional voting rights, which could and did, in this case, result in their vote to convict a person who was simply following the complex, constitutional, law while acting in good faith.  Adrian Heath has the perfect defense of reliance upon written and oral legal advice before committing the acts which now have made him a convicted felon for the rest of his life.

In accord with the <u>Jackson v. Virginia</u> standard, no rational jury could have found each element of the offense beyond a reasonable doubt and the Adrian Heath's judgment and sentence should be set aside and dismissed with prejudice.

This conviction has kept him from filing and running for public office in his

31

community--in spite of his desire and attempts to do so.  See KP-0138, Attorney General's Opinion citing Texas Election Code Section 141-001(a)(4).  Adrian Heath is also prevented from returning to his prior employment, which required him to enter refineries, because he can no longer qualify, as a convicted felon, to obtain a TWIC card. He is not allowed a Federal Firearms license because he is now a convicted felon.  There are a multitude of things, including pursuing a "Liberty Interest" in his chosen field of work in refineries, upon which this illegal conviction is working a continuing restraint of his liberties.  The conviction he is attacking constitutes a continuing restraint on his liberties under the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution for which this Petition for Writ of Habeas Corpus is his only remedy.  Even if Adrian Heath is not entitled to this remedy post-conviction, this Petition presents serious constitutional violations of the United States Constitution by State actors that may yet evade review and should be considered and addressed in the Federal Court System.

Therefore, Adrian Heath respectfully requests the Court to grant an evidentiary hearing on this Writ and, upon hearing the evidence, grant the Writ to set aside the judgment and sentence issued by the 359th District Court of Texas and grant any such further relief to which he may be entitled at law or equity.

Respectfully Submitted,

Jay M. Wright
State Bar No. 22041800
Southern District No. 5927
322 North Main Street
Conroe, Texas 77301
Telephone: 936-494-2462
Telecopier: 936-494-1976
email: jaywrightatty@hotmail.com
Attorney for Adrian David Heath

## CERTIFICATE OF SERVICE

I hereby certify that on this __7th__ day of January 2021 a true and correct copy of the above and foregoing Petition for Writ of Habeas Corpus, with Appendix Exhibits, was served on the Respondent, Office of the Texas Attorney General, in accordance with Federal Rules of Criminal Procedure.

Jay M. Wright

33

# Jay M. Wright

## Attorney at Law

### 322 N. Main Street
### Conroe, Texas 77301-2810

Telephone   (936) 494-2462

Facsimile    (936) 494-1976

Email: jaywrightatty@hotmail.com

Corpus Christi Line: 361-991-4773

January 7, 2021

Hon. Nathan Ochner
United States District Clerk
P.O. Box 61010
Houston, Texas 77208

Re:    Cause No. _____
        Adrian David Heath v. Ken Paxton, Attorney General

Please find enclosed a Petition For Writ of Habeas Corpus for filing on behalf Adrian David Heath.   Please also find enclosed a Trust Account check in the amount of $5.00 to cover the filing fee.   If you have any questions, or need further information, please contact my office.   Thank you.

Sincerely,

*Jay M. Wright*

Jay M. Wright
SNB 22041800

JMW:jk